**From:** Allan Newman
**To:** USADC-BitfinexHack2016
**Subject:** [EXTERNAL] Victim of the Bitfinex Hack
**Date:** Wednesday, November 13, 2024 9:59:15 PM

Dear Colleen Kollar-Kotelly,

I am writing to respectfully bring attention to my status as a victim of the 2016 Bitfinex hack, during which I lost a significant amount of Bitcoin due to the unauthorized transfer of funds from my account.

The Bitfinex hack has caused me significant financial loss and ongoing stress. The sudden, unauthorized depletion of my Bitcoin holdings disrupted my financial plans and left me facing an uncertain future regarding any recovery. This experience has not only impacted my financial stability but also weighed heavily on me emotionally, as the prolonged wait and lack of resolution have been a constant source of frustration and anxiety. The theft has created a lasting sense of vulnerability and distrust, knowing that my investment and savings were compromised beyond my control.

With the recovery of some of the stolen assets, I believe it would be fair for these funds to be returned to those who were directly affected. The hack has had a substantial financial impact on my life, and returning the recovered assets to rightful owners would help alleviate some of the hardships caused by this theft.

Thank you for your time and consideration.

Sincerely,
Allan Newman

GIBSON DUNN

Barry H. Berke
Partner
T: +1 212.351.3860
bberke@gibsondunn.com

November 13, 2024

The Honorable Colleen Kollar-Kotelly
U.S. District Judge
U.S. District Court for the District of Columbia
333 Constitution Avenue NW
Washington, DC 20001

Re: *United States v. Lichtenstein, et al., 1:23-CR-239 (CKK) (D.D.C.)*

Dear Judge Kollar-Kotelly:

We represent iFinex Inc., d/b/a Bitfinex ("**Bitfinex**"), the "VICTIM VCE" of the offenses of Defendants Lichtenstein and Morgan ("**Defendants**"). Dkt. No. 141 at 1. On behalf of Bitfinex, we write to supplement our victim impact statement, dated September 16, 2024, which we incorporate herein by reference. In particular we write regarding the Government's Notice and Motion for Delayed Restitution Hearing (Dkt. No. 171), which was filed with the Court earlier today regarding Defendants Lichtenstein and Morgan's sentencings, which are scheduled for tomorrow and Friday, respectively. The government seeks a statutory maximum 90-day delay for the Court to enter a restitution order in this case. Bitfinex respectfully submits that such a delay is unwarranted and would significantly prejudice it as the sole party entitled to restitution from Defendants.

As we wrote previously, in August 2016, Defendant Lichtenstein stole approximately 119,754 Bitcoins directly from Bitfinex and moved them to a cryptocurrency wallet under his control. Dkt. No. 146 at 2. The Government subsequently recovered 94,643.29837084 Bitcoin, 117,376.52651940 Bitcoin Cash, 117,376.58178024 Bitcoin Satoshi Vision, and 118,102.03258447 Bitcoin Gold (the "**Bitfinex Restitution Assets**") from the exact same cryptocurrency wallet that Defendant Lichtenstein used in the August 2016 hack. *Id.* at 25. There is no doubt that these assets were stolen directly from Bitfinex.

The Government, Defendants, and Bitfinex all agree that Bitfinex is the only potential victim of Defendants' offenses.[1] Dkt. No. 141 at 2. Defendants and the Government specifically agreed in Defendants' plea agreements to pay restitution to Bitfinex (and no one else). Dkt. Nos. 96 at 10; 101 at 10. The Government's position is that, "consistent with the statutory text and purpose of the Mandatory Victim Restitution Act (MVRA)," Defendants should pay in-kind

[1] While Bitfinex disagrees with the Government's suggestion that Bitfinex is not entitled to mandatory restitution under the MVRA because Defendant Lichtenstein admitted to a scheme to defraud Bitfinex in the context of pleading guilty to a money laundering conspiracy rather than a wire fraud charge (Dkt. No. 146 at 27), Bitfinex agrees with the Government that Defendants should pay it in-kind restitution of the stolen Bitcoins.

restitution to Bitfinex by returning the Bitfinex Restitution Assets to it. Dkt. No. 146 at 25; 143 at 19-20.

