UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.          )<br>)<br>ILYA LICHTENSTEIN and HEATHER )<br>MORGAN,    )<br>)<br>Defendants.  )<br>)  | No. 23-cr-239 (CKK) |

ORDER
(January 28, 2025)

On August 3, 2023, Defendant Ilya Lichtenstein ("Mr. Lichtenstein") entered a plea of guilty to one count of Money Laundering Conspiracy, and Defendant Heather Morgan ("Ms. Morgan") entered a plea of guilty to one count of Money Laundering Conspiracy, in violation of 18 U.S.C. §§ 371 and 1956(a)(1)(B)(i) and one count of Conspiracy to Defraud the United States, in violation of 18 U.S.C. §371. Both Plea Agreements provide, *inter alia*, that apart from any determination of mandatory restitution, the Defendants "agree[ ] to pay restitution to Bitfinex in an amount to be determined[.]" Lichtenstein Plea Agreement, ECF No. 96, at 10; Morgan Plea Agreement, ECF No. 101, at 10. The Plea Agreements provide further that Defendants agree "to the forfeiture set forth in the Forfeiture Allegation in the Criminal Information to which [defendant] is pleading guilty." Lichtenstein Plea Agreement, ECF No. 96 at 10; Morgan Plea Agreement, ECF No. 101, at 11.

On November 14, 2024, Mr. Lichtenstein was sentenced by this Court, and his [195] Judgment was entered on December 3, 2024. Ms. Morgan was sentenced on November 18, 2024, and her [198] Judgment was entered on December 11, 2024. Attached to both Judgments is a Second Amended Preliminary Order of Forfeiture, which indicates that "any property, real or

personal, involved in the offense alleged in Court One against Defendant Lichtenstein, and any property traceable to such property" and "any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of the offense alleged in Count Two against Defendant Morgan" is subject to forfeiture. Second Am. Prelim. Order of Forfeiture, ECF No. 195-1, at 1-2; *see also* Corrected Amended Attachment A (listing the property).

After the sentencing, the parties filed their [184] Consent Motion to Schedule Restitution Hearing, which included dates for: (1) supplemental briefing by the parties; (2) third parties to file motions/objections; and (3) a restitution hearing on February 21, 2025. *See* Order granting Consent Motion, ECF No. 185. On January 14, 2025, the Government filed its [202] Supplemental Motion Regarding Restitution, which proffers that while mandatory restitution is inapplicable under the facts in this case, *see* Govt. Supp. Mot., ECF No. 202, at 2-3, a voluntary restitution order should "include the residue of the property that was stolen from Bitfinex in 2016." *Id.* at 3. The Government contends further that potential claimants can assert claims against the forfeited property in a third-party ancillary proceeding. *Id.* at 5.

As with many cases, this case involves both restitution and forfeiture, and in general, one does not offset the other because restitution and forfeiture serve distinct purposes. *United States v. Taylor*, 582 F.3d 558 (5th Cir. 2009). "These two aspects of a defendant's sentence serve distinct purposes: restitution functions to compensate the victim, whereas forfeiture acts to punish the wrongdoer." *United States v. Blackman*, 746 F.3d 137, 143 (4th Cir. 2014). In the instant case, however, the Government is suggesting that certain property – designated for forfeiture in the Second Amended Preliminary Order of Forfeiture – be turned over to Bitfinex as voluntary restitution. The possibility that some assets subject to forfeiture may be transferred to Bitfinex as restitution presents a potential issue. A "defendant is not entitled to offset the amount of restitution owed to a victim by the value of

2

the property forfeited to the government, or *vice versa*, because restitution and forfeiture serve distinct purposes." *United States v. Joseph*, 743 F.3d 1350, 1354 (11th Cir. 2014); *see also United States v. Bodouva*, 853 F.3d 76, 79 (2d Cir. 2017) ("Because the statutory schemes authorizing restitution and forfeiture are separate, district courts are bound not to reduce the amount of a mandatory criminal forfeiture order by the amount of past or future restitution payments, in the absence of specific statutory authorization to do so."); *United States v. McGinty*, 610 F.3d 1242, 1248 (10th Cir. 2010) ("Nothing in the statutory scheme permitted the district court to reduce the mandated criminal forfeiture order because the defendant also had to satisfy his obligation to pay restitution.")

Here, ordering Defendants to deliver assets to Bitfinex as voluntary restitution would appear to have the effect of reducing the amount of the forfeiture order. Out-of-circuit case law suggests that is improper. *See United States v. Bodouva*, 853 F.3d 76, 78-79 (2d Cir. 2017) ("[D]istrict courts are bound not to reduce the amount of a mandatory criminal forfeiture order by the amount of past or future restitution payments, in the absence of specific statutory authorization to do so."); *United States v. McGinty*, 610 F.3d 1242, 1248 (10th Cir. 2010) ("Nothing in the statutory scheme permitted the district court to reduce the mandated criminal forfeiture order because the defendant also had to satisfy his obligation to pay restitution.") Accordingly, it is this 28th day of January, 2025,

ORDERED that by 5:00 p.m., on February 4, 2025, the Government shall provide clarification

as to the issues addressed herein, including its position on the appropriate disposition of assets subject to forfeiture and the transfer to Bitfinex as voluntary restitution.[1]

                                                    */s/ Colleen Kollar-Kotelly*
                                                    COLLEEN KOLLAR-KOTELLY
                                                    UNITED STATES DISTRICT JUDGE

---

[1] The Court notes that this issue has been addressed in out-of-Circuit cases. *See e.g., United States v. Bennett*, 986 F.3d 289, 398 (4th Cir. 2021) (where "the government represented . . . that it intends to apply the forfeited assets to the restitution judgment" and the court "accept[ed] this representation that [the government] will fulfill its discretionary statutory authority to help make the victims of [defendant's] criminal scheme whole") (referencing 18 U.S.C. §981(e)(6)); *United States v. O'Connor*, 321 F. Supp. 2d 722, 728-729 (E.D. Va. 2004) (where the Government requested that forfeiture proceeds be disbursed as "partial restitution to the victims of the offenses" because the defendants "possess[ed] insufficient assets to satisfy both . . . the forfeiture and restitution obligations imposed in this case" and the court found that it was "clear that the government may, in appropriate circumstances, agree to restore or assign forfeited proceeds to the victims of the underlying criminal conduct"); *United States v. Pescatore*, 637 F.3d 128, 138 (2d Cir. 2011) (noting that "the DOJ Manual dealing with forfeitures and with compensation for crime victims indicates that discretion may be exercised to transfer forfeited assets to victims where . . . other property is not available to satisfy the order of restitution") (internal citation and quotation marks omitted).

4