UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) No. 23-cr-239 (CKK) |
| | ) |
| ILYA LICHTENSTEIN and | ) |
| HEATHER MORGAN, | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER
(February 10, 2025)

Defendants Ilya Lichtenstein ("Lichtenstein") and Heather Morgan ("Morgan") (collectively, the "Defendants") were sentenced by this Court on November 14, 2025 and November 18, 2025, respectively, after pleading guilty to one count of Money Laundering Conspiracy (Lichtenstein), and one count of Money Laundering Conspiracy and one count of Conspiracy to Defraud the United States (Morgan). Defendants' plea agreements provide, *inter alia*, that apart from any determination of mandatory restitution, the Defendants agree to pay voluntary restitution to Bitfinex "in an amount to be determined." Lichtenstein Plea Agrmt., ECF No. 96, at 10; Morgan Plea Agrmt., ECF No. 101, at 10.[1] Defendants Lichtenstein and Morgan were sentenced on November 14, 2024, and November 18, 2024, respectively, with Judgments entered on December 3, 2024, and December 11, 2024. Attached to both Judgments is a Second Amended Preliminary Order of Forfeiture, which indicates that "any property, real or personal, involved in the offense alleged in Count One against Defendant Lichtenstein, and any property traceable to such property" and "any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of the offense alleged in Count Two against Defendant Morgan" is subject to forfeiture. Second Am. Prelim. Order of Forfeiture, ECF No. 195-1, at 1-2; *see also* Corrected Amended

---

[1] iFinex Inc. and BFXNA together are referred to as Bitfinex. *See* Verified Petition for Ancillary Proceedings, ECF No. 219, at 1.

1

Attachment A (listing the property, which is hereinafter referred to as the "forfeiture assets" or "forfeited assets").

Prior to sentencing, the Government filed its [141] Consent Motion for Order Authorizing Alternative Notification Procedures Out of an Abundance of Caution, which provided a procedure for notifying persons who qualified as "victims" pursuant to the Crime Victims' Rights Act, 18 U.S.C. §3771, or for restitution pursuant to the Mandatory Victim Restitution Act, 18 USC §3663A. The Government indicated its intent to establish a website for notifying persons possibly affected by the Bitfinex hack, although the Government proffered that it was their view that there were no "victims" under the CVRA, or for purposes of restitution under the MVRA. Consent Mot., ECF No. 141, at 1 & n.1. Nevertheless, the Government recognized that persons affected by the Bitfinex hack should have the opportunity to raise claims about victim status and/or restitution prior to sentencing.[2] *Id.* at 1, 6, 9. In support of its position that no one qualified as a victim, the Government noted that neither Defendant was convicted of "intrusion into the network" (i.e., the hacking of Bitfinex) or with the theft of the cryptocurrency, as those offenses were time barred. Consent Mot., ECF No. 141, at 5. Instead, the offenses of conviction were conspiracy to commit money laundering (both) and to defraud the United States (Morgan only). *Id.* More specifically, the Government cited several cases relating to its position that there were no "victims" pursuant to the CVRA, on grounds that courts look to the offense on which the defendant was convicted to determine who is a victim. *See* Consent Mot., ECF No. 141, at 5 (string citing cases). In a footnote, the Government addressed the issue of who is a "victim" for purposes of restitution under the MVRA. The Government proffered that a victim is someone whose harm results directly from the offenses of conviction rather than someone who is harmed based on relevant conduct. Consent Mot., ECF No. 141, at 5 n.2 (citing

---

[2] Information about these persons was docketed on November 14, 2024, the day Mr. Lichtenstein was sentenced. *See* Supplemental Notice, ECF No. 175.

three cases).

One day prior to Mr. Lichtenstein's sentencing, the Government filed its [171] Notice and Motion for Delayed Restitution Hearing, which moved to defer a final determination of any victims' losses and the accompanying restitution order by a period of 90 days. A few days after Ms. Morgan's sentencing, the parties filed their [184] Consent Motion to set the restitution hearing for February 21, 2025. The Court granted that Consent Motion and set a restitution hearing for February 21, 2025. *See* Order, ECF No. 185. That Order further set a January 28, 2025 deadline for third parties to file any motions to intervene/objections as well as deadlines for supplemental briefing by the parties regarding restitution.

On January 14, 2025, the Government filed its [202] Supplemental Motion Regarding Restitution, which reasserts its position that under the MVRA, "there is no "victim" for the specific offenses of conviction in this proceeding," but the Court has the authority to order the "voluntary restitution [that] is appropriate and authorized under the defendants' plea agreements," regarding Bitfinex, and such voluntary restitution should "include the residue of the property that was stolen from Bitfinex in the 2016 hack[.]" Govt. Supp. Mot., ECF No. 202, at 1. The Government contends that since these stolen assets represent "specific property lost" because of the hack, Bitfinex is entitled to restitution in kind. *Id.* "All other assets seized by the [G]overnment (which are listed in the Corrected Second Amended Attachment A (ECF No. 195)) should be subject to the ongoing third-party ancillary forfeiture proceeding." *Id.* at 1-2; *see* 21 U.S.C. §853(n) (describing the procedure for determining third party claims against the assets that have been forfeited to the Government); Fed. R. Crim. P. 32.2(c) (discussing ancillary proceedings).

