UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ILYA LICHTENSTEIN, et al.,<br><br>*Defendants*.<br><br>*************<br><br>XYZ INC.<br><br>*Intervenor, Claimant, and*<br>*Third-Party Petitioner.* | Case No. 23-cr-239 (CKK) |

**XYZ'S OPPOSITION TO BITFINEX'S**
**MOTION TO DISMISS ITS ANCILLARY PETITION**

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ................................................................................................. iii

**INTRODUCTION** .................................................................................................................. 1

**BACKGROUND** .................................................................................................................... 2

**LEGAL STANDARD** ............................................................................................................ 5

**ARGUMENT** ......................................................................................................................... 5

    I.    XYZ'S PETITION IS LARGELY BASED ON A VESTED PRE-HACK INTEREST OF 2,705 BITCOINS. ................................................................................................................. 6

    II.    XYZ RECEIVED A VESTED INTEREST IN STOLEN BITCOINS ITS BITCOINS REPLACED, COIN-FOR-COIN. ................................................................................................................. 9

    III.    XYZ'S INTEREST IN EVERY BITCOIN ITS PETITION REQUESTS WAS VESTED AND SUPERIOR BEFORE DEFENDANTS ENGAGED IN THE CONSPIRACY AT ISSUE. ..............11

    IV.    BITFINEX'S UNILATERAL CONVEYANCE OF XYZ'S BITCOINS TO REPLACE STOLEN BITCOINS MADE XYZ A BONA FIDE PURCHASER. ................................................... 12

**CONCLUSION** ................................................................................................................... 13

# TABLE OF AUTHORITIES

**CASES**

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ............................................................................................................. 5

*Inova Health Care Servs. for Inova Fairfax Hosp. v. Omni Shoreham Corp.*,
 No. CV 20-784 (JDB), 2022 WL 8176488 (D.D.C. Mar. 22, 2022) ........................................ 7

*Kelo v. City of New London*,
 545 U.S. 469 (2005) ............................................................................................................. 8

*Matter of Search of Multiple Email Accts. Pursuant to 18 U.S.C. § 2703 for Investigation of Violation of 18 U.S.C. § 1956*,
 585 F. Supp. 3d 1 (D.D.C. 2022) .................................................................................... 4, 11

*McNamara v. Picken*,
 950 F. Supp. 2d 125 (D.D.C. 2013) ...................................................................................... 7

*Powers-Bunce v. District of Columbia*,
 479 F. Supp. 2d 146 (D.D.C. 2007) ...................................................................................... 7

*United States v. $4,224,958.57*,
 392 F.3d 1002 (9th Cir. 2004) .............................................................................................. 8

*United States v. 7725 Unity Ave. N.*,
 294 F.3d 954 (8th Cir. 2002) ................................................................................................ 5

*United States v. All Assets Held at Bank Julius*,
 480 F. Supp. 3d 1 (D.D.C. 2020) .......................................................................................... 9

*United States v. BCCI Holdings (Luxembourg), S.A.*,
 46 F.3d 1185 (D.C. Cir. 1995) ........................................................................................ 8, 9

*United States v. BCCI Holdings, Luxembourg, S.A.*,
 69 F. Supp. 2d 36 (D.D.C. 1999) ........................................................................................ 11

*United States v. Church & Dwight Co.*,
 510 Fed. Appx. 55 (2d Cir. 2013) ......................................................................................... 5

*United States v. Currency Totalling $48,318.08*,
 609 F.2d 210 (5th Cir. 1980) .............................................................................................. 11

*United States v. Emor*,
 785 F.3d 671 (D.C. Cir. 2015) .................................................................................... 5, 7, 12

*United States v. Farrell*,
  Case No. 03-cr-311, 2005 WL 1606916 (D.D.C. July 8, 2005) ................................................. 4

*United States v. Hooper*,
  229 F.3d 818 (9th Cir. 2000) ...............................................................................................11

*United States v. Marx*,
  844 F.2d 1303 (7th Cir. 1988) ................................................................................................ 8

*United States v. Nava*,
  404 F.3d 1119 (9th Cir. 2005) ..........................................................................................7, 11

