IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>ILYA LICHTENSTEIN, et al.,<br><br>  Defendants. | Case No. 23-CR-239 (CKK) |

**PETITIONER BITFINEX'S OPPOSITION TO THIRD-PARTY FRANCISCO CAVAZOS' MOTION TO DISMISS (ECF NO. 317)**

iFinex Inc. and BFXNA Inc. (together, "**Bitfinex**"), through its attorneys at Gibson, Dunn & Crutcher LLP and Kirkland & Ellis LLP, respectfully submit this memorandum of law in opposition to Francisco Cavazos' motion to dismiss Bitfinex's ancillary petition filed in *United States v. Ilya Lichtenstein and Heather Morgan*, No. 23-cr-239-CKK (D.D.C.).  Mr. Cavazos' untimely motion misstates Bitfinex's claims and mischaracterizes the record.  His arguments in support of dismissal are meritless and raise questions of fact that are premature at the motion to dismiss stage.  Bitfinex respectfully requests that this Court deny Mr. Cavazos' motion in its entirety.

**BACKGROUND**

On April 4, 2025, this Court entered a Minute Order establishing an April 21, 2025, deadline for filing motions to dismiss ancillary petitions.

On April 21, Bitfinex filed a timely motion to dismiss in compliance with the Court's Order.  ECF No. 308.  Also on April 21, third party XYZ Inc., filed a timely motion to dismiss. ECF No. 309.  No other participants filed timely motions to dismiss.

On April 24, the Court issued a Minute Order setting a schedule for opposition and reply briefs in connection with the two pending motions to dismiss.

On April 26, three weeks after the Court set a deadline for motions to dismiss, five days after that deadline passed, and two days after the Court set a briefing schedule for oppositions and replies to pending motions to dismiss, Mr. Cavazos filed his "Memorandum of Law in Support of Motion to Dismiss Bitfinex's Claim (ECF 219) (and in Further Support of ECF 309 and Victim/Intervenor Petitions)." ECF No. 317. Four days later, on April 30, Mr. Cavazos filed a separate document titled "Notice of Readiness for Ancillary Hearing." ECF No. 318.

Mr. Cavazos' filings request conflicting relief from the Court—advocating at different points for the dismissal of Bitfinex's petition, the denial of Bitfinex's motion to dismiss, and for discovery and a hearing on a variety of topics. Recognizing that Mr. Cavazos is proceeding *pro se*, Bitfinex interprets ECF No. 317 as an untimely motion to dismiss Bitfinex's ancillary petition. To the extent the Court interprets Mr. Cavazos' filings otherwise and seeks some other form of response, Bitfinex respectfully requests leave to file an amended response in accordance with the Court's interpretation, should the Court so direct.

## ARGUMENT

Federal criminal forfeiture proceedings are governed by 21 U.S.C. § 853 and Federal Rule of Criminal Procedure 32.2. *United States v. Emor*, 785 F.3d 671, 675 (D.C. Cir. 2015). "A motion to dismiss a petition under Section 853(n) prior to discovery or a hearing is treated similarly to a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b)." *United States v. Preston*, 123 F. Supp. 3d 108, 113 (D.D.C. 2015). "A third party petition must only provide enough facts to state a claim to relief that is plausible on its face to survive dismissal." *Id.* (internal quotations omitted). "For purposes of deciding any motion to dismiss, 'the facts set forth

in the petition are assumed to be true.'" *Emor*, 785 F.3d at 675 (quoting Fed. R. Crim. P. 32.2(c)(1)(A)).

To the extent the Court considers the merits of Mr. Cavazos' untimely motion, the Court should deny it outright because Mr. Cavazos lacks standing to seek dismissal of Bitfinex's claims, and his arguments for dismissal are meritless. Bitfinex has sufficiently pleaded standing and a claim for relief under Section 853(n)—which is all that is required at this stage.

