**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA

v.

ILYA LICHTENSTEIN, et al.,

              Defendants.

Case No.  23-cr-239 (CKK)

**RICHARD ROE'S REPLY TO BITFINEX'S OPPOSITION TO MOTION TO FILE OUT OF TIME MOTION TO INTERVENE AND VERIFIED ANCILLARY PETITION**

GREENSTEIN DELORME & LUCHS, P.C.

James D. Sadowski, DC Bar #446635
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone:  202.452.1400
Fax:  202/452/1410
Email:  JDS@gdllaw.com

DAVIS+GILBERT LLP
Joseph Cioffi
H. Seiji Newman
Joel Melendez
Adam Levy
1675 Broadway
New York, NY 10019
212-468-4800
jcioffi@dglaw.com
hnewman@dglaw.com
jmelendez@dglaw.com
alevy@dglaw.com

*Counsel for Movant Richard Roe*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

I.   Roe's Petition is Timely under Section 853(n) ........................................................ 2

      A.   Section 853(n)'s 30-Day Deadline Has Not Yet Started ...................................... 2

           *i.   Roe is Entitled to Direct Notice* ................................................................ 2

           *ii.  The Time Period in Section 853(n) Has Not Started Because the Government Did Not Provide Direct Notice* ............................................................ 6

      B.   This Court has Discretion to Accept Untimely Petitions ...................................... 9

II.  ROE SATISFIED THE STANDARD FOR EXCUSABLE NEGLECT ........................... 11

      A.   Roe's Delay is Excusable ................................................................................. 11

           *i.   There was no "adequate notice" of the ancillary proceeding* ........................... 11

           *ii.  Roe provided sufficient reason for the delay* ................................................ 14

      B.   There is No Prejudice to the Government or Any Petitioners ............................... 14

      C.   The Length of Delay is Minimal and Roe is Acting in Good Faith....................... 15

III. BITFINEX LACKS STANDING TO OPPOSE ROE'S MOTION ................................... 16

## TABLE OF AUTHORITIES

**Cases**

*Argentine Republic v. Nat'l Grid. Plc.*,
    637 F.3d 365 (D.C. Cir. 2011) ............................................................. 10

*Doe v. Bd. of Trs. for the Univ. of Ark.*,
    No. 5:22-cv-05137, 2023 U.S. Dist. LEXIS 221185
    (W.D. Ark. Dec. 12, 2023) .................................................................. 14

*In re Chicago, M., S. P. & P. R. Co.*,
    756 F.2d 508 (7th Cir. 1985) .............................................................. 10

*In re Viropharma, Inc., Sec. Litig.*,
    No. 02-1627, 2003 U.S. Dist. LEXIS 5623
    (E.D. Pa. Apr. 3, 2003) ....................................................................... 11

*Sherrod v. Breitbart*,
    720 F.3d 932 (D.C. Cir. 2013) ............................................................ 10

*U.S. v. BCCI Holdings, et al.*,
    916 F. Supp. 1276 (D.D.C. Feb. 27, 1996) ....................................... 10

*United States v. $38,000 in U.S. Currency*,
    816 F.2d 1538 (11th Cir. 1987) ........................................................... 6

*United States v. $39,480.00 in United States Currency*,
    190 F. Supp. 2d 929 (W.D. Tex. Mar. 6, 2022) ................................ 10

*United States v. 7215 Longboat Drive (Lot 24)*,
    750 F.3d 968 (8th Cir. 2014) ...................................................... 3, 4, 6

*United States v. Aguirre*,
    476 F. App'x 333 (5th Cir. 2012) ................................................ 10, 14

*United States v. Alverez*,
    710 F. 3d 565 (5th Cir. 2013) .............................................................. 7

*United States v. Bouler*,
    927 F. Supp. 911 (W.D.N.C. 1996) .................................................. 11

*United States v. Carmichael*,
    440 F. Supp. 2d 1280 (M.D. Ala. 2006) ............................................. 8

*United States v. Davenport,*
  668 F.3d 1316, 1323 (11th Cir. 2012) ............................................................ 7, 10

*United States v. Erpenbeck,*
  682 F.3d 472 (6th Cir. 2012) ...................................................... 3, 4, 5, 8

*United States v. Estevez,*
  845 F. 2d 1409 (7th Cir. 1988) ................................................................ 3

*United States v. Kahnawake-Mohawk Indus.,*
  Case No. 00-CR-0523 (JS), 2010 U.S. Dist. LEXIS 79246
  (E.D.N.Y. Aug. 3, 2010)................................................................ 8

*United States v. Loria,*
  No. 3:08cr233-2, 2009 U.S. Dist. LEXIS 86140
  (W.D.N.C. Sep. 21, 2009) ............................................................ 8, 15

*United States v. Lyons,*
  No. 10-10159-PBS, 2013 U.S. Dist. LEXIS 53355
  (D. Mass. Apr. 12, 2013) ............................................................ 15

*United States v. Marion,*
  562 F. 3d 1330 (11th Cir. 2009) ................................................ 8