In light of the lack of meaningful disagreement among the parties regarding restitution in this case, we respectfully submit that the Court should enter an order at Defendants' sentencing, requiring that Defendants pay in-kind restitution of the Bitfinex Restitution Assets to Bitfinex, and ordering that the U.S. Marshals Service help facilitate the transfer of those assets.

The Government's request for a 90-day delay—the statutory maximum under 18 U.S.C. § 3664(d)(5)—is unwarranted given that its own position (unopposed by Defendants) is that Bitfinex is the only party entitled to restitution, and no party is entitled to or should receive monetary restitution. Dkt. No. 146 at 25. *First*, as the Government acknowledges, delay is only appropriate under 18 U.S.C. § 3664(d)(5) when "the victim's losses are not ascertainable by the date that is 10 days prior to sentencing." The Government's position, however, is that there is no victim of Defendants' offenses "beyond perhaps Bitfinex," that other potential parties of interest are "not 'victims' under the CVRA or for restitution purposes," and that the purpose of providing them notice was merely "to allow individuals to submit comments for sentencing." Dkt. No. 141 at 1 and n.1. *Second*, the Government's pending recovery of an additional $1.2 million of non-Bitcoin assets (Dkt. No. 171 at 1-2) will have no impact on in-kind restitution whatsoever, and is not a reasonable basis to delay an order of restitution to Bitfinex. Any *de minimis* additional funds recovered by the government will be available in the forfeiture process.

In contrast, Bitfinex will suffer significant prejudice if restitution is delayed for 90 days. Bitfinex has sought the recovery of the Bitcoins stolen by Defendant Lichtenstein for nearly nine years. Any unjustified delay is inconsistent with the Crime Victims' Rights Act, which provides victims the right to "full and ***timely*** restitution" and "proceedings ***free from unreasonable delay***." 18 U.S.C. §§ 3771(a)(6), (7) (emphasis added). Bitcoin experiences significant price volatility, and there are significant security risks related to the possession of cryptocurrency assets, as reflected by the recent cyberattack that caused the government to seek a delay of restitution. Such uncertainties favor the avoidance of any unnecessary delay in returning the Bitfinex Restitution Assets to Bitfinex. Additionally, if the Government plans to delay the restitution hearing until after forfeiture proceedings have commenced, that could potentially delay the satisfaction of in-kind restitution to Bitfinex until any forfeiture proceedings are resolved, and force Bitfinex to also seek the recovery of the Bitfinex Restitution Assets in forfeiture, further complicating the proceedings and adding to Bitfinex's expenses. We respectfully submit that is particularly unwarranted when there is no dispute among the parties that the Bitfinex Restitution Assets should be returned to Bitfinex.

GIBSON DUNN

The Honorable Colleen Kollar-Kotelly
U.S. District Court for the District of Columbia
November 13, 2024
Page 3

Accordingly, Bitfinex respectfully submits that the Government's Notice and Motion for Delayed Restitution Hearing should be denied, and the Court should order in-kind restitution of the Bitfinex Restitution Assets to Bitfinex at Defendants' sentencing. If Your Honor requires additional time to review materials newly submitted by the Government on the eve of sentencing, we respectfully request that the Court adjourn its determination of restitution for fewer than 30 days, rather than the 90-day statutory maximum, in order to minimize the prejudice to Bitfinex.

Thank you for your consideration.

Respectfully submitted,

Barry H. Berke

Barry H. Berke
Partner

Kramer Levin

**Barry H. Berke**
Partner
**T** 212.715.7560
**F** 212.715.7660
bberke@kramerlevin.com

1177 Avenue of the Americas
New York, NY 10036
**T** 212.715.9100
**F** 212.715.8000

**September 16, 2024**

The Honorable Colleen Kollar-Kotelly
U.S. District Judge
U.S. District Court for the District of Columbia
333 Constitution Avenue NW
Washington, DC 20001

RE: *United States v. Lichtenstein, et al.*, 1:23-CR-239 (CKK) (D.D.C.)