The Government reiterates that the MVRA provides for mandatory restitution to "victims of the offense [for which the defendant was convicted]," and defines a victim as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be

ordered." 18 USC §3553A(a)(2). The Government concludes that "[c]ourt decisions reviewing awards of restitution to 'victims' under the . . . MVRA have generally required a direct nexus between the offense of conviction and the loss being remedied." Govt. Supp. Mot., ECF No. 202, at 2 (citing *United States v. Randle*, 324 F.3d 550, 556 (5th Cir. 2003)). As such, the Government explains there are no "victims" of mandatory restitution here because the "laundering conduct did not 'directly and proximately ' cause Bitfinex's, or its accountholders', losses." Govt. Supp. Mot., ECF No. 202, at 3.

Regarding voluntary restitution to Bitfinex, the Government notes that "the Court has the discretion to issue an appropriate restitution order." Govt. Supp. Mot., ECF No. 202, at 3; *see United States v. Peterson*, 268 F.3d 533, 535 (7th Cir. 2001) (affirming a restitution order issued pursuant to a plea agreement in which the amount was determined by the district court at sentencing). While the voluntary restitution clauses in the Defendants' plea agreements do not specify any sum certain, the Government contends that the Court should enter a restitution order on behalf of Bitfinex that includes the residue of the property that was stolen in 2016.[3] The Government argues that this would be "consistent" with the MVRA provision that "in the case of an offense resulting in damage to or loss or destruction of property of a victim of an offense," the defendant should be ordered to return the property "to the owner of the property or someone designated by the owner." Govt. Supp. Mot., ECF No. 202, at 3-4 (citing 18 USC §3663A(b)(1)(A)). The Government acknowledges further that "one or more parties may be able to assert valid claims in the third-party ancillary proceeding regardless of whether they would be considered "victims" entitled to restitution under the MVRA." Govt. Supp. Mot., ECF No. 202, at 5.[4]

---

[3] The Court is not deciding herein whether it is appropriate to award all this property as in kind restitution to Bitfinex as a voluntary victim, or whether Bitfinex should instead be awarded restitution in the amount of its actual losses incurred because of the 2016 hack.
[4] In Defendants' [237] Response to the Government Proposal as to Forfeiture and Restitution, Defendants state that they "understand that under [the Government's] proposal [granting in kind

4

To date, this Court has received numerous petitions whereby third parties ("Petitioners") state their positions and make claims against the assets that are the subject of the ancillary proceeding. Because some of these Petitioners are acting *pro se*, this Court has liberally permitted them to file documents relating to this case, some of which are styled as "motions." Furthermore, because of the number of Petitioners and the fact that some are acting *pro bono*, this Court is attempting herein to establish a procedure that considers the varying (and competing) interests of the Petitioners, Bitfinex, the Government, and Defendants. The Court notes that at least some of the Petitioners are claiming "victim" status under the CVRA and/or the MVRA. Specifically, regarding the MVRA, some Petitioners argue that because the underlying offense of conviction is a conspiracy, courts may look to the defendants' criminal conduct during that conspiracy as a basis for restitution. Additionally, some Petitioners contest that in-kind restitution should be awarded to Bitfinex, on grounds that the Petitioners are the owners of the property that was hacked and furthermore – contrary to representations by Bitfinex – they have not been adequately compensated (made whole) regarding the property that was stolen because of the hack. Accordingly, upon consideration of those claims, the Court finds that Petitioners raise three issues to be addressed by the Government prior to any restitution hearing.

First, the offense at issue here is conspiracy to commit money laundering, and the MVRA provides that "in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, [a victim is] any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 USC §3663A(a)(2). In the *Randle* case cited by the Government, the Court of Appeals for the Seventh Circuit commented that there are three

---

restitution to Bitfinex and permitting third parties to proceed against the remaining forfeiture assets in an ancillary proceeding], the defendants will not be subject to any additional restitution obligations, and instead restitution will be satisfied by the assets already forfeited from the defendants." Defs.' Resp., ECF No. 237, at 1.