*United States v. Preston*,
  123 F. Supp. 3d 24 (D.D.C. 2015) .......................................................................................... 5

*United States v. Reckmeyer*,
  836 F.2d 200 (4th Cir. 1987) .............................................................................................. 7, 8

*United States v. Schwimmer*,
  968 F.2d 1570 (2d Cir. 1992) .............................................................................................. 10

*United States v. Vilar*,
  2024 WL 4182598 (S.D.N.Y. Sept. 12, 2024)........................................................................ 9

*Willis Mgmt. (Vermont), Ltd. v. United States*,
  652 F.3d 236 (2d Cir. 2011) .................................................................................................. 8

**STATUTES**

18 U.S.C. § 1956(h) ....................................................................................................................4, 11

18 U.S.C. § 371.................................................................................................................................11

21 U.S.C. 853(n) ....................................................................................................................... passim

**OTHER AUTHORITIES**

Scott & William F. Fratcher, *The Law of Trusts § 462.4 (4th ed. 1989)* ......................................... 8

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. V...................................................................................................................... 8

Petitioner XYZ Inc. (proceeding pseudonymously, "XYZ") has stated a valid claim to the assets subject to forfeiture in its Petition, ECF Nos. 231-4 (under seal), 289-4 (redacted). XYZ respectfully submits this opposition to the Motion to Dismiss, ECF No. 308, filed by iFinex Inc. and BFXNA Inc. (together, "Bitfinex").

## INTRODUCTION

XYZ is the rightful owner of bitcoins recovered from Defendants under either of two theories: (1) XYZ's bitcoins were stolen by Defendant Lichtenstein on August 2, 2016; and/or (2) XYZ's bitcoins replaced, coin-for-coin, coins that Defendant Lichtenstein stole in the immediate aftermath of the August 2, 2016 hack, and XYZ was assigned losses and vested with recovery rights in those stolen coins. Under either theory, discovery from Bitfinex will allow XYZ to trace its losses and show that it is the rightful owner of more than 2,700 of the stolen bitcoins.

XYZ is not attempting to litigate a claim against Bitfinex in this court. XYZ is simply asking for the return of bitcoins that belong to it.

Bitfinex's motion does not dispute that XYZ owned 2,705.40228 bitcoins in its wallet on the Bitfinex exchange on the morning of August 2, 2016. It does not dispute that XYZ's interest in those 2,705 bitcoins was vested before August 2, 2016, nor does it dispute that at least 65 additional bitcoins were purchased with XYZ's non-bitcoin assets and used to replace (that is XYZ was effectively forced to buy) bitcoins stolen from other Bitfinex customers, coin-for-coin, immediately after the hack.[1] Bitfinex does not dispute that every bitcoin in XYZ's account before

---

[1] Bitfinex has exclusive possession of the records of transfers among customers' its wallets and accounts in early August 2016. XYZ knows what its balance was (or at least what Bitfinex said it was) on the morning of August 2, 2016, and it has some records of transfers out of its accounts recorded as occurring on August 2, 2016. Bitfinex is, however, the only party that has a complete set of orders and transactions between customers that can definitively trace the coins at issue. While the bitcoin blockchain is public, binding transactions between Bitfinex accountholders were

1

the hack was stripped from XYZ, and that when the exchange reopened, XYZ was left with 65 fewer bitcoins than were obtained by converting its non-bitcoin assets into bitcoins.[2]  Whatever number of XYZ's bitcoins were unilaterally used to replace stolen bitcoins immediately after the hack – and discovery is required to arrive at that number and to properly apply the law – those conveyances and assignments vested rights to the stolen bitcoins in XYZ.

XYZ has therefore stated a claim for recovery of bitcoins that it rightfully owns under 21 U.S.C. § 853(n).  Bitfinex's motion to dismiss the petition should be denied.

## BACKGROUND[3]

XYZ owned approximately 2,705 bitcoins in a wallet on the Bitfinex exchange as of the morning of August 2, 2016.  (XYZ Petition ¶ 17).  XYZ also held other assets with Bitfinex.  (*Id.*) The relevant Terms of Service stated explicitly that "all bitcoins in your Multi-Signature Wallets belong to and are owned by you," i.e., XYZ.  (*Id.* ¶ 11).

On August 2, 2016, Defendant Lichtenstein hacked into the Bitfinex exchange and drained bitcoin wallets "in descending order of the BTC balance, with [XYZ] having one of the largest Bitfinex balances."  (*Id.* ¶ 34 n.3).  Bitfinex records will enable tracing of the relevant XYZ bitcoins to the stolen assets.  (*Id.* ¶ 34).  XYZ, like other Petitioners, needs discovery from Bitfinex

---

not necessarily transacted on the blockchain, which would in any event occur with significant delay.

[2]  Put differently, 65 is the margin by which Bitfinex's conversion of XYZ's non-bitcoin assets immediately after the hack exceeded the bitcoins left in XYZ's wallet when the exchange reopened.  That is, if all XYZ's coins were stolen during the hack, it is the number of XYZ's coins that were used to pay in kind for the losses from other Bitfinex customers.  If fewer than all of XYZ's bitcoins were stolen during the hack, this number would be higher, coin-for-coin up to the value of XYZ's claim.

[3]  This background is abbreviated given the Court's familiarity with the case, and the factual statements already offered.

to trace between its assets and the stolen assets that rightfully belong to it. The public blockchain is simply insufficient to trace transactions that occurred in real time within Bitfinex.[4]

In the immediate aftermath of the hack, the Bitfinex exchange closed, and Bitfinex converted a substantial fraction (36.06%) of XYZ's non-bitcoin assets into additional bitcoins. (*Id.* ¶ 13). In all, XYZ paid for and obtained vested interests in approximately 4,500 bitcoins. In addition to the 2,705 bitcoins XYZ had purchased before August 2, 2016, approximately 1,795 additional bitcoins were unilaterally purchased using XYZ's non-bitcoin assets on or shortly after August 2, 2016. (*See id.* ¶ 13). XYZ's account was credited with just 1,729.6 bitcoins when the Bitfinex exchange resumed operations, leaving XYZ with a loss of 2,770 bitcoins that it paid for before or around August 2, 2016. (*Id.* ¶¶ 19-23).

XYZ never relinquished or waived its interest in the stolen bitcoins. (*Id.* ¶¶ 29, 38). XYZ received and sold (at a substantial discount to their notional value) certain BFX tokens, but those tokens did not convey title or the right to recover the stolen bitcoins to Bitfinex. (*Id.* ¶ 38). XYZ was never made whole for its interest in the stolen bitcoins. (*Id.* ¶ 38).

On or about August 3, 2024, Defendants Lichtenstein and Morgan each pled guilty to one count of money laundering conspiracy, and Defendant Morgan also pled guilty to one count of conspiracy to defraud the United States. (*See* ECF Nos. 96, 101, 110, 111). On December 11, 2024, the Court entered its most recent judgment, ordered Defendants to forfeit bitcoins that they conspired to launder, and attached a "Corrected Second Amended Attachment A" that identifies specific such assets. (ECF Nos. 198, 198-1).

---

[4] The government too has apparently been denied the necessary information. (*See* Gov't Notice, ECF No. 315 ("[T]he government . . . lacks the necessary evidence to distinguish between rival factual theories of Bitfinex accountholders in this case.")).

Although Defendants conspired to launder proceeds stemming from Defendant Lichtenstein's August 2, 2016 hack, neither Defendant pled guilty to the hack itself, as the limitations period had run by the time the government brought charges.  The elements of the 18 U.S.C. § 1956(h) conspiracy that Lichtenstein pled guilty to are: "(1) an agreement between two or more people to commit a money laundering offense; and (2) [that] they knowingly and voluntarily participated in that agreement." *Matter of Search of Multiple Email Accts. Pursuant to 18 U.S.C. § 2703 for Investigation of Violation of 18 U.S.C. § 1956*, 585 F. Supp. 3d 1, 15 (D.D.C. 2022) (citing *United States v. Farrell*, Case No. 03-cr-311, 2005 WL 1606916, at *7 (D.D.C. July 8, 2005)); *accord* Morgan Plea Tr. 50, ECF. 111.  Defendant Lichtenstein did not tell Defendant Morgan about the hack for approximately four years, and the record appears devoid of entry into a conspiracy by Ms. Morgan for a substantial period of time after August 2016.  (*See* 8/3/24 Lichtenstein Plea Tr. 28:17-23 ("[The Government:] . . . Sometime after the hack, but by no later than in or around early 2020, Lichtenstein explicitly told Morgan that Lichtenstein was responsible for the 2016 hack of VCE.  THE COURT: Would you agree with that?  THE DEFENDANT: I mean, I can't speak to Ms. Morgan's knowledge, but everything about me is correct."); 8/3/24 Morgan Plea Tr. 22 ("[Defendant Morgan:] . . . My husband did not tell me about the hack until sometime early in 2020.")).[5]

---

[5] The record shows that Ms. Morgan took some steps that might have furthered the conspiracy at least as early as 2019, (*see* Morgan Statement of Offense ¶ 25.f, ECF No. 100), when she was "suspicious" that Mr. Lichtenstein had obtained resources illegally, perhaps from drug dealing or tax evasion, but the record appears devoid of any act by Ms. Morgan relating to the hack, any knowledge of the hack, or any laundering activity of any sort by Ms. Morgan in August 2016, (*see* 8/3/24 Morgan Plea Tr. 38:16 – 39:13).

4

**LEGAL STANDARD**

"A motion to dismiss a petition under Section 853(n) prior to discovery or a hearing is treated similarly to a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b)." *United States v. Preston*, 123 F. Supp. 3d 24, 28 (D.D.C. 2015). "A third-party petition must only provide 'enough facts to state a claim to relief that is plausible on its face' to survive dismissal." *Id.* (quoting *United States v. Church & Dwight Co.*, 510 Fed. Appx. 55, 57 (2d Cir. 2013)). Like motions to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), the Court must take all well-pled facts as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

A petitioner under 21 U.S.C. 853(n)(6)(A) must assert a "right, title, or interest [that] was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property," and a petitioner can recover under 21 U.S.C. 853(n)(6)(B) if they are a "bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section."

"Any third party, 'other than the defendant,' may petition for an ancillary proceeding if it can assert a 'legal interest' in the forfeited property." *United States v. Emor*, 785 F.3d 671, 675 (D.C. Cir. 2015) (quoting 21 U.S.C. § 853(n)(2)). As to questions of standing, "any colorable claim on the property suffices, if the claim of injury is 'redressable, at least in part, by a return of the property.'" *Id.* (quoting *United States v. 7725 Unity Ave. N.*, 294 F.3d 954, 957 (8th Cir. 2002)).

**ARGUMENT**

Bitfinex's motion to dismiss should be denied because XYZ easily asserts a colorable legal interest in the bitcoins claimed. *First*, Bitfinex improperly asks the Court to grant its motion based

5

on its preferred version of the facts before any discovery, even though XYZ owned and had a vested interest in 2,705 bitcoins on the Bitfinex exchange before the hack, in addition to other assets that were converted into bitcoin, and discovery is critical to showing what happened to XYZ's assets. *Second*, because some of XYZ's bitcoins replaced, coin-for-coin, 65 or more bitcoins that were stolen from other customers, XYZ was effectively forced to purchase stolen coins from other customers, and it rightfully stands in the shoes of customers who received XYZ's bitcoins for purposes of their vested pre-hack interests in the stolen coins. *Third*, XYZ's interest was also vested in every bitcoin it seeks to recover before "the acts which gave rise to the forfeiture," because the Defendants were convicted of a laundering conspiracy that did not begin until long after XYZ's coin-for-coin replacement of some number of stolen bitcoins. *Fourth*, XYZ became a "bona fide purchaser for value of the right, title, or interest in the property" when it was unilaterally forced to replace (and thereby effectively purchase) stolen coins after the hack, and it should therefore also be allowed to proceed under 21 U.S.C. 853(n)(6)(B).

## I. XYZ's Petition Is Largely Based On A Vested Pre-Hack Interest Of 2,705 Bitcoins.

This Court recognized that a critical purpose of proceeding with the ancillary petition process is to identify the party with the "superior legal interest in [the] forfeited assets." (ECF No. 300 at 18). XYZ, not Bitfinex, has the superior right to – and indeed rightfully owns – every bitcoin it has claimed. (*See* XYZ Petition ¶¶ 9, 11, 16-17, 23). Contrary to Bitfinex, which does not (and cannot) claim that it *owned* any of the assets in its customers' pre-hack accounts, XYZ's ownership interest was vested in 2,705 specific bitcoins before the hack. (*Id.* ¶ 19). Those bitcoins were either stolen in the hack[6] or replaced stolen assets immediately after the hack. (*Id.* ¶¶ 34,

---

[6] Bitfinex wrongly claims that paragraphs 17 and 19 of XYZ's Petition concede that "its account held exactly the same amount of Bitcoin [before and] after the [h]ack." (Mot. at 11). Not so. The table uses the word "pre-haircut" to identify the balance on the morning of August 2, 2016, i.e.,

n.3). Discovery from Bitfinex is necessary to trace XYZ's assets to the stolen assets, but XYZ's allegations are sufficient to state a legal interest in the property it claims at the pleading stage. *See Emor*, 785 F.3d at 678 (finding that petition stated a valid claim by asserting that "the Forfeited Property at all times remained [its] property"); *McNamara v. Picken*, 950 F. Supp. 2d 125, 128 (D.D.C. 2013) ("A plaintiff may . . . even argue alternative claims to a jury.").[7]

Ownership is a valid interest for purposes of an ancillary proceeding; indeed, it is often the most superior, vested interest. *See United States v. Reckmeyer*, 836 F.2d 200, 205 (4th Cir. 1987) ("[T]he term 'legal interest' encompasses all legally protected rights, claims, titles, or shares in real or personal property."). An interest in property is a valid interest under 21 U.S.C. § 853(n)(6)(A) if it is acquired before the United States' interest, which attaches "only upon the defendant's conviction" and vests "at the time the defendant commits" the crime. *United States v. Nava*, 404 F.3d 1119, 1124 (9th Cir. 2005). A petitioner need only assert an interest in the property at issue that is superior to the "interest of the defendant" that the government seizes. *See* 21 U.S.C. § 853(n)(5) (providing the government an opportunity to defend "its claim to the property" at the hearing). The government has not moved to dismiss, and implicitly concedes that XYZ has stated a superior interest relative to the government, and that discovery and a hearing are needed. (*See* ECF No. Gov't Notice, ECF No. 315).

---

before the hack. As for other petitioners, these amounts are drawn from certain "extraordinary" transactions that Bitfinex recorded as occurring on August 2, 2016. (*See, e.g.*, AH-1 Petition Ex. 7, ECF No. 288-1). XYZ's Petition is clear in asserting that "[l]egal title to the subject property was vested, at all relevant times, with" XYZ, and that discovery will "enable tracing of the relevant BTC to the stolen assets." (Petition ¶¶ 32, 34).

[7] *See also Inova Health Care Servs. for Inova Fairfax Hosp. v. Omni Shoreham Corp.*, No. CV 20-784 (JDB), 2022 WL 8176488, at *6 (D.D.C. Mar. 22, 2022) ("A party may plead inconsistent facts in support of alternative theories of recovery[.]"); *Powers-Bunce v. District of Columbia*, 479 F. Supp. 2d 146, 164 (D.D.C. 2007) (similar).

As this Court noted in its Order of April 4, 2025, the District of Columbia Circuit held in *United States v. BCCI Holdings (Luxembourg), S.A.*, 46 F.3d 1185, 1190-91 (D.C. Cir. 1995), that a petitioner who is a "mere depositor" and "general creditor" of the defendant cannot state a vested or superior interest in "specific forfeited property" based on a court-created "constructive trust."[8] This case is fundamentally different from *BCCI Holdings*. The bitcoins at issue here "belong[ed] to and [were] owned by" XYZ. (XYZ Petition ¶ 11). Moreover, XYZ does not need to rely on a "fictional trust," because its interests in the assets at issue were held pursuant to an actual agreement that provided XYZ with clear, vested interests. (*See id.*) Unlike a depositor in a bank, as in *BCCI Holdings*, Bitfinex customers had clear rights to bitcoins that Bitfinex was expected to segregate and hold for it.

As *BCCI Holdings* observed, it would "offend notions of due process for the government to scoop up property in which a third party ha[d] certain kinds of equitable interests" including assets of a "trust corpus." 46 F.3d at 1190. Due process would be no less offended if those assets were seized by the government without compensation and then gifted to Bitfinex, rather than their rightful owner. *See* U.S. Const. amend. V; *Kelo v. City of New London*, 545 U.S. 469, 477 (2005).

---

[8] The United States circuit courts have come to differing conclusions about constructive trusts in the ancillary proceeding context. *BCCI Holdings* defined a constructive trust as "a *remedy* that a court devises after litigation" and "a fictional trust—not a real one." 46 F.3d at 1190-91. Several other circuit courts have disagreed. *See, e.g.*, *Willis Mgmt. (Vermont), Ltd. v. United States*, 652 F.3d 236, 245 (2d Cir. 2011) (finding it was reversible error to preclude recognition of a constructive trust); *United States v. $4,224,958.57*, 392 F.3d 1002, 1004 (9th Cir. 2004) ("It is an elementary mistake to suppose that a court creates the trust. The expression 'the court constructs the trust' is 'absurd.'" (quoting *Scott on Trusts* § 462.4 (4th ed. 1989))); *United States v. Marx*, 844 F.2d 1303, 1307 (7th Cir. 1988) (similar); *see also Reckmeyer*, 836 F.2d 200 (recognizing that general creditors could proceed at least where they defendant had forfeited substantially all their assets). XYZ respectfully submits that *BCCI Holdings* is wrongly decided if read for the broad proposition that constructive trusts can never be used in the ancillary proceeding context. The facts underlying *BCCI Holdings* are, however, fundamentally different than those here, and a constructive trust would be appropriate on the facts of this case if other vested legal interests were not readily available, though they are.

The possibility that Bitfinex intentionally comingled some client assets is similarly no bar to recovery. *See, e.g.*, *BCCI Holdings*, 46 F.3d at 1190 (recognizing that clients must have claims on assets held in trust by attorneys, presumably in IOLTA accounts); *United States v. Vilar*, 2024 WL 4182598, at *5 (S.D.N.Y. Sept. 12, 2024) (recognizing traceable assets can be apportioned if comingled).

## II. XYZ Received A Vested Interest In Stolen Bitcoins Its Bitcoins Replaced, Coin-For-Coin.

Bitfinex used at least 65 bitcoins purchased with XYZ's assets to replace stolen bitcoins owned, before the hack, by other Bitfinex customers. That is, 65 bitcoin is the number by which the bitcoins attributed to converting XYZ's non-bitcoin assets exceeded the number of bitcoins left in XYZ's wallet when the exchange reopened.

Bitfinex "ratably allocate[d]" the losses at issue among Bitfinex customers, and we expect discovery to show that customers who received XYZ's bitcoins accepted Bitfinex's allocation of their loss to XYZ. The tokens at issue were held by Bitfinex under the law of the British Virgin Islands, which generally follows English common law, and thus BVI law likely applies. *See United States v. All Assets Held at Bank Julius*, 480 F. Supp. 3d 1, 28 (D.D.C. 2020) ("The nature of a claimant's asserted property interest is 'defined by the law of the State' – or here, nation – 'in which the interest arose.'").[9] These legal systems recognize the subrogation of rights that arises when there is an intent to assign a beneficial interest to the assignee or where, as here, a debt is resolved by the conveyance of fungible assets. *See* Burkitt Declaration, Exhibit A. That is what

---

[9] XYZ is the successor to a similarly named New York LLC. The Defendants appear to have engaged in their conspiracy from New York. Depending on what light discovery sheds on Bitfinex's post-hack actions, it might be argued that New York law, rather than BVI law, applies to accepted assignments of losses between Bitfinex customers relating to stolen property. In any event, New York law is similar. *See, e.g.*, *Fed. Ins. Co. v. Arthur Andersen & Co.*, 75 N.Y.2d 366, 372 (1990) (discussing subrogation); *Holmes v. Evans*, 129 N.Y. 140, 144 (1891) (discussing equitable assignments).

happened when XYZ's bitcoins were conveyed to other customers, who were made whole to the extent of that coin-for-coin replacement of their losses; conversely, the losses were assigned to XYZ, which suffered the loss associated with the theft on a coin-for-coin basis.  There is no need, however, for the court to wade into these issues of foreign law without the benefit of discovery.

Recognizing these equitable assignments or subrogation interests under BVI law is, however, consistent with the law of this Circuit, which has "rejected the notion that Congress intended to draw the ancient, but largely ignored, distinction between technically legal and technically equitable claims in forfeiture challenges." *BCCI Holdings*, 46 F.3d at 1190 (citations omitted); *see also United States v. Schwimmer*, 968 F.2d 1570, 1582 (2d Cir. 1992).  It is also consistent with the understanding implicitly recognized by other Petitioners who have sought, not the total balance of their pre-hack balance, but the portion of the bitcoin loss assigned to them.[10]

To illustrate why XYZ's vested rights in the fungible stolen bitcoins must be recognized, consider (as functionally happened) a hypothetical Customer A who owned 100 bitcoins held at the Bitfinex exchange that Mr. Lichtenstein stole on August 2, 2016.  64 of those 100 stolen bitcoins would have been replaced in the immediate aftermath of the hack with bitcoins that belonged to other customers (including customers whose assets were and were not hacked).  Now that the government has recovered the stolen bitcoins, Customer A should be awarded the 36 bitcoins he lost.  He should not be awarded all 100 of the recovered bitcoins, which would leave him with 164 bitcoins, a windfall for him and a loss to the customers whose assets were used to make Customer A partially whole in the aftermath of the hack.

---

[10] *See, e.g.*, AH-1 Petition ¶ 9, Ex. 7, ECF Nos. 288, 288-1 (identifying as "his ownership of the stolen assets" the 36.06% allocated loss totaling 391.86, not the remaining combined balance of 694.84 BTC); Pablo Garcia Petition, ECF. No. 253 (seeking bitcoins equivalent to his "Shared Loss" not the balance of the hacked account); John Doe Petition ¶¶ 16, 39, ECF No. 285 (asserting a pre-hack balance of 1,733.56639 BTC, but seeking only 670.68637 BTC).

### III. XYZ's Interest In Every Bitcoin Its Petition Requests Was Vested And Superior Before Defendants Engaged In The Conspiracy At Issue.

The crimes of conviction are conspiracy to commit money laundering and conspiracy to defraud the United States, and the United States' interest therefore relates back to the commission of that crime. *See United States v. Hooper*, 229 F.3d 818, 821-22 (9th Cir. 2000) (finding the government's interest "related back to the time of the crime"); *accord United States v. BCCI Holdings, Luxembourg, S.A.*, 69 F. Supp. 2d 36, 51 (D.D.C. 1999) (government is entitled to seek "property that was derived from, or was used to commit, the criminal offense").

Mr. Lichtenstein did not tell Ms. Morgan about the hack until years afterwards, 8/3/24 Morgan Plea Tr. 22, and there is no evidence that Ms. Morgan took any step to launder the stolen assets in early August 2016. (*See* Morgan Statement of Offense ¶ 25.f, ECF No. 100). Even Mr. Lichtenstein seemingly engaged in no laundering activity until 2017. (*Id.* ¶ 18 (asserting that "beginning in or around January 2017[, . . .] LICHTENSTEIN began to move a portion of the stolen BTC out of Wallet 1CGA4s in a series of small, complex transactions across multiple accounts and platforms")). Because Defendants Lichtenstein and Morgan plead guilty to a conspiracy that required, as an element of that crime, their mutual entry into an agreement, *see* 18 U.S.C. §§ 371, 1956(h); *Matter of Search of Multiple Email Accts.*, 585 F. Supp. 3d at 15, the United States' interest vested on a date long after August 2016. *See Nava*, 404 F.3d at 1124. Therefore, both by pre-hack purchase and by post-hack conveyance and assignment, XYZ's interests in every bitcoin at issue easily vested in the time required under 21 U.S.C. § 853(n)(6)(A).[11]

---

[11] There is, in any event, no prohibition on assigning vested interests in forfeited property after the relevant crime occurs. *See Lucas v. United States*, 775 F.3d 544, 548 (2d Cir. 2015); *United States v. Currency Totalling $48,318.08*, 609 F.2d 210, 214 (5th Cir. 1980).

11

### IV. Bitfinex's Unilateral Conveyance Of XYZ's Bitcoins To Replace Stolen Bitcoins Made XYZ A Bona Fide Purchaser.

In addition to allowing XYZ to proceed under 21 U.S.C. § 853(n)(6)(A), the Court should recognize that on the unique facts of this case, XYZ may also proceed under 21 U.S.C. § 853(n)(6)(B). That is, assuming *arguendo* that a relevant date for purposes of 21 U.S.C. § 853(n) is the date of the uncharged wire fraud that Defendant Lichtenstein likely committed on August 2, 2016, as to the 65 or more bitcoins that were acquired with XYZ's assets and used to replace stolen bitcoins, XYZ became a "bona fide purchaser for value." 21 U.S.C. § 853(n)(6)(B). XYZ was forced to purchase that interest after the theft, when its bitcoins were used to replace stolen bitcoins. This construction would be consistent with Congress's intent, which was for "criminal forfeiture to punish criminal defendants, not crime victims." *Emor*, 785 F.3d at 678-79 ("[W]hether a third party petitioner can claim continuous title or superior interest should make little practical difference[.]"). And of course, XYZ was "reasonably without cause to believe that the property was subject to forfeiture," 21 U.S.C. § 853(n)(6)(B), because the conveyance and loss assignment was imposed unilaterally by Bitfinex, and the functional sellers were the assets' rightful owners. Discovery from Bitfinex is, however, necessary to show how many of XYZ's bitcoins were used in this fashion.

The District of Columbia Circuit has cautioned against posturing in prosecutions and ancillary proceedings that has a "heads the government wins and tails [the victim] loses form of criminal forfeiture," because that "does not comport with the statutory scheme." *Emor*, 785 F.3d at 673. Bitfinex is aiming for a similar result here. XYZ found itself frozen out of potential restitution and victim treatment under the MVRA by a plea deal that charged only laundering, and not wire fraud. Bitfinex is now attempting to freeze XYZ out of recovery a second time – at least as to some unknown number of its Bitcoins – by using the date of the hack, rather than the date of

the crime of conviction, for its arguments under 21 U.S.C. § 853(n)(6). That result would be consistent with neither Congress's intent, nor the interests of justice—both of which favor allowing XYZ's Petition to proceed.

## CONCLUSION

For those reasons, Bitfinex's Motion to Dismiss XYZ's Petition should be denied.

Date: May 7, 2025                                        Respectfully submitted,

*/s/ Aitan D. Goelman*
Aitan D. Goelman (DC Bar 446636)
Christopher R. MacColl (DC Bar 1049153)
ZUCKERMAN SPAEDER LLP
2100 L Street, NW, Suite 400
Washington, DC 20037
Tel: (202) 778-1800
AGoelman@zuckerman.com
CMacColl@zuckerman.com

*Attorneys for Intervenor, Claimant, and Third-Party Petitioner XYZ.*

## CERTIFICATE OF SERVICE

Service is effective upon represented parties by this electronic filing, pursuant to Federal Rule of Civil Procedure 5(b)(2)(E), (d)(1)(B). Service on any *pro se* party who has registered for CM/ECF is also effective pursuant to Local Rule of Civil Procedure 5.4(d). To effect service upon *pro se* parties who may not have ECF credentials, I am sending the foregoing filing and its attachments to the electronic mail addresses available to me for *pro se* petitioners.

So sworn: May 7, 2025                                    */s/ Christopher R. MacColl*