A.  **MR. CAVAZOS LACKS STANDING TO CHALLENGE BITFINEX'S CLAIMS**

Mr. Cavazos lacks standing to seek the outright dismissal of Bitfinex's claims. To establish Article III standing, a petitioner must show "(1) that they suffered an injury in fact that is concrete, particularized and actual or imminent; (2) that the injury was likely caused by the defendant; and (3) that the injury would likely be redressed by the relief sought." *Heuer v. Smithsonian Inst.*, 619 F. Supp. 3d 202, 208 (D.D.C. 2022) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). To establish statutory standing, a petitioner must adequately plead "a 'legal interest' in the forfeited property." *Emor*, 785 F.3d at 677 (quoting 21 U.S.C. § 853(n)(2)).

Mr. Cavazos asserts a legal interest with respect to just 14.99 Bitcoin. Cavazos Ancillary Pet., ECF No. 252 at 1; ECF No. 318 at 1. On the basis of this claim, Mr. Cavazos seeks the dismissal of Bitfinex's asserted legal interest in over 110,000 Bitcoin, none of which Mr. Cavazos claims any legal interest in. Under bedrock Article III standing principles, parties may bring claims only where they "plausibly [] plead that a favorable decision would" redress the harm alleged. *Marino v. Nat'l Oceanic & Atmospheric Admin.*, 33 F.4th 593, 599 (D.C. Cir. 2022); *see also New York Stock Exch. LLC v. Sec. & Exch. Comm'n*, 962 F.3d 541, 552 (D.C. Cir. 2020) ("[I]n establishing standing, a [petitioner] must assert and rely on its own alleged injuries, not those of a third party . . . ."). Mr. Cavazos is "not empowered to seek dismissal" of Bitfinex's claims other than with respect to the 14.99 Bitcoin he seeks for himself, because Bitfinex's claims regarding

the remaining Bitcoin would and could "visit[] no meaningful harm" upon him. *Great Am. Ins. Co. v. Powersouth Energy Coop.*, 2022 WL 4277241, at *2 (S.D. Ala. Sept. 15, 2022).

B.   **MR. CAVAZOS' ARGUMENTS FOR DISMISSAL ARE MERITLESS**

Mr. Cavazos asserts a series of sometimes conflicting and hard-to-parse theories in his motion to dismiss papers. None have merit. First, Mr. Cavazos misstates Bitfinex's claims and otherwise mischaracterizes the record by incorrectly arguing that Bitfinex has failed to sufficiently plead a legal interest in the seized Bitcoin. Second, insofar as Mr. Cavazos moves for dismissal on the grounds that his legal interest in the seized Bitcoin is superior to Bitfinex's, Mr. Cavazos asks the Court to weigh questions of fact that are improper at the motion dismiss stage and cites at least one case that appears not to exist. For the foregoing reasons, and as discussed further below, Mr. Cavazos' motion should be dismissed.

   1.   **To the Extent Mr. Cavazos Challenges Bitfinex's Legal Interest, His Argument Is Premised on a Mischaracterization of Bitfinex's Claims**

Although Mr. Cavazos' motion is largely premised on the assumption that Bitfinex "could show legal or practical title to the recovered BTC," ECF No. 317 at 1, 3, at times he appears to challenge the sufficiency of Bitfinex's asserted legal interest in the seized Bitcoin by suggesting that "Bitfinex's claims to the recovered assets is predicated on post-hack" actions, *id.* at 1. To the extent Mr. Cavazos is making that argument, it is based on a misunderstanding of the allegations in Bitfinex's petition.

As Bitfinex's petition makes clear, Bitfinex's legal interest in the stolen Bitcoin is based on its lawful, pre-Hack ownership and control of the private keys, not on post-Hack conduct. Bitfinex's petition alleges that since 2012, years before the Hack, Bitfinex has operated a cryptocurrency exchange through which it lawfully obtained the 119,754 stolen Bitcoin, including, but not limited to, when customers transferred Bitcoin to Bitfinex's cryptocurrency wallets. *See*

ECF No. 219 ¶ 20. Before the Hack, Bitfinex "controlled the Bitfinex exchange wallet addresses, including the deposit wallet addresses for customer accounts," through control of the private keys to those wallet addresses. *Id.* ¶¶ 21, 23. By controlling the private keys and wallet addresses, "[o]nly Bitfinex was able to control the movement of Bitcoin into and out of wallets on the Bitfinex exchange," *id.* ¶ 21, and "[o]nly Bitfinex had the ability to transfer the Bitcoins in the Bitfinex wallets," *id.* ¶ 23. It was precisely because Defendant Lichtenstein "misappropriate[ed] Bitfinex's private keys" that he was able to "execute[] the Hack" and steal the Bitcoin from the wallets that Bitfinex owned and controlled. *Id.* ¶ 61. "If Bitfinex had not owned and controlled the hacked wallets, Lichtenstein would not have been able to steal Bitcoins from them." *Id.*

As Bitfinex has explained in its opposition to XYZ's motion to dismiss, these allegations easily suffice to establish a legal interest in the stolen Bitcoin. *Preston*, 123 F. Supp. 3d at 113 ("A third party petition must only provide enough facts to state a claim to relief that is plausible on its face to survive dismissal.") (internal quotations omitted). And no further showing is required at the motion-to-dismiss stage. *See id.* at 114 (noting that courts do not weigh evidence at the motion-to-dismiss stage).

2.   **Mr. Cavazos' Motion Seeks to Prematurely Litigate Issues That Should Be Decided in the Ancillary Hearing**

The thrust of Mr. Cavazos' argument appears to be that, even assuming Bitfinex can establish "legal or practical ownership" of the seized Bitcoin, Mr. Cavazos has a superior claim of "beneficial ownership," which the Court should vindicate "as a matter of equity" by imposing a "constructive trust" in favor of Mr. Cavazos. ECF No. 317 at 1; *id.* at 3 ("Any legal title Bitfinex claims is subordinate to customers' beneficial interests."). Not only is this argument laden with questions of fact that are prematurely raised at the motion to dismiss stage; Mr. Cavazos also relies on inapposite—or nonexistent—authority to advance these claims. For both these reasons, his

motion should be denied.

To survive a motion to dismiss an ancillary petition in this action, a petitioner need only plausibly allege a legal interest in the seized property superior to the Defendants' at the time of the Hack. *Preston*, 123 F. Supp. 3d at 116 (citing 21 U.S.C. § 853(n)(6)(A)). The *determination* of the superiority of competing well-pleaded claims occurs only in the course of the ancillary proceeding, not at the motion-to-dismiss stage, because such determination requires the Court to undertake a fact-intensive and claimant-specific inquiry that cannot be resolved at this early stage of the proceeding. *See e.g.*, United States v. Timley, 507 F.3d 1125, 1130 & n.2 (8th Cir. 2007) ("If a court determines the claimant has an interest in the property under the law of the jurisdiction that created the property right, then *at the ancillary hearing*, it must next look to federal law … to determine if the claimant will prevail in the ancillary proceeding.") (emphasis added); *United States v. Furando*, 40 F.4th 567, 576 (7th Cir. 2022) (noting that if "the claimants' petition conform[ed] to all relevant requirements of 21 U.S.C. § 853" then "the Rules of Criminal Procedure supports holding that the district court *must* conduct an ancillary proceeding") (emphasis in original).

Mr. Cavazos argues that his interest in approximately 15 Bitcoin is superior to Bitfinex's interest. *See* ECF No. 317 at 1. In so doing, Mr. Cavazos claims, incorrectly, that Bitfinex wrongfully acquired its customers' Bitcoin and that the Court should impose a constructive trust as a form of equitable relief to permit this petitioner to recover the Bitcoin he seeks. *Id.* at 3. This argument is fact-specific and premature. It is also unsupported by the record and by the authority Mr. Cavazos cites, and is meritless in any event.

"As a general principle…a constructive trust is said to arise '[w]here a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be

unjustly enriched if he were permitted to retain it.'" *United States v. Emor*, 2013 WL 3005366, at *13–14 (D.D.C. June 18, 2013), *aff'd in part, rev'd in part*, 785 F.3d 671 (D.C. Cir. 2015) (quoting *United States v. All Assets Held at Bank Julius Baer & Co.*, 772 F. Supp. 2d 191, 199–200 (D.D.C. 2011). "State law determines whether a petitioner is the beneficiary of a constructive trust, just as it determines other aspects of a petitioner's legal interest in forfeited property." *Id.* at *14; *see also Willis Mgmt. (Vermont), Ltd. v. United States*, 652 F.3d 236, 242 (2d Cir. 2011). Whether to impose a constructive trust depends on a fact-specific inquiry into the nature and circumstances surrounding the conveyance of property from one party to another. *Id.*; *All Assets Held at Bank Julius Baer & Co.,* 772 F. Supp. 2d at 199; *Peart v. D.C. Hous. Auth.*, 972 A.2d 810, 813 (D.C. 2009).

Such fact-specific inquiries are premature at the motion to dismiss stage. *See Preston*, 123 F. Supp. 3d at 114 ("The Court does not weigh evidence at this stage and therefore does not consider the additional evidence put forth by the Government, however strong it may be."); *United States v. Dupree*, 919 F. Supp. 2d 254, 267 (E.D.N.Y. 2013) (finding statutory standing based on the "four corners of the pleadings" and refusing to "look beyond the pleadings and weigh evidence extrinsic to the petition"), *aff'd in part, vacated in part on other grounds by United States v. Watts*, 786 F.3d 152 (2d Cir. 2015). And the Court should decline to undertake one here. Indeed, Mr. Cavazos himself acknowledges the role extrinsic evidence plays in the Court's constructive trust analysis and concedes that "[b]ecause constructive trust is a fact-intensive and equitable doctrine" dismissal at this stage would be "premature." ECF No. 317 at 3. Mr. Cavazos also concedes that "[t]he record amply supports further proceedings" and asks that the Court "permit discovery and hearing on all constructive trust and restitution issues." *Id*.

Nevertheless, assuming *arguendo* this were not the case—which it is—Mr. Cavazos'

arguments in support of the imposition of a constructive trust still fall short. Mr. Cavazos argues Bitfinex's "acquisition of practical control [of the stolen Bitcoin] was tainted by coercion, misinformation, and breach of duty to its customers." ECF No. 317 at 2. Mr. Cavazos identifies the Haircut and other aspects of Bitfinex's post-Hack compensation program as the sources of this supposed wrongful conduct. *Id*. He also claims Bitfinex's "Terms of Service, BFX token agreements, and subsequent representations … all confirm that customers retained rights to restitution and never released or waived claims[.]" *Id.* at 3. As discussed *supra* and extensively in Bitfinex's filings, this is simply not what Bitfinex alleges; Bitfinex asserts a legal interest in the seized Bitcoin that predates the Hack. *See, e.g.,* Bitfinex Petition ¶¶ 1-2, 5-6, 19-23, 26-28.

Mr. Cavazos fails to plausibly allege a constructive trust, and even if his equitable arguments had any merit (which is not the case), it would be premature to decide these issues on a motion to dismiss.[1] *Preston*, 123 F. Supp. 3d at 114 (noting that courts do not weigh evidence at the motion-to-dismiss stage). Constructive trusts are used only as a "shield" against dismissal as opposed to a "sword" for affirmatively attacking other third-party petitions, *see, e.g., United States v. Emor*, 785 F.3d 671, 682 (D.C. Cir. 2015*); Willis Mgmt. (Vermont), Ltd*., 652 F.3d at 246; *United States v. Ramunno*, 599 F.3d 1269, 1271 (11th Cir. 2010); *United States v. Salti*, 579 F.3d 656, 670 (6th Cir. 2009); *United States v. Watts*, 786 F.3d 152, 168 (2d Cir. 2015). Therefore, and in accordance with Mr. Cavazos' own concessions, the Court should delay this fact-intensive inquiry to a more appropriate stage. *See Timley*, 507 F.3d at 1130 & n.2.

Recognizing that Mr. Cavazos is acting *pro se*, Bitfinex is nonetheless compelled to note

---

[1] Even if Mr. Cavazos' constructive trust argument could be used as an affirmative basis to dismiss Bitfinex's claims (which it cannot), it would apply *solely* to the 14.99 Bitcoin that Mr. Cavazos claims an interest in. *See Fed. Ins. Co. v. United States*, 882 F.3d 348, 373 (2d Cir. 2018) ("[A] constructive trust attaches only to the specific property appropriated from a claimant by the offender or that can be traceable thereto.").

that his motion includes misquotes, faulty citations, and, in some instances, apparently fictional legal authority. For instance, Mr. Cavazos argues the Court should impose a constructive trust in accordance with a quote he attributes to either a case he identifies as "*Knell v. Knell,* 999 F.2d 837, 840 (5th Cir. 1993)" or to the "(Restatement (Third) of Restitution and Unjust Enrichment § 55." *See* ECF No. 317 at 2. Yet the ostensibly quoted language does not appear in either source. In fact, the "*Knell v. Knell*" case Mr. Cavazos cites does not appear to exist.[2] Many of the other sources and quotes Mr. Cavazos includes in his Motion are similarly flawed. *See, e.g., id.* (attributing quote to *United States v. $4,224,958.57,* 392 F.3d 1002, 1004-05 (9th Cir. 2004) that does not appear in the opinion); *id.* (attributing quote to "*In re MJK Clearing, Inc.*," that does not appear in the opinion, which denies a constructive trust claim)[3]; *id.* (citing *United States v. Ramunno*, 599 F.3d 1269, 1274 (11th Cir. 2010) as an example of a case where courts grant constructive trusts, when, in fact, the *Ramunno* court denied the request for a constructive trust).

\* \* \*

---

[2] Bitfinex was unable to identify any case that could be interpreted as "*Knell v. Knell*, 999 F.2d 837, 840 (5th Cir. 1993)."
[3] Bitfinex assumes Mr. Cavazos intended to cite *In re MJK Clearing, Inc.*, 371 F.3d **397** (8th Cir. 2004) and not "*In re MJK Clearing, Inc.*, 371 F.3d **860** (8th Cir. 2004)." *See* ECF No. 317 at 2 (emphasis added).

## CONCLUSION

Bitfinex respectfully requests that the Court deny Mr. Cavazos' untimely motion.

Dated:  New York, New York
        May 12, 2025

GIBSON, DUNN & CRUTCHER LLP

By: <u>  /s/ Barry H. Berke                </u>
    Barry H. Berke (admitted *pro hac vice*)
    Daniel M. Ketani (admitted *pro hac vice*)
    Trevor Gopnik (admitted *pro hac vice*)
    200 Park Avenue
    New York, New York 10166
    Tel: (212) 351-4000
    bberke@gibsondunn.com
    dketani@gibsondunn.com
    tgopnik@gibsondunn.com

    Stephanie L. Brooker (D.C. Bar No. 475321)
    Nick Harper (D.C. Bar No. 144707)
    1700 M Street N.W.
    Washington, D.C. 20036
    Tel: (202) 955-8500
    sbooker@gibsondunn.com
    nharper@gibsondunn.com

KIRKLAND & ELLIS LLP

    Mark C. Holscher (admitted *pro hac vice*)
    555 S. Flower Street
    Los Angeles, California 90071
    Tel: (213) 680-8190
    mark.holscher@kirkland.com

    Laura Vartain (admitted *pro hac vice*)
    555 California Street
    San Francisco, California 94104
    Tel: (415) 439-1400
    Laura.vartain@kirkland.com

*Attorneys for Third-Party Petitioners iFinex Inc. and BFXNA Inc.*

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 12, 2025, I filed and therefore caused the foregoing document to be served via the CM/ECF system in the United States District Court for the District of Columbia on all parties registered for CM/ECF in the above-captioned matter. I further certify that I caused a service copy of the foregoing to be sent via email and/or mail to the persons listed below who may not be included on the CM/ECF service list. *Pro se* petitioner "A.B." was not served by email or mail because neither his email address nor physical address has been provided.

      Louis Zuijderwijk

      Jonas Paasch

      Rafal Bielenia

      Pablo Garcia Illescas

      Francisco Cavazos

*/s/ Barry H. Berke*
Barry H. Berke