*United States v. Onofrio,*
  Case No. 22-cr-322 (SRN/TNL), 2025 U.S. Dist. LEXIS 24068
  (D. Minn. Feb. 11, 2025) ............................................................ 4, 8

*United States v. Pavlock,*
  No. 1:10CR7, 2014 U.S. Dist. LEXIS 186042
  (N.D.W. Va. Mar. 4, 2014)............................................................ 15

*United States v. Singer,*
  No. 19-cr-10078-DJC, 2024 U.S. Dist. LEXIS 71753
  (D. Mass. Apr. 19, 2024) ............................................................ 11

*United States v. Spitzer,*
  357 F. Supp. 3d 695 (N.D. Ill. 2019) ............................................ 9

*United States v. Stells,*
  Criminal No. 14-16-DLB-CJS-01, 2016 U.S. Dist. LEXIS 15574
  (E.D. Ky. Jan. 19, 2016) ............................................................ 9

*United States v. Suarez*,
   No. 15-CR-20411, 2016 U.S. Dist. LEXIS 194074
   (S.D. Fla. Dec. 6, 2016) ................................................................................................... 15

*United States v. Watson*,
   No. 22-CR-00121(1) (JMB/DTS), 2024 U.S. Dist. LEXIS 134005
   (D. Minn. July 30, 2024) .................................................................................................. 8

**Statutes**

21 U.S.C. § 853(n) ........................................................................................................... 1, 3, 4, 9

Fed. R. Civ. P. 6(b) ......................................................................................................... 1, 10, 11

Fed. R. Civ. P. 60(b) ............................................................................................................... 10

Fed. R. Crim. P. 32.2 ......................................................................................................... 1, 3, 8

Fed. R. Crim. P. 32.2(b)(6)(A) ............................................................................................ 3, 13

Fed. R. Crim. P. 32.2(b)(6)(B) ................................................................................................. 7

Fed. R. Crim. P. 32.2(b)(6)(C) ................................................................................................. 9

Fed. R. Crim. P. 32.2(b)(6)(D) ................................................................................................. 3

Fed. R. Crim. P. 32.2(c) .......................................................................................................... 10

Movant Richard Roe ("Roe"), by and through his undersigned counsel, respectfully submits this reply in response to Bitfinex's opposition ("Opposition" or "Opp."), ECF No. 323, to Roe's motion to file an out of time motion to intervene and verified ancillary petition pursuant to Federal Rule of Civil Procedure 6(b) ("Motion" or "Mot.").

## <u>INTRODUCTION</u>

Bitfinex's Opposition – which at the time it is was filed the Court had not authorized and was premature, and which Bitfinex submitted after unilaterally granting itself a 14-day extension, *see* ECF No. 314 – seeks to preclude Richard Roe from asserting his legal right to the 494.04048966 Bitcoin (the "Stolen Assets") that were taken from him as a direct result of Defendants' hack. The Stolen Assets are worth over $53 million today, making Roe the third largest claimant in these ancillary proceedings, and the Stolen Assets are traceable directly from Roe's wallet to Defendants' virtual wallet seized by the Government.

Roe's ancillary petition remains timely under Section 853(n). The time period set by that statute does not begin to run unless and until the petitioner receives direct notice as required by Rule 32.2 of the Federal Rules of Criminal Procedure. It is undisputed that Roe did not receive notice and that he was unaware of the ancillary proceedings until mid-April 2025. Yet, even if Roe's ancillary petition were untimely under the statute (which it is not), the Court should exercise its discretion to permit Roe to participate in the proceeding.

Additionally, good cause exists to excuse Roe from this Court's so-ordered deadline for ancillary petitions. Roe had no notice of such order. And, for the reasons stated in the Motion, including in Roe's sworn affidavit (the "Roe Aff."), Roe satisfies the standard for excusable neglect to file his late ancillary petition. Despite the nearly 100 pages submitted by Bitfinex in its Opposition (comprised mostly of irrelevant information about the Bitfinex hack generally, and

next to nothing about these ancillary proceedings specifically), and despite Bitfinex's repeated insistence that the Government's notice here was adequate, *only 17 petitioners* have come forward to claim their interest in more than $10 billion of digital assets – a fact that this Court has itself acknowledged. *See* Memorandum Opinion, dated Apr. 4, 2025 (ECF No. 300), at 17 (noting that "the total amount of BTC . . . claimed by all Petitioners constitutes a small percentage of the total Bitfinex Hack Wallet Funds").

It is unclear why Bitfinex is even opposing the Motion. Bitfinex has not shown in any meaningful way how Roe's petition could delay the ancillary proceeding. And, permitting Roe to intervene will have no prejudicial effect on Bitfinex, any other petitioner, or the Government. In its ancillary petition, Bitfinex claims ownership over nearly every asset seized by the Government. Yet, such assets, including the Bitcoin that Roe is making a claim to, either belong to Bitfinex or they do not, which is a determination that the Court will make regardless of whether Roe is permitted to file his ancillary petition.

Last, although Bitfinex attempts to argue that this Court lacks the authority to permit Roe to participate in the ancillary proceeding, it ignores that this Court already extended the deadline for submitting ancillary petitions once. The Court has the authority, in these circumstances, to do so again for Roe.

## ARGUMENT

### I.    Roe's Petition is Timely under Section 853(n)

#### A.  Section 853(n)'s 30-Day Deadline Has Not Yet Started

##### i.    Roe is Entitled to Direct Notice

To obtain title to property through criminal forfeiture, "[d]ue process requires the government to provide 'notice reasonably calculated, under all the circumstances, to apprise

interested parties of the pendency of' a legal action that will determine their rights to property, and to 'afford them an opportunity to present their objections.'" *United States v. Erpenbeck*, 682 F.3d 472, 476 (6th Cir. 2012)) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

Under Rule 32.2 of the Federal Rules of Criminal Procedure,[1] the "government must publish notice of the [forfeiture] order *and send notice to any person who reasonably appears to be a potential claimant* with standing to contest the forfeiture in the ancillary proceeding." Fed. R. Crim. P. 32.2(b)(6)(A) (emphasis added); *see* Mot. at ¶ 13. Further, Rule G of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules"), incorporated in relevant part by Rule 32.2(b)(6)(D), states that the government must provide such notice "by means reasonably calculated to reach the potential claimant." Supplemental Rules, Rule G(4)(b)(iii)(A). In other words, for persons "whom the government knows, or reasonably should know, have an interest in forfeitable property," due process requires the "government [] attempt to provide direct written notice of the proceedings" through reasonably calculated means. *Erpenbeck*, 682 F.3d at 476. Failure to do so "raise[s] serious, likely devastating, constitutional objections." *See id.*

Thus, courts that have considered this issue have held that Section 853(n)'s 30-day deadline does not run where, as here, the government failed to provide claimant with direct notice as required by Rule 32.2 and the Supplemental Rules. *See, e.g.*, *United States v. 7215 Longboat Drive (Lot 24)*, 750 F.3d 968, 974-75 (8th Cir. 2014); *Erpenbeck*, 682 F.3d at 476; *United States v. Estevez*, 845 F. 2d 1409, 1412 (7th Cir. 1988) (noting "this Court is sensitive to the mandate

---

[1] The 2009 amendment to Rule 32.2 "codifies and restates prevailing due process requirements governing adequate notice." *Erpenbeck*, 682 F.3d at 477 (citing *United States v. Davenport*, 668 F.3d 1316, 1322-23) (internal quotation marks omitted).

which requires the government to provide adequate notice to potential claimants in forfeiture proceedings" and holding date on which claimant "and his counsel received the published notice . . . was the first time he was adequately apprised of the extent of the interest sought by the government, [and thus] this date should be considered to commence the thirty-day period to file a claim under 21 U.S.C. § 853(n)"); *United States v. Onofrio*, Case No. 22-cr-322 (SRN/TNL), 2025 U.S. Dist. LEXIS 24068, at *10 (D. Minn. Feb. 11, 2025) (holding claimant "never received such notice [from the government], so the Court finds that the clock never started ticking and [claimant]'s petition is timely").

For example, in *7215 Longboat Drive*, the district court held that two claimants' petitions were untimely because they were filed more than 30 days after communications between the government and claimants' counsel. 750 F.3d at 971-72. The government argued that an email from claimants' counsel stating that he "may" represent the claimants demonstrated counsel's actual notice. *Id.* at 974. The Eighth Circuit reversed, holding that "[g]iven that the forfeiture statute expressly defines 'direct notice,' . . . 'actual notice' must include, at a minimum, actual knowledge of the deadline to file a claim," a construction that "avoids constitutional deficiencies this circuit has identified in similar forfeiture contexts." *Id.* at 974-75. As a result, the Eighth Circuit found that claimants lacked actual knowledge of the deadline to file their claim and held the petitions were "not untimely because the time for filing a claim has not yet begun to run." *Id.* at 974.

Similarly, in *Erpenbeck*, the Sixth Circuit vacated a final order of forfeiture where the government had failed to provide the defendant's bankruptcy trustee with sufficient notice of the forfeiture proceedings, thereby depriving him of the chance to participate. *See* 682 F.3d at 474. There, the government offered several reasons for failing to provide direct notice to the trustee,

including, *inter alia*, because it (i) had no knowledge that the bankruptcy case remained ongoing and (ii) assumed that the trustee received notice through the district court's CM/ECF system.  The Sixth Circuit rejected each of these arguments.  *Id.* at 478-79.  It found that the government had not engaged in the "kind of 'reasonably diligent effort[]' due process requires the government to undertake in identifying potential third-party claimants," like the trustee.  *Id.* at 479 (citation omitted).  Moreover, the government offered no evidence that its reliance on CM/ECF was "reasonably calculated, under all the circumstances," to effect notice to the trustee.  *Id.*  Moreover, the government failed to take even the "modest step" of mailing a certified letter to the trustee.  *See id.* at 480.  As a result, the Sixth Circuit held that the trustee's petition was not untimely and the ancillary proceedings were reopened.  *Id.*

Here, the government knew, or reasonably should have known, no later than mid-2023 that Bitfinex accountholders have an interest in the property that is now subject to forfeiture in this case.  *See* Mot. at ¶ 13.  In the Lichtenstein Statement of Offense filed by the government on August 3, 2023, the government acknowledged that the assets subject to forfeiture may include "assets *belonging to* [accountholders]."  ECF No. 95 at ¶ 14 (emphasis added); *see also* Lichtenstein Plea Tr. (Aug. 3, 2023), ECF No. 110, at 24:5-8 (same).  In addition, on October 8, 2024, the government stated that Bitfinex accountholders "lost value in 2016" in connection with the defendants' theft of the forfeited assets.  Consent Motion For Order Authorizing Alternative Notification Procedures Out of an Abundance of Caution, ECF No. 141, at 5.  And the government received victim statements in between September and November 2024 that further served to put the government on notice of accountholders' claims to the forfeited assets.  *See, e.g.*, ECF No. 173-1 (Ltr. from Perkins Coie dated Nov. 12, 2024), at 1 (writing "on behalf of our client, a former Bitfinex account holder whose account was hacked . . . and whose assets were directly stolen and

laundered by the defendants in the above captioned case"); *id.* (Ltr. from Mr. Bielenia dated Nov. 2, 2024, at 1 ("On the day of the hack, I held . . . Bitcoin in a segregated wallet at Bitfinex, all of which were subsequently transferred to a hacker's wallet.").  Finally, the government expressly acknowledged that the ancillary proceeding would provide a forum for accountholders to resolve ownership claims with respect to the forfeited assets.  *See, e.g.*, Government's Supp. Mot. (Jan. 14, 2025), ECF No. 202, at 5 ("[T]he government anticipates that one or more parties may be able to assert valid claims in the third-party ancillary proceeding regardless of whether they would be considered 'victims' entitled to restitution under the MVRA."); *id.* at 2 n.1 ("Bitfinex and/or other claimants may well have meritorious claims to remaining seized assets during the third-party ancillary forfeiture proceeding.").

Accordingly, the government knew that Bitfinex accountholders reasonably appear to be potential claimants that had standing to contest the forfeiture in the ancillary proceeding, triggering the requirement that the government provide direct notice to accountholders.  *See* Mot. at ¶ 13. Thus, as an accountholder, Roe was entitled to—but did not receive—direct notice of the forfeiture proceedings.  *See id.*

    ii.    *The Time Period in Section 853(n) Has Not Started Because the Government Did Not Provide Direct Notice*

The government bears the burden to demonstrate that it strictly complied with the direct notice requirements of Rule 32.2.  *7215 Longboat Drive*, 750 F.3d at 974 (providing it is "well-established that forfeiture statutes are strictly construed against the government") (quoting *United States v. $493,850.00 in U.S. Currency*, 518 F.3d 1159, 1169 (9th Cir. 2008)); *see also United States v. $38,000 in U.S. Currency*, 816 F.2d 1538, 1547 (11th Cir. 1987) ("If anything, the burden on the government to adhere to the procedural rules should be heavier than on claimants.

Forfeitures are not favored in the law; strict compliance with the letter of the law by those seeking forfeiture must be required.").  The government cannot do so.

It is undisputed that the government failed to provide any notice to Roe.  *See* Roe Aff. at ¶ 11; Opp. at 12 (acknowledging, without disputing, the fact that "Roe asserts that the government fail[ed] to provide direct notice").  Rather, Bitfinex argues that the government can rely on a website that it set up to seek victim statements in connection with restitution under the Crime Victims' Rights Act (CVRA) and the Mandatory Victims Restitution Act (MVRA).  *See* Opp. at 13.  Bitfinex's argument misses the point.  Under Rule 32.2, the government is required to provide direct notice to Roe that "must," at a minimum, describe the property to be forfeited, state the applicable deadlines for petitions contesting the forfeiture, and provide the name and contact information for the government attorney to be served with petitions.  *See* Fed. R. Crim. P. 32.2(b)(6)(B).  Nothing in Bitfinex's Opposition explains how a "website requesting that potential victims submit statements to a government e-mail address provided on the website," Opp. at 13, satisfies the detailed and express requirements for notice required by Rule 32.2(b)(6)(B) and Due Process.

The cases cited by Bitfinex regarding notice are wholly inapposite.  *See* Opp. at 9-10, 14. In most, the government in fact provided *direct* notice to the respective claimants—*see, e.g.*, *United States v. Alverez*, 710 F. 3d 565, 567 (5th Cir. 2013) (finding "copy of the forfeiture order was personally served on A.A., in care of her mother, on February 11, 2020," which service was "reasonably calculated" to reach claimant and thus, "after sufficient notice, the thirty-days began to run on February 11, when A.A. was physically served"); *United States v. Davenport*, 668 F.3d 1316, 1323 (11th Cir. 2012) (finding "notice of forfeiture sent to [claimant's] attorney was adequate" and "satisfied prevailing due process requirements"); *United States v. Marion*, 562 F.

3d 1330, 1341 (11th Cir. 2009) ("It is undisputed that [claimant] received proper written notice of the preliminary order of forfeiture[.]"); *United States v. Preston*, 123 F. Supp. 3d 24, 29-30 (D.D.C. 2015) ("Government later served [claimant] directly"; and claimant "does not claim that she did not receive the Fourth Amended Order or otherwise challenge the sufficiency or date or service")—or effected notice by publication consistent with Rule 32.2, *see United States v. Kahnawake-Mohawk Indus.*, Case No. 00-CR-0523 (JS), 2010 U.S. Dist. LEXIS 79246, at *4 (E.D.N.Y. Aug. 3, 2010) ("Notice of the forfeiture was published in the New York Post three times[.]").  The other cases involved unsecured creditors and other petitioners who—unlike accountholders in this proceeding—had no discernable interest in the forfeited property and/or whose petitions contained fatal defects warranting dismissal.[2]

Bitfinex also contends the government's "forfeiture.gov" website can somehow effect direct notice.  *See* Opp. at 13.  But courts recognize that claimants do not "occup[y] [their] free time by browsing www.forfeiture.gov," rejecting outright the argument made by Bitfinex.  *See, e.g.*, *Erpenbeck*, 682 F.3d at 475 (noting petitioner "never knew the thirty-day clock was ticking—having apparently not occupied his free time by browsing www.forfeiture.gov"); *Onofrio*, 2025 U.S. Dist. LEXIS 24068, at *3 (same).  As the *Onofrio* court succinctly notes: Although "[b]y statute, the Government can simply 'publish notice of a [preliminary] order' . . . online"; compliance with Rule 32.2 is required "to avoid 'serious, likely devastating, constitutional

---

[2]  *See United States v. Carmichael*, 440 F. Supp. 2d 1280, 1281-82 (M.D. Ala. 2006) (finding creditor was not provided with direct written notice of the forfeiture action pertaining to real property in which it had a potential interest because it had filed no lien, or other recorded notice, to preserve its interest); *United States v. Eckenberg*, 918 F. Supp. 2d 1089 (D. Or. 2013) (finding petitioner lacked standing to bring a claim); *United States v. Loria*, No. 3:08cr233-2, 2009 U.S. Dist. LEXIS 86140, at *2 (W.D.N.C. Sep. 21, 2009) (finding petitioner's last known address had been foreclosed, "it was believed that [petitioner] had left the United States" and "petition [was] invalid because it was not signed under penalty of perjury"); *United States v. Watson*, No. 22-CR-00121(1) (JMB/DTS), 2024 U.S. Dist. LEXIS 134005, at *3 (D. Minn. July 30, 2024) (finding petitioner filed petition "nearly a year later" after the final order of forfeiture was entered).

objections.'"  *Id.*; *cf.* Supplemental Rules, Rule G(4)(a)(iii)-(iv) (incorporated by Rule 32.2(b)(6)(C) (setting forth minimum requirements for means and frequency of publication to which the government "must" adhere to effect notice by publication).  In all events, Bitfinex does not claim that Roe saw any notice on that website, nor could it.  *See* Roe Aff. at ¶ 11.

Accordingly, as no notice was provided to Roe, the time period in Section 853(n) has not started to run, and Roe's petition remains timely thereunder.

**B.  This Court has Discretion to Accept Untimely Petitions**

Bitfinex wrongly argues that this Court lacks authority to extend deadlines for filing ancillary petitions.  *See* Opp. at 10.  However, even assuming that the timeframe in Section 853(n) had expired (which it has not), "the district court has discretion to permit an extension of time or allow late filing of a claim," *United States v. Stells*, Criminal No. 14-16-DLB-CJS-01, 2016 U.S. Dist. LEXIS 15574, at *6 (E.D. Ky. Jan. 19, 2016), *report and recommendation adopted*, 2016 U.S. Dist. LEXIS 14899 (E.D. Ky. Feb. 8, 2016); *see also United States v. Funds from Prudential Sec.*, 209 F. Supp. 2d 259, 262 (D.D.C. 2002) ("[A] district court may, in its discretion, extend the time for the filing of a verified claim.") (quotation marks and citation omitted), as this Court has so ordered previously in this ancillary proceeding.  *See* ECF No. 250 (Order dated February 14, 2024).  Indeed, the language of Section 853(n) is discretionary, *see* 21 U.S.C. § 853(n) (a court "may, on a motion, dismiss the petition"), and courts routinely find good cause to extend the deadlines set thereby.  *See, e.g.*, *United States v. Spitzer*, 357 F. Supp. 3d 695, 698 (N.D. Ill. 2019) (rejecting contention that "court must dismiss an untimely claim" in forfeiture proceeding; holding that there was "good cause" to accept claimant's late petition).

Moreover, Bitfinex ignores that Roe does not seek to extend statutory deadlines (as Section 853(n)'s deadline has not started), but instead is seeking relief from the Court's so-ordered

deadline of February 19, 2025.  *See generally* Mot.  Bitfinex cites no cases in the criminal forfeiture

context in which a movant raised Rule 6(b) for relief from a court-ordered petition deadline.  *Cf.*

*United States v. Alvarez*, 710 F.3d 565, 568 n.11 (5th Cir. 2013) ("Notably, [claimant] did not

move for an extension under Federal Rule of Civil Procedure Rule 6(b)(1).").[3]  Neither *Argentine*

*Republic v. Nat'l Grid. Plc.*, 637 F.3d 365 (D.C. Cir. 2011) nor *Sherrod v. Breitbart*, 720 F.3d 932,

939 (D.C. Cir. 2013), are in the criminal forfeiture context, and these cases do not address the

particular circumstances at hand.  In any event, it is unlikely that *Argentine Republic* intended a

rule that no statutory deadlines can ever be extended by a Court in any context.  Indeed, in the

concurring opinion in *Sherrod*, Judge Randolph stated just that: "it is [not] clear to me that the rule

in *Argentine Republic* would apply in every instance where a district court invokes Rule 6(b) to

alter a statutory deadline[.]"  720 F.3d at 939 (further stating that "nobody should cite our

discussion of Rule 6(b) as binding precedent").  And courts in various contexts have permitted

reasonable extensions of various statutory deadlines, including in the criminal forfeiture context.

*See, e.g.*, *United States v. $39,480.00 in United States Currency*, 190 F. Supp. 2d 929, 932-33

(W.D. Tex. Mar. 6, 2022); *cf. In re Chicago, M., S. P. & P. R. Co*., 756 F.2d 508, 514 (7th Cir.

1985); *U.S. v. BCCI Holdings, et al*., 916 F. Supp. 1276, 1285 (D.D.C. Feb. 27, 1996).

Finally, even if Roe were not permitted to raise Rule 6(b) at this stage, Roe would be

entitled to challenge the final order of forfeiture pursuant to Rule 60(b), including on the grounds

of insufficient notice.  *See United States v. Aguirre*, 476 F. App'x 333, 334 (5th Cir. 2012) ("The

proper method for attempting to reopen a forfeiture proceeding to file an untimely petition is

---

[3]  In a handful of the cases cited by Bitfinex, the movants raised Rule 60(b), which is the rule a
party would invoke to reopen an ancillary proceeding after a final order of forfeiture is entered.  None
of such cases involved facts similar to here.  In *Davenport*, for example, the movant predicated his
excusable neglect argument under Rule 60(b) on the basis that his former attorney misunderstood the
deadline.  *See Davenport*, 668 F.3d at 1318, 1324.

through a motion under Federal Rule of Civil Procedure 60(b).") (citing Fed. R. Crim. P. 32.2(c), advisory committee notes); *see also United States v. Singer*, No. 19-cr-10078-DJC, 2024 U.S. Dist. LEXIS 71753, at *49 (D. Mass. Apr. 19, 2024); *United States v. Bouler*, 927 F. Supp. 911, 916 (W.D.N.C. 1996).  Given that Roe's claim is valued in the tens of millions of dollars, Roe will be motivated to move to reopen this proceeding and challenge the final forfeiture order.  Roe respectfully submits that judicial economy warrants permitting him to participate in the proceeding now, especially given the lack of prejudice to any party to these proceedings.  *See* Mot. ¶¶ 17-19.

## II.   ROE SATISFIED THE STANDARD FOR EXCUSABLE NEGLECT

As set forth in the Motion, Roe satisfies each of the four factors that constitute excusable neglect under Rule 6(b).  *See* Mot. at ¶¶ 11-21.

### A.   Roe's Delay is Excusable

#### i.   There was no "adequate notice" of the ancillary proceeding

Bitfinex claims that the Government provided "adequate notice" of the ancillary proceeding "that worked" as purportedly demonstrated by the fact that "17 petitioners in total, including five *pro se* individuals, filed timely claims."  *See* Opp. at 1-2, 12.  To the contrary, there is no dispute that "there are potentially thousands of [Bitfinex] accountholders whose accounts lost value in 2016 as a result of [the] hack."  Memorandum Opinion, dated April 4, 2025, ECF No. 300 (the "April 4 Order"), at n.2 (emphasis added).  Accordingly, the fact of the relatively small number of petitioners in this proceeding itself demonstrates that notice could not have been remotely adequate.

Even though direct notice to Roe was required, and the Government did not give it, *see supra* at § I, Bitfinex attempts to use an improper expert declaration of purported expert

11

Christopher Martin (the "Martin Decl."),[4] to show that there was constructive notice to Roe by virtue of the existence of various press releases and media concerning the Bitfinex hack and the criminal proceeding, and/or notices regarding victim restitution rights.  This effort simply fails:

- The referenced August 3, 2023 Government press releases do not address the deadline for filing ancillary petitions (which had not even been set at that time).  *See* Opp. at 4 (citing Martin Decl., Exs. A-C).  The Government's November 14, 2024 press release pertained to Defendant Lichtenstein's sentencing and merely states that "there *will be* a formal process . . . for third-party claimants to submit claims for any seized and forfeited property," but it did not set forth *when* that proceeding would take place or *how* third-parties could participate (and, importantly, it did not address any operative deadlines).  *See id.* at 7 (citing Martin Decl., Ex. G).

- As discussed, while the Government arguably gave notice to potential Bitfinex victims of their right to seek restitution under the CVRA and MVRA, this is not the same as providing notice of the ancillary proceeding and the right to assert direct ownership interests in the forfeited property.[5]  *See supra* at § I.A.ii; Opp. at 6-7 (citing Martin Dec., Exs. D-F), 13-14 (citing 2016 Bitfinex Hack, *available at* https://www.justice.gov/usao-dc/2016-bitfinex-hack (last Accessed May 12, 2025)).  Moreover, during the same time of posting

---

[4]  In similar contexts, courts have found expert submissions to be improper.  *See, e.g.*, *In re Viropharma, Inc., Sec. Litig.*, No. 02-1627, 2003 U.S. Dist. LEXIS 5623, at *7 (E.D. Pa. Apr. 3, 2003) (finding that expert report submitted at motion to dismiss stage is "entirely improper" because it "attempts to circumvent the usual procedures for allowing expert testimony" and "[d]efendants have not had the opportunity to examine [the expert] or to challenge his qualifications and the methodology of his opinions").

[5]  The article by Roe's counsel cited by Bitfinex also pertains to the CVRA and does not address the ancillary proceeding.  *See* Opp. at 15 (citing *When Stolen Crypto is Recovered, Who is Entitled to Restitution?,* Reuters (Dec. 9, 2024), available at https://www.reuters.com/legal/legalindustry/when-stolen-crypto-is-recovered-who-is-entitled-restitution-2024-12-09/).

these notices, the Government had "argued consistently that no one meets the definition of a 'victim,'" raising the question for potential victims of the utility of seeking restitution. *See* April 4 Order at 16.

- Virtually all the third-party media coverage identified by Bitfinex – including the documentary available only to Netflix subscribers – was mostly about Defendants' hack and the Government's recovery of the stolen assets. None of the media cited by Bitfinex directly covered the ancillary proceeding or the deadline to file an ancillary petition. *See* Opp. at 4-5 & n.2.

- Bitfinex claims that Roe could have gone to the DOJ's home webpage and run a search for "Bitfinex" or searched "Bitfinex" and "hack" on Google to somehow discover constructive notice of this proceeding. *See* Opp. at 17 (citing Martin Decl., Exs. H-I). Yet, Bitfinex's own submission shows that such searches – either on the DOJ's home webpage or Google – would not have returned the Government's December 17, 2024 notice of the forfeiture on forfeiture.gov. *See* Martin Decl., Exs. H-I.

In fact, there is one straightforward way that notice could have sufficiently been given to all Bitfinex account holders to comply with Federal Rule of Criminal Procedure 32.2(b)(6)(A). The Government could have sent emails to the last known email addresses of each Bitfinex accountholder—information Bitfinex does not dispute that it possesses but apparently refuses to provide. *See* April 4 Order at n.2 ("The government has attempted to locate those [accountholders], including by requesting a list of all accountholders from [Bitfinex], but such efforts have been unsuccessful.").

        *ii.*       *Roe provided sufficient reason for the delay*

Roe provided sufficient reason for the delay, given, *inter alia*, his extreme occupation and work schedule and lack of notice as set forth in the Motion and the Roe Aff.  *See* Mot. at ¶¶ 11-16.[6]

**B.  There is No Prejudice to the Government or Any Petitioners**

Bitfinex concedes that denying Roe the opportunity to participate in this proceeding would cause him extreme prejudice.  It does not deny the fact or the amount of the Stolen Assets Roe seeks and, in fact, Bitfinex admits that Roe "had a large amount of money at stake."  Opp. at 18. But to date, neither the Government nor a single other petitioner – other than Bitfinex – has objected or opposed Roe's request to file a petition.  The ancillary proceeding has not even started. Roe's petition is complete and Roe is ready and prepared to participate.  Bitfinex does not dispute that the Government has seized more than sufficient assets to satisfy each of the other petitioners.

Instead, Bitfinex claims that "key deadlines have already passed" without even specifying any such deadlines.  Opp. at 20.  Rather, it asserts that "[r]uling on Roe's motion, and then a round of briefing to dismiss Roe's petition, could delay this proceeding by months."  *Id*.  Yet, a single additional motion to dismiss would not necessarily delay this proceeding at all.  Two motions to dismiss are still currently pending.  More importantly, it appears that Bitfinex is the only other party that would file a motion to dismiss Roe's petition; but, it has not moved to dismiss any "direct

---

[6]  None of the "busy schedule" cases to which Bitfinex cites, Opp. at 17-18, involve comparable circumstances.  For example, in *Doe v. Bd. of Trs. for the Univ. of Ark.*, No. 5:22-cv-05137, 2023 U.S. Dist. LEXIS 221185, at *26-27 (W.D. Ark. Dec. 12, 2023), the District Court found no excusable neglect where a *pro se* law student claimed her response to a motion for summary judgment was delayed to "her workload and a serious but not-to-be-further-specified 'personal family matter involving a minor dependent'" and she "affirmatively declined to provide any details from which the Court can conclude that she was unable to file a timely motion to extend.").  *See also Aguirre*, 476 F. App'x at 334-35 (finding spouse of incarcerated husband's "petition was filed nearly four months after she was served with notice and over two months after the deadline for filing her petition").

hack" petitioners – like Richard Roe – and it has only moved to dismiss a portion of the "haircut" petitioners (*i.e.*, petitioners that lost assets due to Bitfinex's action of socializing losses across accountholders). *See* ECF No. 308. Therefore, it is unlikely that Bitfinex, or any other petitioner, would move to dismiss Roe's petition (and, indeed, Bitfinex does not assert that it would file such a motion to dismiss). For these reasons, Roe's petition will have no significant impact on the ancillary proceeding schedule, and the case law cited by Bitfinex supports the finding that there is no prejudice here. *See* Opp. at 22 n.10.

Bitfinex's contention that granting Roe's request would "open the floodgates to new claims" is also red herring (and obfuscates the fact that the vast majority of potentially thousands of accountholders are being deprived of the right to reclaim their lost assets). These thousands of accountholders (with, collectively, billions of dollars in lost digital assets at stake) are not filing petitions, or requests to file them out of time, because they have not received proper notice that this proceeding is even occurring.

### C. The Length of Delay is Minimal and Roe is Acting in Good Faith

Roe's delay of only two months is minimal, especially considering that this Court first gave guidance on the purpose of this ancillary proceeding on April 4, 2025. *See* ECF No. 300.[7] Bitfinex also points to no evidence that Roe is acting in bad faith. As a "sophisticated individual," *see* Opp.

---

[7] The cases cited by Bitfinex in response, see Opp. at 22, are inapposite. *See Loria*, 2009 U.S. Dist. LEXIS 86140, at *2 (finding petitioner's last known address had been foreclosed, "it was believed that [petitioner] had left the United States" and "petition [was] invalid because it was not signed under penalty of perjury"); *United States v. Lyons*, No. 10-10159-PBS, 2013 U.S. Dist. LEXIS 53355, at *3 (D. Mass. Apr. 12, 2013) (finding "claimant's attorney admitted he received actual knowledge of the notice of forfeiture"); *United States v. Suarez*, No. 15-CR-20411, 2016 U.S. Dist. LEXIS 194074, at *2 (S.D. Fla. Dec. 6, 2016) ("[I]t [was] unclear whether Petitioners intended to file a claim to the [s]ubject [p]roperty as their letter fails to assert any legal interest in that Property"); *United States v. Pavlock*, No. 1:10CR7, 2014 U.S. Dist. LEXIS 186042, at *3 (N.D.W. Va. Mar. 4, 2014) ("Even if the petition were timely, [petitioner] has not adequately established that he has a legal interest in the claimed property.").

at 19, there is no way that he would have purposely missed the opportunity to file an ancillary petition. He has nothing to gain by filing late and everything to lose. Bitfinex does not dispute that Roe lost Bitcoin worth more than $53 million today as a direct result of the hack, or that Roe will have the third largest accountholder claim in the ancillary proceeding. Bitfinex also does not dispute that Roe's Stolen Assets were directly transferred to Defendants' virtual wallet seized by the Government. As such, Roe will be able to "demonstrate that [his] accounts were included among those Bitfinex accounts that were hacked," and that Roe was "harmed as a direct result of the hack." April 4 Order at 16-17.

## III.    BITFINEX LACKS STANDING TO OPPOSE ROE'S MOTION

Presently, a motion to dismiss Bitfinex's ancillary petition by Petitioner XYZ Inc. is pending before this Court. *See* ECF No. 309. If such motion is granted, Bitfinex will lack standing to oppose Roe's Motion. In all events, Bitfinex lacks standing to oppose the Motion because Roe, not Bitfinex owns the Stolen Assets that were taken from his wallet, as evidenced by the express Terms of Service provided by Bitfinex to Roe as further described in Roe's verified ancillary petition (annexed as Exhibit 1 to the Motion).

*    *    *    *    *

For the foregoing reasons, Richard Roe respectfully requests that the Court permit him to intervene in this case to submit his verified ancillary petition.

Dated: May 27, 2025                              GREENSTEIN DELORME & LUCHS, P.C.

                                                 /s/ James D. Sadowski
                                                 James D. Sadowski, DC Bar #446635
                                                 801 17th Street, N.W., Suite 1000
                                                 Washington, D.C. 20006
                                                 Phone:  202.452.1400
                                                 Fax:  202.452.1410
                                                 Email:  jds@gdllaw.com
                                                 *Local Counsel for Movant Richard Roe*

DAVIS+GILBERT LLP
Joseph Cioffi
H. Seiji Newman
Joel Melendez
Adam Levy
1675 Broadway
New York, NY 10019
212.468.4800
jcioffi@dglaw.com, hnewman@dglaw.com
jmelendez@dglaw.com. alevy@dglaw.com
*Counsel for Movant Richard Roe*

## Certificate of Service

I HEREBY CERTIFY that on May 27. 2025, I filed the foregoing Reply using the Court's electronic filing system and a copy should be served by a notice of electronic filing on all counsel of record in the case.  In addition, in accordance with ECF #347, I have also served a copy of this Reply on all pro se Petitioners by email using the email addresses sent to me by the Clerk's office.

/s/ James D. Sadowski
James D. Sadowski

17