Dear Judge Kollar-Kotelly:

We represent iFinex Inc., d/b/a Bitfinex ("**Bitfinex**"), the victim of the criminal conduct of Ilya Lichtenstein and Heather Morgan ("**Defendants**")—the August 2016 theft from Bitfinex and subsequent laundering of 119,754 Bitcoins (the "**Stolen BTC**"). On behalf of Bitfinex, we write to provide details to the Court regarding how Defendants' brazen scheme significantly harmed Bitfinex, and to request that the Court order restitution to Bitfinex pursuant to the Mandatory Victims Restitution Act of 1996, 18 U.S.C. § 3663A ("**MVRA**"), by ordering the return to Bitfinex of 111,157.48 of the Stolen BTC that have been seized and recovered by the government (the "**Seized BTC**"). Defendants have admitted that the Seized BTC are property stolen directly from Bitfinex and have agreed with the government to provide restitution to Bitfinex.

## I. <u>Factual Background</u>

### A. Bitfinex is One of the World's Preeminent Cryptocurrency Exchanges, and an Ally to Global Law Enforcement

Bitfinex is one of the most well-established virtual currency exchanges in the world. Founded in 2012, the Bitfinex exchange enables customers to buy, sell, or store various types of virtual currency, including but not limited to Bitcoin, on its platforms. Since in or about 2018, Bitfinex does not have U.S. customers.

While Bitfinex does not do business in the United States, it is an industry leader in promoting lawful practices in the digital asset industry. Bitfinex routinely collaborates with law enforcement in the United States and across the world. Bitfinex was a founding member of the Blockchain Alliance, an initiative between law-abiding digital asset companies and law enforcement, including the Department of Justice and FBI, to combat

the use of cryptocurrencies by criminals, terrorists, and rogue states. Bitfinex was also a founding member of Project Participate, connecting companies in the digital asset industry with law enforcement to improve processes to identify unlawful cryptocurrency activity.

### B. Defendant Lichtenstein Stole Approximately 119,754 Bitcoins from Bitfinex in 2016, Nearly Destroying Bitfinex's Business

Defendant Lichtenstein admitted in his guilty plea that he devised a scheme to defraud Bitfinex in 2016.[1] Lichtenstein conducted online research and reconnaissance of Bitfinex's computer infrastructure, and identified and compromised Bitfinex's computer servers. He utilized a number of advanced hacking tools and techniques, commonly known as "exploits," to gain unauthorized access to these computer servers. He also used penetration testing software frequently used by cybercriminals that provides data about security vulnerabilities and assists in simulating a cyberattack on a computer system. Through these methods, Lichtenstein succeeded in gaining access to Bitfinex's computer infrastructure and defeating numerous security measures on Bitfinex's network.[2]

Having compromised Bitfinex's networks, Lichtenstein obtained Bitfinex's private keys and credentials necessary to access Bitfinex cryptocurrency wallets. On or about August 2, 2016, Lichtenstein used those keys and credentials to initiate more than 2,000 unauthorized Bitcoin transactions from Bitfinex wallets (the "**Hack**"). Lichtenstein transferred the Stolen BTC—119,754 Bitcoins in total—directly from the Bitfinex wallets to a cryptocurrency wallet under his control ("**Wallet 1CGA4s**").[3]

### C. Bitfinex Took Unprecedented Action to Save Its Business and Make All of Its Customers Whole

The Hack devastated Bitfinex's finances and its reputation with its customers. The Stolen BTC represented approximately 36% of Bitfinex's assets at the time of the Hack. Bitfinex had to take unprecedented and immediate action to ensure that any losses from the Hack would ultimately be borne by Bitfinex and its shareholders alone, not its customers.

*First*, Bitfinex temporarily allocated the losses from the Hack pro rata across all customer accounts. Bitfinex applied a 36% reduction (or haircut) to the value of each customer account, and issued "BFX" cryptocurrency tokens worth $1 each to each account, in an amount corresponding to the value of the haircut applied to each account.

---

[1] *See* Lichtenstein Statement of Offense ¶ 12, Dkt. No. 95. The "VICTIM VCE" and "victim virtual currency exchange" referred to in the Statement of Offense and the Information against Defendants is Bitfinex. *See id.* ¶ 4.

[2] *Id.* ¶ 12-13.

[3] *Id.* ¶ 14.

For example, if an account held $100 of assets at the time of the Hack, Bitfinex reduced the value of the account to $64 and issued 36 BFX tokens to the account. These BFX tokens, which were also transferrable to other Bitfinex customers, represented Bitfinex's commitment to make customers whole for the Hack losses that it temporarily assigned to each customer.

*Second*, Bitfinex permitted certain customers to exchange their BFX tokens for newly issued iFinex stock. Customers who opted for this exchange received one share of iFinex common stock for each BFX token that the customer redeemed to Bitfinex. Certain customers who exchanged their BFX tokens for iFinex stock also received "RRT" tokens, entitling them to a portion of any recovery of the Stolen BTC, which they would receive only after all BFX tokens were redeemed and all Bitfinex customers were made whole. Customers exchanged tens of millions of BFX tokens for iFinex stock and RRT tokens.

*Third*, as customers exchanged more and more BFX tokens for iFinex stock and Bitfinex improved its capital position, Bitfinex redeemed each and every outstanding BFX token by providing the token holder $1 in value in their Bitfinex accounts for each BFX token and subsequently destroying the tokens. For instance, in the above example, if a customer held 36 BFX tokens, Bitfinex redeemed those tokens for $36 and destroyed them, placing the customer back in the same $100 account value position as before the Hack. By April 3, 2017—approximately eight months after the Hack—Bitfinex had fully redeemed all outstanding BFX tokens, erasing all customer losses relating to the Hack.[4]

Bitfinex provided this compensation to customers at its own expense—draining its reserves and diluting its existing shareholders—without any guarantee that it would ever recover any of the Stolen BTC. Having made its customers whole, Bitfinex alone suffered direct pecuniary losses from the Hack. Customers accepted Bitfinex's compensation, and customers who became iFinex shareholders obtained further financial returns as Bitfinex thrived and paid hundreds of millions of dollars in dividends. Given these extraordinary steps to make customers whole, it is not surprising that no customers made legal claims against Bitfinex in the eight years after they were fully compensated by Bitfinex following the Hack.

### D. The Government Traced the Stolen BTC to Wallet 1CGA4s and Defendants, and Seized the Wallet and Arrested Defendants

In the immediate aftermath of the Hack, Bitfinex referred the incident to the FBI and the Department of Justice. Between January 2017 and January 2022, Defendants laundered more than 25,000 BTC out of Wallet 1CGA4s, leaving 94,643.298 of the Stolen BTC in the Wallet.

---

[4] *100% Redemption of Outstanding BFX Tokens* (Apr. 3, 2017), https://blog.bitfinex.com/announcements/100-redemption-outstanding-bfx-tokens/

With the assistance of Bitfinex and others, however, the government was ultimately able to trace the Stolen BTC to Wallet 1CGA4s. The government obtained a search warrant for a cloud storage account held by Lichtenstein. Law enforcement officers decrypted a file saved to the cloud storage account, which contained a list of virtual currency addresses held at Wallet 1CGA4s and the private keys to the Bitcoin held at those addresses.[5] On or about January 31, 2022, the government obtained access to Wallet 1CGA4s by using the private keys obtained from Lichtenstein's cloud storage account. Each Bitcoin held at the wallet addresses in Wallet 1CGA4s was stolen directly from Bitfinex during the Hack.[6] On or about February 4, 2022, the government obtained a warrant and seized 94,643.298 of the Stolen BTC from Wallet 1CGA4s.[7] And on or about February 8, 2022, the government arrested Defendants. Subsequent to Defendants' arrest, the government seized 16,514.182 additional Stolen BTC from Defendants' external hard drives and cloud storage accounts.[8]

On August 3, 2023, Defendants pled guilty to an Information charging each with one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), and charging Morgan with one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371.[9] Defendants admitted to the Court that Lichtenstein perpetrated the Hack, and that the Seized BTC, including from Wallet 1CGA4s, were stolen from Bitfinex.[10] Defendants admitted that the Seized BTC were proceeds of the Hack and/or the subject of Defendants' subsequent money laundering conspiracy.[11] Defendants consented to forfeiture of the remaining Stolen BTC and other property, and agreed to provide restitution specifically to Bitfinex.[12]

---

[5] *See* Criminal Complaint, Exhibit A, ¶ 6, Dkt. No. 1-1.

[6] *Id.*

[7] *Id.*

[8] *See* Lichtenstein Consent Preliminary Order of Forfeiture, Attachment A, ¶¶ j, k, l, u, w, y, Dkt. No. 99.

[9] *See* Information, Dkt. No. 89; Lichtenstein Plea Agreement at 1, Dkt. No. 96; Morgan Plea Agreement at 1, Dkt. No. 101.

[10] Lichtenstein Statement of Offense ¶ 12, Dkt. No. 95; Lichtenstein Plea Tr. 22:7-23:7, 24:5-20; Morgan Statement of Offense ¶ 12, Dkt. No. 100; Morgan Plea Tr. 21:23-23:13. *See also* Information ¶ 2, Dkt. No. 89.

[11] Lichtenstein Statement of Offense ¶ 29, Dkt. No. 95; Morgan Statement of Offense ¶ 29, Dkt. No. 100.

[12] *See* Lichtenstein Consent Preliminary Order of Forfeiture at 2, Dkt. No. 99; Morgan Consent Preliminary Order of Forfeiture at 2, Dkt. No. 104; Lichtenstein Plea Agreement at 9-10, Dkt. No. 96; Morgan Plea Agreement at 10, Dkt. No. 101.

## II. The MVRA Requires the Court to Order Restitution to Bitfinex By Ordering the Return of the Seized BTC to Bitfinex

Bitfinex respectfully requests that the Court enter an order of restitution pursuant to the MVRA, ordering the return of the 111,157.48 Seized BTC to Bitfinex. As part of Lichtenstein's plea agreement, Defendants and the government explicitly agreed that the Court should order restitution to Bitfinex.[13] While this case involves new technology and a complex money laundering scheme, Bitfinex is simply an ordinary victim of a theft of property directly from its custody. Indeed, both Defendants and the government agree that 94,643.298 of the Stolen BTC remained in Wallet 1CGA4s from the time of the Hack to its seizure by the government, and that all of those Bitcoins were stolen directly from Bitfinex and are the proceeds of Defendants' offenses. The MVRA requires the Court to provide Bitfinex an order of restitution for the return of the stolen property.[14]

"The Mandatory Victims Restitution Act of 1996 requires certain offenders to ***restore property*** lost by their victims as a result of the crime." *Robers v. United States*, 572 U.S. 639, 640 (2014) (emphasis added). It requires that the Court "shall" order restitution at the time of sentencing to the victims of certain offenses, including crimes, like Defendants' fraudulent scheme, "committed by fraud or deceit." 18 U.S.C. §§ 3663A(a)(1), (c)(1)(A)(ii). The MVRA further provides that when "an offense result[s] in … loss … of property of a victim of the offense," the order of restitution "shall require" the "return [of] the property to the owner of the property or someone designated by the owner." 18 U.S.C. § 3663A(b)(1)(A). "The purpose of the MVRA … is 'essentially compensatory: to restore a victim … to the position [the victim] occupied before sustaining injury.'" *United States v. Fair*, 699 F.3d 508, 512 (D.C. Cir. 2012) (quoting *United States v. Boccagna*, 450 F.3d 107, 115 (2d Cir. 2006)) (brackets in original).

The MVRA requires the Court to order restitution to Bitfinex in the form of the return of the Seized BTC. *First*, there is no question that Defendants' crimes qualify for mandatory restitution, as Defendants admitted that Lichtenstein schemed to defraud Bitfinex, and Defendants pled guilty to conspiracy to commit money laundering.[15] *See e.g.*, *United States v. Gooding*, 2023 WL 6199082, at *4 (D.D.C. Sep. 22, 2023) (applying the MVRA to a scheme to defraud); *United States v. Lazarenko*, 624 F.3d 1247, 1249-50 (9th Cir. 2010) (money laundering and conspiracy to commit money laundering constitute offenses against property for purposes of restitution). Moreover,

---

[13] Lichtenstein Plea Agreement at 9-10, Dkt. No. 96.

[14] Bitfinex separately intends to seek any of its property stolen by Lichtenstein that is not subject to an order of restitution in the forfeiture process.

[15] *See* Lichtenstein Plea Agreement at 1, Dkt. No. 96; Morgan Plea Agreement at 1, Dkt. No. 101.

Defendants' plea agreements explicitly contemplate mandatory restitution under 18 U.S.C. § 3663A.[16]

*Second*, Bitfinex is the victim of Defendants' offenses related to the Hack of Bitfinex and laundering of Bitfinex's Stolen BTC. A victim "means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. § 3663A(a)(2). Lichtenstein obtained the Stolen BTC directly from Bitfinex wallets. Indeed, the government and defendants specifically identify Bitfinex as the victim of Defendants' crimes.[17] And Bitfinex immediately ensured that no one but the company suffered any direct loss from the Hack, and made its customers whole within eight months of the Hack. No one but Bitfinex has been "directly and proximately harmed as a result of" the Hack, and therefore only Bitfinex qualifies as a "victim" under the MVRA. *See United States v. Boscarino*, 437 F.3d 634, 637 (7th Cir. 2006) (Easterbrook, J.) ("Instead of determining the ultimate incidence of costs created by criminal activity, judges should direct restitution to the immediate victim; other persons' rights in the funds then may be sorted out under normal rules of contract and property law."), *abrogated on other grounds by United States v. Statham*, 581 F.3d 548 (7th Cir. 2009).

*Third*, the MVRA specifically requires that the Court order the Seized BTC be returned to Bitfinex. The MVRA permits monetary restitution in lieu of the return of the property only when the "return of the property under subparagraph (A) is impossible, impracticable, or inadequate." 18 U.S.C. 3663A(b)(1)(B); *see also United States. v. Rosabal*, 2014 WL 3672895, at *2 (D. Or. Jul. 22, 2014) ("The MVRA provides that restitution involving damage or loss of property requires the return of such property."). That is not the case here. There is no reason why it would be "impossible or impracticable" for the Seized BTC to be returned to Bitfinex. While some of the Stolen BTC have been dissipated and cannot be returned to Bitfinex, returning the Seized BTC is the closest to an adequate remedy for Bitfinex. There is no reason, statutory basis, or legal precedent for the Court to deviate from the mandated remedy under the MVRA for a victim of a theft like Bitfinex: returning its property to it.

*Fourth*, there is no basis for the Court not to order restitution to Bitfinex pursuant to the MVRA. The government and Defendants have agreed in Defendants' plea agreements that Defendants shall pay restitution, and that Bitfinex is specifically entitled to restitution. This is not a case where the "number of identifiable victims is so large as to make restitution impracticable." 18 U.S.C. § 3663A(c)(3)(A). Nor are there "complex issues of fact related to the cause or amount of the victim's losses [that] would complicate or prolong the sentencing process." 18 U.S.C. § 3663A(c)(3)(B). It is

---

[16] *See* Lichtenstein Plea Agreement at 10, Dkt. No. 96; Morgan Plea Agreement at 9-10, Dkt. No. 101.

[17] *See, e.g.*, Lichtenstein Statement of Offense ¶¶ 4, 12-14, 17, Dkt. No. 95; Morgan Statement of Offense ¶¶ 4, 12-14, Dkt. No. 100.

undisputed that the cause of Bitfinex's losses was the Hack, and there is no need for a loss calculation because Bitfinex only seeks—and the MVRA only requires—the return of its property.

Accordingly, Bitfinex respectfully requests that the Court issue an order of restitution pursuant to the MVRA, requiring the return of the Seized BTC to Bitfinex. The Seized BTC includes (i) 94,643.298 Bitcoins that the government seized from Wallet 1CGA4s, each of which Lichtenstein transferred directly from Bitfinex to Wallet 1CGA4s during the Hack; and (ii) 16,514.182 Bitcoins that the government seized from external hard drives and cloud storage in the possession of Defendants.[18]

## III. <u>Conclusion</u>

Defendants' offenses devastated Bitfinex and its business. Only through Bitfinex's drastic and unprecedented efforts to raise capital and make all of its customers whole, was it able to avoid even greater harm.

For all of the reasons discussed, Bitfinex respectfully requests that the Court issue an order of restitution pursuant to the MVRA, requiring the return of the 111,157.48 Seized BTC to Bitfinex.

Sincerely,

Barry H. Berke

---

[18] While this is not a situation where the return of property is "impossible, impracticable, or inadequate," should the Court order monetary restitution to Bitfinex under the MVRA, Bitfinex's loss is measured as the "value of the property ***on the date of sentencing***, less … the value (as of the date the property is returned) of any part of the property that is returned." 18 U.S.C. § 3663A(b)(1)(B)(i), (ii). The MVRA states that the victim's loss is the "***greater***" of the value of the property on the date of loss or the value of the property on the date of sentencing. *Id*. This calculation is different from the calculation of loss used to determine the offense level in the sentencing guidelines analysis of the Defendants' plea agreements because of "the different approaches in the Guidelines and the MVRA." *Fair*, 699 F.3d at 516.

**From:** Nick Chisiu
**To:** USADC-BitfinexHack2016
**Subject:** Re: [EXTERNAL] Re: Request for Recovery of Bitcoin Following the Bitfinex Hack
**Date:** Thursday, November 14, 2024 3:09:47 AM

Hello!

Bitfinex made completely refunded my losses and finally I don't consider myself a victim. I don't want to proceed further with the submission to the Court. Thank you for your time and interest in my case.

Best!

On Wed, 13 Nov 2024 at 01:11, USADC-BitfinexHack2016 <USADC.BitfinexHack2016@usdoj.gov> wrote:

> Confirming receipt. Please advise if you would still like us to provide your submission to the Court in advance of the sentencing hearing on Thursday, November 14.
>
> ---
>
> **From:** Nick Chisiu <[redacted]>
> **Sent:** Sunday, November 10, 2024 3:52 AM
> **To:** USADC-BitfinexHack2016 <USADC-BitfinexHack20@usa.doj.gov>
> **Subject:** [EXTERNAL] Re: Request for Recovery of Bitcoin Following the Bitfinex Hack
>
> I am writing to provide clarification regarding my previous message. After a more thorough re-evaluation of my transaction records, I realized there was an oversight. Contrary to my initial statement, I have confirmed that Bitfinex did, in fact, fully refund my holdings.
>
> I apologize for any confusion this may have caused and appreciate your understanding.
>
> Thank you for your attention and consideration.
>
> Sincerely,
> Nick Chisiu
>
> On 10 Nov 2024, at 10:15, Nick Chisiu <[redacted]> wrote:
>
> I'll provide further context on the personal impact of this incident:
>
> At the time of the incident, Bitfinex issued a BFX token as compensation to affected users. Upon gaining access to the notification of the hack, I sold my BFX tokens, managing to recover only about 20% of my original Bitcoin value.

Specifically, I held 14.27 BTC before the hack, but selling the BFX tokens allowed me to reclaim only approximately 2.91 BTC. This partial recovery left me unable to repurchase the remaining BTC, resulting in a loss of 11.36 BTC—an amount valued today at approximately $900,000. From what I know, other victims are in the same situation.

Sincerely,
Nick Chisiu

On 8 Nov 2024, at 14:32, Nick Chisiu <[redacted]> wrote:

Dear Department of Justice,

I am writing to respectfully seek your assistance in recovering my Bitcoin lost in the 2016 Bitfinex hack. As a victim of this incident, I have endured substantial financial and emotional hardship, which remains unresolved by Bitfinex.

Bitfinex publicly announced plans to distribute tokens to compensate affected users. However, I did not receive any significant restitution. I was informed of the hack via a brief notification, which I only discovered approximately one month after it was sent. By that time, the value of the tokens distributed covered, at best, only 50% of the original value of my Bitcoin holdings. Since then, Bitfinex has not provided any further agreements or meaningful compensation for the stolen Bitcoin.

The purchase of my Bitcoin was a considerable financial investment, achieved through great effort as I am the sole provider for my household and the primary supporter of my two children. My intent was to hold this investment long-term to improve financial stability for my family. Furthermore, the impact of the hack dissuaded me from reinvesting in Bitcoin, which has significantly appreciated in value since that time, compounding my financial losses.

I have full confidence that the Department of Justice will act in the best interest of the victims to ensure that justice is served. I strongly urge that the stolen Bitcoin be returned to the original victims, in alignment with standard practices for restitution of stolen personal assets.

Thank you for your attention to this matter. I have proof of my Bitfinex transactions prior to the hack and am happy to provide any supporting documentation needed. I appreciate any assistance or

guidance you can provide to help facilitate the recovery of my lost Bitcoin.

Sincerly,
Nick Chisiu