5

situations in which restitution is authorized under the MVRA: "first, to a victim directly harmed by the offender's 'specific conduct that is the basis of the offense of conviction'; second, to a victim who is directly harmed by the offender's conduct in the course of committing an offense that involves 'as an element a scheme, conspiracy, or pattern'; third, if the parties so agreed in a plea agreement." *Randle*, 324 F3d at 556 (internal emphasis omitted). The Government proceeds under the first theory regarding Bitfinex and its accountholders, finding no victims, and under the third theory for Bitfinex, finding voluntary restitution. In contrast, some of the Petitioners argue that the second theory is applicable in this case, where the offense is money laundering, and the hacking and/or theft of cryptocurrency constitute elements of that conspiracy offense. *See, e.g.,* Sealed Motion to Intervene and for Order of Restitution, ECF No. 228, at 13-14 (containing argument and citing cases in support thereof); Memorandum in support of Objection to Government's Supplemental Motion regarding Restitution, ECF No. 230-1, at 6-7 (same); Sealed Motion to Intervene filed by John Doe, ECF No. 241, at 22 (same); *see also* Statements of the Offenses, ECF Nos. 96 & 100.[5] Accordingly, the Government shall provide supplemental briefing on this second theory of restitution pursuant to the MVRA and explain why it is not applicable (or practical) here.

Second, the Court recognizes the statutory authority pertaining to voluntary restitution (regarding Bitfinex) and ancillary proceedings (on behalf of third parties claiming an interest against the forfeited assets).[6] However, this Court has previously questioned as to whether awarding in kind restitution to Bitfinex of the forfeited assets that are <u>directly attributable to the hack</u> —prior to any ancillary proceeding, where third parties might claim an interest against those forfeited assets

---

[5] Currently, some motions made by Petitioners have been filed under seal. This Court will rule separately on sealing motions that were made by certain Petitioners

[6] The Court notes that the ancillary proceeding seems to provide an adequate procedure for determining the Petitioners' claims to the property that was stolen from Bitfinex/its accountholders, with the proviso that Petitioners have argued that this Court should not award in-kind voluntary restitution to Bitfinex prior to that ancillary proceeding.

directly attributable to the hack— would be improperly offsetting such voluntary restitution against the forfeited assets. *See* Order, ECF No. 208. The Government's [220] Response to the Court's Order alleges that there would be no improper offset under the circumstances presented here because "the government can only forfeit the defendants' interest in the specific properties subject to forfeiture" and further, the properties [designated for in kind restitution to Bitfinex] "would have been returned to Bitfinex by way of restitution," so therefore, "they would no longer be subject to forfeiture or the third-party ancillary proceeding." This proposition seems to assume that the forfeiture assets that would be returned in kind belonged to Bitfinex (and were therefore not subject to forfeiture in the first place). And, in fact, the Government has referenced this proposed in kind restitution to Bitfinex as return of property "to the owner of the property or someone designated by the owner." *See* Govt. Supp. Mot., ECF No. 202, at 3-4 (citing 18 USC §3663A(b)(1)(A)). But the Court notes that some Petitioners claim an ownership interest in the hacked property, and they are clearly contesting the return of that hacked property to Bitfinex. Accordingly, the Government shall provide additional briefing on whether it would be proper for the Court to order in kind restitution to Bitfinex of identifiable property in which some Petitioners claim competing ownership interests.

Third, in support of its position that there is no improper offset arising from an award of in kind restitution to Bitfinex, the Government relies upon *United States v. Emor*, 785 F.3d 671, 679 (D.C. Cir. 2015). Govt. Resp., ECF No. 220, at 2. Specifically, the Government cites the proposition that "[n]ormally, a purported victim of crime would never need to claim a vested or superior interest [in a third-party ancillary forfeiture proceeding] to obtain money back from a perpetrator." This is because "[i]n many cases, a criminal defendant pleads guilty to defrauding an identifiable victim" who seeks restitution at sentencing, and if such restitution is ordered "and the government has seized assets belonging to the crime victim, it often returns them." *Id.* Accordingly, the Government shall advise the Court of its position on whether, if this Court were to determine that some or all the

7

Petitioners qualify as victims pursuant to the MVRA, who are entitled to in kind restitution of their specific property, "return of property" to these victims could be effectuated could be effectuated (without constituting an improper offset against the forfeited assets) even though such victims were not identified in the defendants' plea agreements.

Accordingly, it is this 10th day of February 2025,

ORDERED that by no later than February 21, 2025, the Government shall address the following three issues: (1) whether, where the underlying offense of conviction is a conspiracy, courts may look to the defendants' criminal conduct during that conspiracy as a basis for restitution, and whether this is inapplicable (or impractical) this case; (2) whether it would be proper for the Court to award in kind restitution to Bitfinex of identifiable property in which some Petitioners claim competing ownership interests; and (3) whether a "return of property" to Petitioners who are victims pursuant to the MVRA could be effectuated, consistent with the Government's cited language from *Emor*, without constituting an improper offset against the forfeited assets.

*/s/ Colleen Kollar-Kotelly*
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE