**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

      v.

ILYA LICHTENSTEIN, *et al.*,

        Defendants.

Case No. 23-CR-239 (CKK)

**THIRD-PARTY PETITIONERS IFINEX INC. AND BFXNA INC.'S MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS CERTAIN CLAIMANTS' <u>ANCILLARY PETITIONS</u>**

Dated:  New York, New York
       April 21, 2025

**Table of Contents**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND .................................................................................................... 2

    A.    Lichtenstein Hacks Bitfinex And Steals 119,574 Bitcoin .......................... 2

    B.    The Government Recovers The Vast Majority Of The Bitcoin
        Stolen And Other Assets From Bitfinex .......................................................... 3

    C.    Petitioners Seek The Return Of Assets Through Restitution And
        An Ancillary Proceeding .................................................................................. 4

    D.    The Court's Restitution Order Delineates The Scope Of The
        Forfeiture Proceeding ....................................................................................... 5

LEGAL STANDARDS RELEVANT TO MOTIONS TO DISMISS ANCILLARY PETITIONS
UNDER 21 U.S.C. § 853 ........................................................................................................ 6

ARGUMENT ............................................................................................................................ 8

    I.    THE ANCILLARY PETITIONS OF XYZ INC. AND JOHN DOE ARE
        BASED ON THE HAIRCUT, NOT THE HACK, AND SHOULD BE
        DISMISSED ...................................................................................................... 8

    A.    XYZ Inc.'s Petition Must Be Dismissed For Lack of Standing And
        Failure To State a Claim Because It Is Based on the Haircut, Not
        the Hack ............................................................................................................. 9

    B.    John Doe's Petition Must Be Dismissed For Lack of Standing And
        Failure To State a Claim Because It Is Based on the Haircut, Not
        The Hack ........................................................................................................... 13

    II.    THE COURT SHOULD DISMISS AT LEAST IN PART THE
        PETITION OF PABLO GARCIA ILLESCAS .................................................. 17

CONCLUSION ......................................................................................................................... 19

## Table of Authorities

**Page(s)**

### Cases

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007)............................................................................................17

*Carnegie Inst. of Washington v. Pure Grown Diamonds, Inc.,*
  2020 WL 5209822 (S.D.N.Y. Aug. 31, 2020) ..........................................................14

*DSI Associates LLC v. United States,*
  496 F.3d 175 (2d Cir. 2007)...............................................................................6, 10

*In re Petitions for Relief Concerning Consent Ord. of Forfeiture,*
  466 F. Supp. 3d 22 (D.D.C. 2020) .........................................................................6

*Sazerac Co. v. Falk,*
  861 F. Supp. 253 (S.D.N.Y. 1994)....................................................................14, 16

*In re U.S. Off. of Pers. Mgmt. Data Sec. Breach Litig.,*
  928 F.3d 42 (D.C. Cir. 2019) ...............................................................................7

*United States v. Alvarez,*
  710 F.3d 565 (5th Cir. 2013) ...............................................................................18

*United States v. Arcaro,*
  2024 WL 40213 (S.D. Cal. Jan. 3, 2024)............................................................6, 12

*United States v. BCCI Holdings (Luxembourg), S.A.,*
  919 F. Supp. 31 (D.D.C. 1996) .............................................................................8

*United States v. BCCI Holdings (Luxembourg) S.A. (Petition of BCCI Campaign Committee),*
  980 F. Supp. 16 (D.D.C. 1997) .......................................................................7, 10

*United States v. Burge,*
  829 F. Supp. 2d 664 (N.D. Ill. 2011) ....................................................................18

*United States v. Daugerdas,*
  892 F.3d 545 (2d Cir. 2018)................................................................................10

*United States v. Davenport,*
  668 F.3d 1316 (11th Cir. 2012) ...........................................................................18

*United States v. Dong Dang Huynh,*
  595 F. App'x 336 (5th Cir. 2014) ........................................................................10

*United States v. Eldick,*
  223 F. App'x 837 (11th Cir. 2007) ..................................................................10, 13

*United States v. Emor*,
   2013 WL 3005366 (D.D.C. June 18, 2013), *aff'd in part, rev'd in part*, 785
   F.3d 671 (D.C. Cir. 2015) ............................................................................................6

*United States v. Fabian*,
   764 F.3d 636 (6th Cir. 2014) .......................................................................................8

*United States v. Furando*,
   40 F.4th 567 (7th Cir. 2022) ....................................................................................8, 9

*United States v. Harris*,
   246 F.3d 566 (6th Cir. 2001) .............................................................................12, 16

*United States v. Hooper*,
   229 F.3d 818 (9th Cir. 2000) .....................................................................................13

*United States v. Jewelry*,
   2015 WL 9700962 (S.D. Fla. Dec. 23, 2015) ...........................................................6

*United States v. Lamid*,
   663 F. App'x 319 (5th Cir. 2016) ............................................................................18

*United States v. Loria*,
   08-CR-233, 2009 WL 3103771 (W.D.N.C. Sept. 21, 2009) ...................................18

*United States v. Marion*,
   562 F.3d 1330 (11th Cir. 2009) ...............................................................................18

*United States v. Preston*,
   123 F. Supp. 3d 108 (D.D.C. 2015) ...........................................................................7

*United States v. Ribadeneira*,
   105 F.3d 833 (2d Cir. 1997) .........................................................................6, 10, 13

*United States v. Schwimmer*,
   968 F.2d 1570 (2d Cir. 1992) ...................................................................................13

*United States v. Sharma*,
   2021 WL 861353 (S.D.N.Y. Mar. 8, 2021) .................................................6, 11, 17

*United States v. Sharma*,
   585 F. App'x 861 (5th Cir. 2014) ............................................................................18

*United States v. Tucker*,
   2020 WL 6891517 (S.D.N.Y. Nov. 24, 2020) .........................................................18

*United States v. Watkins*,
   320 F.3d 1279 (11th Cir. 2003) ...............................................................................13

*United States v. Watts*,
   786 F.3d 152 (2d Cir. 2015) .......................................................................................6

*Willis Mgmt. (Vermont), Ltd. v. United States*,
   652 F.3d 236 (2d Cir. 2011) .......................................................................................7

## Statutes

21 U.S.C. § 853(n) ............................................................................................................... *passim*

iFinex Inc. and BFXNA Inc. (together, "**Bitfinex**"), through its attorneys at Gibson, Dunn & Crutcher LLP and Kirkland & Ellis LLP, respectfully submit this memorandum of law in support of its motion to dismiss certain third-party ancillary petitions and forfeiture claims in *United States v. Ilya Lichtenstein and Heather Morgan*, No. 23-cr-239-CKK (D.D.C.).

## PRELIMINARY STATEMENT

Bitfinex respectfully submits that the first step toward a fair, expeditious, and efficient resolution of this ancillary forfeiture proceeding is for the Court to dismiss petitions that fail to plead interests in Bitcoin lost in Defendants' hack of Bitfinex and instead assert interests that are attributable to Bitfinex's actions *after* the hack.

In its recent Memorandum Opinion denying restitution, the Court held that "the purpose of the ancillary forfeiture proceeding is not for litigating any damages claimed by Bitfinex accountholders that are attributable to Bitfinex's 36% across-the-board haircut and contract disputes related thereto." ECF No. 300 at 18 (emphasis in original). The Court recognized that claims grounded in the "haircut" must be "litigated in another forum." *Id.* The Court's directive aligns with the federal forfeiture statute, which requires petitioners to demonstrate that they hold a legal interest in the specific property subject to forfeiture at the time the property was misappropriated by defendants. 21 U.S.C. § 853(n).

But the two largest claimants here, XYZ Inc. and John Doe, base their claims entirely on losses allegedly incurred because of Bitfinex's post-hack haircut, not Lichtenstein's theft. These petitioners do not and cannot plead that their assets were stolen in the hack or are among the assets seized by the Government. And if these large, but facially unviable, claims remain in the ancillary proceeding, these petitioners will undoubtedly subject the Government and Bitfinex to unnecessary discovery related to flawed legal claims that this Court has already held must be litigated in another forum. Their participation in the ancillary proceeding will only serve to delay

the final resolution of meritorious claims. The Court should dismiss these two defective petitions.

The Court should also dismiss, at least in part, the petition of Pablo Garcia Illescas. Like XYZ Inc. and John Doe, Mr. Illescas has asserted an alternative theory of recovery based only on the post-hack haircut, which should be dismissed. Mr. Illescas has also failed to submit a properly verified petition as required under 21 U.S.C. § 853(n)(3), as his petition is signed solely by counsel. The Court should dismiss Mr. Illescas's alternative theory of recovery and clarify whether Mr. Illescas may participate in the ancillary proceeding despite not having filed a valid ancillary petition, as required by statute.

Bitfinex respectfully submits that the Court should dismiss the petitions of XYZ Inc. and John Doe, and dismiss the petition of Pablo Garcia Illescas at least in part, for failing to satisfy 21 U.S.C. § 853(n).

## FACTUAL BACKGROUND

### A.    Lichtenstein Hacks Bitfinex And Steals 119,574 Bitcoin[1]

Beginning in or about early 2016, Defendant Lichtenstein devised and executed a scheme to steal Bitfinex's Bitcoin. As part of this scheme, Lichtenstein gained access to Bitfinex's computer infrastructure and used that access to compromise additional servers and defeat numerous security measures on Bitfinex's network. Lichtenstein also gained access to Bitfinex's private keys for its cryptocurrency wallets, which he ultimately used to authorize transactions involving Bitcoin held by Bitfinex in its wallets.

On August 2, 2016, Lichtenstein used Bitfinex's private keys to steal approximately 119,754 Bitcoin from Bitfinex wallets (the "**Hack**") and transfer them to a wallet under his control

---

[1] Bitfinex provides a brief factual summary in recognition of the Court's familiarity with this matter.

(the "**Hack Wallet**").  Lichtenstein did not steal any assets from Bitfinex wallets other than the 119,754 Bitcoin.  Lichtenstein Statement of Offense, ECF No. 95 ¶¶ 14, 19.

In the immediate aftermath of the Hack, Bitfinex took extraordinary measures to ensure that only Bitfinex and its shareholders—not Bitfinex's customers—would ultimately bear the loss caused by the Hack.  First, Bitfinex honored customer Bitcoin positions and balances on the Bitfinex exchange at the time of the Hack regardless of whether they related to any stolen Bitcoin, and Bitfinex settled open positions based on the value of Bitcoin or other assets before the Hack. Second, Bitfinex imposed a temporary 36% "haircut" on all Bitfinex customers and assets (the "**Haircut**").  Bitfinex applied the Haircut across *all* Bitfinex accounts on a pro rata basis— regardless of whether the accounts held Bitcoin or were compromised in the Hack.  Third, Bitfinex issued "BFX" tokens to customers equivalent to the value of the assets subject to the Haircut. Finally, over a nine-month period, all of the BFX tokens were exchanged and redeemed by Bitfinex one-to-one for either cash or iFinex Inc. common stock.  Some customers also received "RRT" tokens, which entitled them to some of the proceeds of any recovery of the stolen Bitcoin.

**B.     The Government Recovers The Vast Majority Of The Bitcoin Stolen And Other Assets From Bitfinex**

In 2022, the Government successfully located and arrested Defendants.  The Government seized a variety of assets from Defendants, including more than 114,600 Bitcoin, U.S. dollars, and other cryptocurrencies.  Lichtenstein Forfeiture Allegation, ECF No. 89 at 7-11.  On August 3, 2023, Defendants Lichtenstein and Morgan waived indictment and pled guilty to two counts of conspiracy to commit money laundering and one count of conspiracy to defraud the United States. Information, *id.*; Lichtenstein Plea Agreement, ECF No. 96; Morgan Plea Agreement, ECF No. 101.

On October 15, 2024, the Government moved for amended preliminary orders of forfeiture,

ECF Nos. 148, 170, which the Court signed on November 14, 2024.  ECF Nos. 154, 155, 178.[2]

The government represented to the Court that "the amended forfeiture orders list specific

properties that are derived directly or indirectly from Lichtenstein's 2016 hack of Bitfinex," ECF

No. 148 at 3, and that "it anticipates returning most if not all of those assets to Bitfinex and/or

other potential owners through restitution and the third-party ancillary proceeding."  The

Government specifically requested that the Court order the return of 94,643 Bitcoin to Bitfinex to

effectuate "the return of lost property to the owner of that property."  ECF No. 146 at 25.  On

January 14, 2025, the Government filed its Supplemental Motion Regarding Restitution in which

it affirmed that the at least 94,643 Bitcoin are the "specific property lost" by Bitfinex, and that

"those assets should be returned to Bitfinex."  ECF No. 202 at 3-4.

On or about December 17, 2024, the Government published its Notice of Forfeiture.  *See*

ECF No. 202 at 5.  The Government subsequently provided direct notice of forfeiture to certain

third parties.

### C.    Petitioners Seek The Return Of Assets Through Restitution And An Ancillary Proceeding

Between December 30, 2024, and March 20, 2025, 16 Bitfinex customers filed various

pleadings and motions seeking, among other things, restitution to recover small portions of the

seized assets.  ECF No. 300 at 18 n.11 (collecting claimants and claims).  Most of these claimants

also filed ancillary petitions, though at least one—Rafal Bielenia—did not.[3]  In total, these 16

---

[2] On December 11, 2024, the Amended Attachment A was corrected because of a clerical error.
ECF No. 198-1.

[3] Rafal Bielenia (proceeding *pro se*) timely moved to intervene in Defendants' criminal action to
oppose the Government's Supplemental Memorandum Regarding Restitution.  *See* ECF No. 238.
In his motion to intervene, Bielenia specifically acknowledged that he was "elect[ing] not to file
an Ancillary Petition contesting the forfeiture" and that he instead "chose to assert [his] rights
through the Petition for Remission."  *Id.*  Because Bielenia declined to submit an ancillary petition
in compliance with 21 U.S.C. § 853(n)(2) & (3), he is not a participant in the ancillary proceeding.

claimants seek to recover approximately 4,269 Bitcoin, or less than 4% of the total Bitcoin seized by the Government.  *Id.*

On January 17, 2025, Bitfinex timely filed its ancillary petition.  ECF No. 219.  In its petition, Bitfinex documented that at least 109,728 Bitcoin—the vast majority of the Bitcoin seized from Defendants—are directly traceable to Bitfinex.  *Id*. at 1.

On February 14, 2025, the Court entered an Order setting a "final deadline" for the filing of ancillary petitions of February 19, 2025, approximately two months after the Government first published its notice of forfeiture.  ECF No. 250.  Other than the 4,269 Bitcoin claimed by the 16 customer claimants, Bitfinex is the only petitioner to have asserted a legal interest in the any of the remaining 110,000+ seized Bitcoin.

**D.     The Court's Restitution Order Delineates The Scope Of The Forfeiture Proceeding**

On April 4, 2025, the Court issued a decision awarding Bitfinex $0 in restitution and denying restitution to all other claimants.  ECF No. 300 at 2.  In this opinion, the Court held that given the complexity of the claims, the ancillary forfeiture proceeding was the proper forum to dispute the competing claims of the various claimants.  *Id*. at 15.

In that opinion, the Court also set clear limits on the scope of the ancillary proceeding.  The Court stated that claimants could assert potentially viable claims in forfeiture only "if [they] can show that their accounts were included among the Bitfinex hacked accounts."  *Id*. at 17.  The Court further clarified that: "the purpose of the ancillary forfeiture proceeding is <u>not</u> for litigating any damages claimed by Bitfinex accountholders that are attributable to Bitfinex's 36% across-the-board haircut."  *Id*. at 18 (emphasis in original).  Rather, "[t]hose disputes between Bitfinex and its accountholders arise from Bitfinex's voluntary actions in imposing an across-the-board [hair]cut on all accounts, and such disputes may be litigated in another forum."  *Id.*  The Court also

noted that "the total amount of BTC and other property claimed by all Petitioners constitutes a small percentage of the total Bitfinex Hack Wallet Funds, and this would leave the remainder of the Bitfinex Hack Wallet Funds subject to claim by Bitfinex." *Id.* at 17-18.

The Court then entered a Minute Order establishing an April 21, 2025 deadline for filing motions to dismiss ancillary petitions.

## LEGAL STANDARDS RELEVANT TO MOTIONS TO DISMISS ANCILLARY PETITIONS UNDER 21 U.S.C. § 853

Federal criminal forfeiture proceedings are governed by 21 U.S.C. § 853 and Federal Rule of Criminal Procedure 32.2. *In re Petitions for Relief Concerning Consent Ord. of Forfeiture*, 466 F. Supp. 3d 22, 26 (D.D.C. 2020). Pursuant to section 853, any person, other than the defendant, must timely assert a legal interest in the property that is subject to the court's preliminary order of forfeiture and "petition the court for a hearing to adjudicate the validity" of this alleged interest. 21 U.S.C. § 853(n)(2).

To establish a right to forfeited property, a petitioner must plead that it has "a legal right, title, or interest in the [forfeited] property." 21 U.S.C. § 853(n)(6)(A); *see also United States v. Emor*, 2013 WL 3005366, at *5 (D.D.C. June 18, 2013), *aff'd in part, rev'd in part*, 785 F.3d 671 (D.C. Cir. 2015) (standing is a threshold requirement in criminal forfeiture cases); *United States v. Watts*, 786 F.3d 152, 160 (2d Cir. 2015). That requires a petitioner to show an interest "in a particular, specific asset," *United States v. Ribadeneira*, 105 F.3d 833, 836 (2d Cir. 1997), which "is, or is part of, the forfeited property." *DSI Associates LLC v. United States*, 496 F.3d 175, 184 (2d Cir. 2007); *see also United States v. Sharma*, 2021 WL 861353, at *6 (S.D.N.Y. Mar. 8, 2021); *United States v. Jewelry*, 2015 WL 9700962, at *3 (S.D. Fla. Dec. 23, 2015) (same); *United States v. Arcaro*, 2024 WL 40213, at *5 n.2 (S.D. Cal. Jan. 3, 2024) (same).

Second, a petitioner must establish that its property interest entitles it to forfeiture under

either subsection (A) or (B) of 28 U.S.C. § 853(n)(6). Under subsection (A), a petitioner must establish that its property right "was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which give rise to the forfeiture of the property under this section." 21 U.S.C. § 853(n)(6)(A). Under this subsection, a property interest formed only *after* the commission of the criminal conduct giving rise to forfeiture does not suffice. *See United States v. BCCI Holdings (Luxembourg) S.A. (Petition of BCCI Campaign Committee)*, 980 F. Supp. 16, 21 (D.D.C. 1997) (granting motion to dismiss "because [the claimant] can assert neither an interest in a specific asset nor *one that arose prior to commission* of the criminal acts giving rise to the forfeiture of the defendants' estate") (emphasis added). Alternatively, under subsection (B), a petitioner must show that it is a "bona fide purchaser" of the forfeited property, which requires the petitioner to plausibly allege that it acquired the property directly or derivatively from the defendants after the fact, without knowledge that the property is subject to forfeiture. *See* 21 U.S.C. § 853(n)(6)(B).

Federal Rule of Criminal Procedure 32.2(c)(1)(A) provides that the court may dismiss an ancillary "petition for lack of standing, for failure to state a claim, or for any other lawful reason." A motion to dismiss a petition under 21 U.S.C. § 853(n) is treated similarly to a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b). *United States v. Preston*, 123 F. Supp. 3d 108, 113 (D.D.C. 2015). To survive a motion to dismiss, a petition must state enough facts to state a claim to relief that is plausible on its face. *Willis Mgmt. (Vermont), Ltd. v. United States*, 652 F.3d 236, 241-42 (2d Cir. 2011). The petition must also plead standing by plausibly alleging the petitioner's right to relief "is likely, as opposed to merely speculative," and that "their injury will be redressed by a favorable decision." *In re U.S. Off. of Pers. Mgmt. Data Sec. Breach*

7

*Litig.*, 928 F.3d 42, 54 (D.C. Cir. 2019) (cleaned up); *United States v. Fabian*, 764 F.3d 636, 638 (6th Cir. 2014) (same).

If the court finds that "a third party [has] fail[ed] to allege in its petition all elements necessary for recovery, including those relating to standing, the court may dismiss the petition without providing a hearing." *BCCI Holdings (Luxembourg) S.A.*, 919 F. Supp. 31 at 36 (D.D.C. 1996). The court may also "dismiss a deficient petition on jurisdictional grounds" *sua sponte* if "the jurisdictional deficiency is incurable." *United States v. Furando*, 40 F.4th 567, 577, 579 (7th Cir. 2022) (reasoning that "[w]hether a petition is 'deficient' is outcome-determinative on the standing question").

## ARGUMENT

### I.   THE ANCILLARY PETITIONS OF XYZ INC. AND JOHN DOE ARE BASED ON THE HAIRCUT, NOT THE HACK, AND SHOULD BE DISMISSED

"XYZ Inc." and "John Doe," two pseudonymous parties represented by sophisticated counsel, filed claims with this Court that are expressly based on losses they allege are attributable to Bitfinex's actions in the Haircut, not to Defendants' actions as part of the Hack. Because XYZ Inc. ("XYZ") and John Doe's ("Doe") claims are based on the Haircut, they are not properly part of this ancillary proceeding. ECF No. 300 at 18. And these claims further fail to meet the basic pleading requirements of 21 U.S.C. § 853(n)(6)(A) because they fail to assert a specific interest in any of the seized assets that are the subject of this forfeiture proceeding. XYZ and Doe's Haircut-based claims should be dismissed.[4]

---

[4] Other petitioners allege that they lost non-Bitcoin assets as a result of the Haircut—which are not traceable to the Hack. *See* Allan Newman Ancillary Petition, ECF No. 203 ¶ 2 (seeking to recover 22.113265451 Litecoin); Christian Dressler Motion to Intervene, ECF No. 230-1 at 3 (seeking to recover 91.1871525 Ethereum); "A.B." Ancillary Petition, ECF No. 282 ¶ 2 (seeking to recover 1896.43 Ethereum and 1876.6 Ethereum Classic allegedly lost as a result of Bitfinex's actions "[i]mmediately following the hack"); "AH-1" Ancillary Petition, ECF No. 288 ¶ 14 (seeking to recover 3,156.14 ETH and $48,324.34 USD allegedly lost as a result of "Bitfinex's rebalancing").

### A.    XYZ Inc.'s Petition Must Be Dismissed For Lack of Standing And Failure To State a Claim Because It Is Based on the Haircut, Not the Hack

XYZ seeks relief based on alleged losses exclusively attributable to the Haircut.[5] As the Court has recognized in its Memorandum Opinion, to obtain relief at the ancillary hearing in this action, "[p]etitioners must be able to demonstrate that their accounts were included among those Bitfinex accounts that were hacked." ECF No. 300 at 16; *see also* ECF No. 278 at 10 ("In this case, a petitioner's claim will depend on tracing a claim of ownership to one or more items of specific property itemized in the Second Amended Preliminary Order of Forfeiture and Corrected Second Amended Attachment A."). This Court has repeatedly clarified that the ancillary proceeding is "<u>not</u> for litigating any damages claimed by Bitfinex accountholders that are attributable to Bitfinex's" post-hack Haircut. ECF No. 300 at 18 (emphasis in original); *id.* at 11 (noting that any "injuries that occurred after the hack, arising out of the 36 percent 'haircut' of [all Bitfinex accounts] imposed by Bitfinex" "are not direct and proximate injuries" caused by the Hack); *id.* at 16 ("Because the assets that were forfeited in this case are comprised of the Bitfinex accounts that were hacked by Defendant Lichtenstein [Bitfinex Hack Wallet Funds] and property derived from the laundering of those hacked accounts, Petitioners must be able to demonstrate that their accounts were included among those Bitfinex accounts that were hacked.").

The Court's decision not to consider claims arising after and apart from the Hack comports

---

Bitfinex respectfully requests that the Court reiterate that, consistent with its prior holdings, claims based on the Haircut, including claims that seek non-Bitcoin assets that are not traceable to the Hack, are not viable. To the extent the Court determines claims in any other petitions are attributable to the Haircut, it has the power to dismiss those claims *sua sponte. See, e.g., Furando*, 40 F.4th at 577, 579.

[5] XYZ is a company controlled by ███████████████████████

with the dictates of the criminal forfeiture statute. Specifically, 21 U.S.C. § 853(n)(6)(A) requires a petitioner to establish by a preponderance of the evidence that "at the time of the commission of the acts which give rise to the forfeiture of the property, the petitioner held a right, title, or interest in the property superior to that of the defendant[.]" This provision requires petitioners to "assert an interest in [the forfeited property] that is superior to the defendant's [interest in this property] at the moment [the] offense was committed." *United States v. Daugerdas*, 892 F. 3d 545, 548 (2d Cir. 2018); *see also United States v. Dong Dang Huynh*, 595 F. App'x 336, 340 (5th Cir. 2014) (petitioners failed to establish a superior legal interest because they did not allege that they had an interest in the laundered funds before the money laundering conspiracy); *BCCI Holdings (Luxembourg) S.A. (Petition of BCCI Campaign Committee)*, 980 F. Supp. at 21 (the petitioner's property interest must predate the offense giving rise to the forfeiture); *United States v. Eldick*, 223 F. App'x 837, 840 (11th Cir. 2007) ("In order to have a superior interest… the claimant must have had a legal right, title, or interest in the forfeitable properties that *preceded* the commission of the crime that gave rise to the forfeiture of that property.") (emphasis in original). It also requires petitioners to assert a legal interest in a particular asset "that is, or is part of, the forfeited property." *DSI Associates LLC*, 496 F.3d at 184; *see also Ribadeneira*, 105 F.3d at 836 (the petitioner's interest must be in specific property that is subject to the court's preliminary order of forfeiture).

Thus, to state a forfeiture claim under Section 853(n)(6)(A) in this proceeding, a petitioner must plausibly allege: (1) an interest in specific Bitcoin that *predates* the Hack, (2) that the specific Bitcoin in which the petitioner had an interest was stolen by Defendants as part of the Hack, and (3) that this specific Bitcoin is now subject to forfeiture. XYZ satisfies none of these requirements and does not state a claim because it is clear from XYZ's own petition that it did not lose any

Bitcoin in the Hack.

### 1.    XYZ Concedes That Its Claims Are Based On The Haircut, Not The Hack

XYZ's petition makes clear it was not harmed by the Hack.  According to XYZ, its account held 2,705.40228 Bitcoin before the Hack.  ECF No. 289-4 ¶ 17 ("[XYZ] held 2,705.40228 BTC in its Bitfinex account prior to the hack.").  Also, according to XYZ, its account held exactly the same amount of Bitcoin after the Hack.  *Id.* at 6, Figure 1 (demonstrating XYZ's post-Hack, pre-Haircut account balance to be 2,705.40228).  XYZ's own pleadings demonstrate its claims are based on actions taken by Bitfinex as part of the Haircut, not by Defendants as part of the Hack.

To the extent XYZ owned the assets subject to the Haircut, they were not stolen by Defendants, have not been seized by the Government, and are not subject to the Court's forfeiture order.[6]  *See Sharma*, 18-CR-340 at *6 (dismissing petition where petitioners failed to allege an interest in "specific units or quantities of [cryptocurrency] transferred from [petitioners] to defendants as a result of defendants' fraud").  XYZ does not plead the requisite elements of 21 U.S.C. § 853(n)(6)(A) and its claim should be dismissed.

### 2.    XYZ Does Not, And Cannot, Trace Any Seized Bitcoin To Its Account

XYZ's petition also fails because it does not even attempt to trace any stolen assets to its accounts.  XYZ instead presents an alternate, deeply flawed theory of recovery premised on convoluted claimed losses from the Haircut (not the Hack). ECF No. 289-4 ¶ 34, n. 3.  Specifically, XYZ alleges that it would still be entitled to recover at the ancillary hearing "[t]o the extent complete tracing was to establish that Petitioner's BTC was *not among* the BTC stolen by Defendants [because] the effect of the [Haircut] was to use Petitioner's assets to provide recoveries

---

[6] The Court's forfeiture order distinguishes two categories of forfeitable property:  (1) Bitcoin that the Defendants acquired directly during the Hack, and (2) non-BTC assets, including ETH and USD, Defendants derivatively acquired from the stolen Bitcoin, after the Hack.  Lichtenstein Plea Agreement, ECF No. 96 at 11-12.

to other account holders whose assets were stolen." *Id.* ¶ 34 n. 3 (emphasis added). XYZ's extraordinary theory of recovery would result in it recovering more Bitcoin—2,770.48034004— at the ancillary hearing than the 2,705.40228 Bitcoin it admittedly held in its account at the time of the Hack. *Id.* at 2, n.1. XYZ reaches this remarkable position by totaling: (i) 975.76 Bitcoin that XYZ alleges Bitfinex removed from its account as part of the Haircut, *id.* ¶ 19; and (ii) 1,794.72289972 Bitcoin, which XYZ claims is the value of the non-Bitcoin assets that Bitfinex also allegedly removed from XYZ's account as part of the Haircut. *Id.* ¶ 20. In essence, XYZ argues that even though it suffered no loss as part of the Hack, to the extent Bitfinex's or other customers' Bitcoin was hacked, the Court should issue Bitcoin to XYZ.

There is simply no case law that supports Petitioner's extraordinary theory of recovery. "A petitioner must allege facts demonstrating an ability to trace their purported interest to a specific property." *Arcaro*, 2024 WL 40213, at *11 (dismissing ancillary petitions for lack of standing and for petitioners' "fail[ure] to establish by a preponderance of the evidence that they have a traceable interest in the forfeited property as required by 853(n)(6)(A) and (B)"). And this Court has already clearly stated that such convoluted claims of recovery based on generalized losses will not stand. ECF No. 278 at 10 ("In this case, a petitioner's claim will depend on tracing a claim of ownership to one or more items of specific property itemized in the Second Amended Preliminary Order of Forfeiture and Corrected Second Amended Attachment A.").

XYZ's further suggestion that it may be a "*bona fide* purchaser" of stolen Bitcoin is facially implausible. ECF No. 289-4 ¶ 34 n.3. To be a bona fide purchaser, XYZ would need to have bought the Bitcoin from Defendants after the Hack without knowledge that the Bitcoin was stolen. *See* 21 U.S.C. § 853(n)(6)(B); *United States v. Harris*, 246 F.3d 566, 574-75 (6th Cir. 2001) (section 853(n)(6)(B) protects a third party who "acquired his legal interest  after the acts giving

rise to the forfeiture" have occurred) (internal citation and quotation marks omitted); *United States v. Watkins*, 320 F.3d 1279, 1283 (11th Cir. 2003). XYZ does not allege a sequence of events that could possibly make it a bona fide purchaser.

XYZ's multiple attenuated theories of recovery all have one thing in common: they are indisputably premised on events XYZ alleges occurred *after* the Hack as a result of the Haircut. Petitioner XYZ has not pled and cannot establish a legal interest in Bitcoin stolen in the Hack by virtue of having allegedly lost different Bitcoin because of the Haircut. Therefore, Petitioner XYZ has not pled and cannot establish a legal interest in the forfeited property. *See United States v. Schwimmer*, 968 F.2d 1570, 1580 (2d Cir. 1992) ("The most important of these elements for our purposes are ... the requirements that the interest be 'in' the property forfeited."); *Ribadeneira*, 105 F.3d at 835 (quoting *Schwimmer*). Nor can XYZ establish an interest in any stolen Bitcoin superior to that of the Defendants at the time of the Hack, as is required to state a claim under 21 U.S.C. § 853(n)(6)(A). *See Eldick*, 223 F. App'x at 840 ("In order to have a superior interest… the claimant must have had a legal right, title, or interest in the forfeitable properties that preceded the commission of the crime that gave rise to the forfeiture of that property."); *Watkins*, 320 F.3d at 1282; *United States v. Hooper*, 229 F.3d 818, 822 (9th Cir. 2000). XYZ's petition should be dismissed.

**B.    John Doe's Petition Must Be Dismissed For Lack of Standing And Failure To State a Claim Because It Is Based on the Haircut, Not The Hack**

The arguments supporting the dismissal of XYZ's Haircut-based claims apply with equal force to Doe's claims. Doe's claim is inactionable because it is premised exclusively on the impact of the Haircut, not the Hack. Doe seeks to recover a total of 670.68637 Bitcoin in the ancillary proceeding. ECF No. 285 at 2. His claim is premised on two distinct theories of recovery related to separate sets of 44.92097 Bitcoin and 625.7654 Bitcoin, respectively. Both theories are based

entirely on alleged losses suffered as a result of the Haircut, and are undermined by the evidence and filings Doe himself has submitted to this Court. Doe admits that 44.92097 of the total Bitcoin he seeks is attributable wholly to the Haircut. *Id*. at 8. And the evidence Doe provided to the Court demonstrates that his supposed loss of the 625.7651 Bitcoin was a result of Bitfinex's Haircut. Doe's claim for 670.68637 BTC should be dismissed in its entirety.

The Court need only look to Doe's previously filed motion to intervene and supporting exhibits to see that Doe's claims are based on losses allegedly caused by Bitfinex *after* the Hack.[7] In his motion to intervene, Doe sought to collect the same 670.68637 Bitcoin he seeks in his ancillary petition. ECF No. 286 at 25. The stated basis for recovery in the motion to intervene was that Doe suffered a "net loss of 670.68637 **after the reallocation**" that was "unilaterally implemented **by Bitfinex after the hack**." *Id*. at 11 n.1 (emphasis added). Doe repeated this claim in his motion to intervene again, *id*. at 12-13 ("**After Bitfinex's unilateral reallocation,** [Doe] still had a net **loss of 670.68637**.") (emphasis added), and again. *Id*. at 13 n.3 ("**The reallocation unilaterally implemented by Bitfinex after the hack** had the effect of forcibly converting a portion of [Doe's] ETH and USD assets into Bitcoin...leaving a remaining net **loss of 670.68637 BTC after the reallocation**.") (emphasis added). By Doe's own admission, the alleged loss he seeks to recover was a result of the post-Hack Haircut reallocation by Bitfinex.

The exhibits Doe submitted in support of his motion to intervene further prove that his

---

[7] Where a document submitted along with a pleading directly contradicts the allegations therein, the court need not accept as true the allegations and may instead rely on the information contained in the submitted document. *Sazerac Co. v. Falk*, 861 F. Supp. 253, 257 (S.D.N.Y. 1994) ("[I]f the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint."); *Carnegie Inst. of Washington v. Pure Grown Diamonds, Inc.*, 2020 WL 5209822, at *4 (S.D.N.Y. Aug. 31, 2020) ("[T]he documents that the parties attached to their respective filings may be considered on a motion to dismiss by virtue of being incorporated by reference in the pleadings, integral to the pleadings, and/or subject to judicial notice as a public record.").

14

claim is based entirely on Bitfinex's post-Hack reallocation.  ECF No. 286.  As part of his

submission to this Court in connection with restitution, Doe filed a declaration and a series of

documents which he represented to be "true and correct" under penalty of perjury.  ECF No. 286-

2 at 5.  Doe describes two of these exhibits—Exhibits D-1 and F-1—as "excerpts of the account

transaction data generated by Bitfinex, reflecting relevant exchange transactions."  ECF No. 286-

2 ¶¶ 8, 10; *see also* ECF Nos. 286-6, 286-9.  These two documents plainly show that as part of the

reallocation, Bitfinex removed approximately 625 Bitcoin from Doe's accounts in exchange for

BFX tokens.  In other words, Exhibits D-1 and F-1 show that Doe's claim is based on losses

purportedly attributable to actions taken by Bitfinex after the Hack as part of the Haircut.  *See* ECF

Nos. 286-6, 286-9.

Exhibit D-1 is a record of transactions in one of Doe's accounts between January 8, 2016

and August 2, 2016.  The first six lines of Exhibit D-1 identify transactions described as

"extraordinary loss adj[ustments]."  ECF No. 286-6.  These transactions reflect exchanges of USD,

ETH, and BTC for BFX tokens.  The third and fifth lines of Exhibit D-1, specifically, show

"625.2454 BTC" being exchanged "for 377685.7255 BFX tokens."  *Id.* at 2.

Bitfinex Account User ID ▮▮▮▮
Relevant Excerpts of Account Ledger

| # | DESCRIPTION | CURRENCY | AMOUNT |
|---|---|---|---|
| 123083174 | Extraordinary loss adj of 0.0002 USD for 0.0002 BFX @ 1.0 on wallet exchange | USD | -0.00017774 |
| 123059210 | Extraordinary loss adj of 2467.6395 ETH for 25146.4806 BFX @ 10.1905 on wallet exchange | ETH | -2467.639526 |
| 123059214 | Extraordinary loss adj of 625.2454 BTC for 377685.7255 BFX @ 604.06 on wallet exchange | BTC | -625.2453821 |
| 123083176 | Extraordinary loss adj of 0.0002 USD for 0.0002 BFX @ 1.0 on wallet exchange | BFX | 0.00017774 |
| 123059216 | Extraordinary loss adj of 625.2454 BTC for 377685.7255 BFX @ 604.06 on wallet exchange | BFX | 377685.7255 |
| 123059212 | Extraordinary loss adj of 2467.6395 ETH for 25146.4806 BFX @ 10.1905 on wallet exchange | BFX | 25146.48059 |

Exhibit D-1, ECF 286-6

As with Exhibit D-1, the ledger entries in Exhibit F-1 detail exchanges of USD and BTC

for BFX tokens in an account associated with Doe.  *See* ECF No. 286-9 at 2.  The second and

fourth lines of Exhibit F-1, specifically, show "0.5197 BTC" being exchanged "for 313.913 BFX"

tokens. *Id.*

Bitfinex Account User ID 
Relevant Excerpts of Account Ledger

| # | DESCRIPTION | CURRENCY | AMOUNT |
|---|---|---|---|
| 122956326 | Extraordinary loss adj of 1988.4643 USD for 1988.4643 BFX @ 1.0 on wallet margin | USD | -1988.464299 |
| 122956330 | Extraordinary loss adj of 0.5197 BTC for 313.913 BFX @ 604.06 on wallet margin | BTC | -0.51967189 |
| 122956328 | Extraordinary loss adj of 1988.4643 USD for 1988.4643 BFX @ 1.0 on wallet margin | BFX | 1988.464299 |
| 122956332 | Extraordinary loss adj of 0.5197 BTC for 313.913 BFX @ 604.06 on wallet margin | BFX | 313.9130012 |

Exhibit F-1, ECF No. 286-9.

Because BFX tokens were only created by Bitfinex after the Hack as part of the Haircut reallocation process, the BFX-for-BTC exchanges reflected in Exhibits D-1 and F-1 can only mean one thing: Doe's claim for approximately 625.7651 BTC is based on the Haircut, not the Hack. This Court need not and should not ignore the evidence that Doe has already submitted under penalty of perjury when considering the legitimacy of Doe's claims. *Falk*, 861 F. Supp. at 257 (S.D.N.Y. 1994).[8]

Doe's verified petition makes clear that his claim to the additional set of 44.92097 Bitcoin he seeks to recover is also based entirely in the Haircut. With respect to these Bitcoin, Doe expressly alleges that through the Haircut "**Bitfinex reduced** Petitioner's ETH balance in the account with User ID [redacted] by 2467.6395 ETH…and the USD balance in his account with User ID [redacted] by $1,988.46." ECF No. 285 ¶ 25 (emphasis added). He also asserts that "the ETH **converted by Bitfinex** was equivalent to 41.62907 BTC and the USD **converted by Bitfinex**

---

[8] Recognizing the deficiencies in his claim, Doe, like XYZ, resorts to an alternative theory, recognizing the possibility that Doe's account may not have been compromised in the Hack, but arguing that he nevertheless could still have standing as an innocent owner and a bona fide purchaser. ECF No. 285 ¶ 33 n.3. Doe offers nothing but conjecture to support his claim that any assets that allegedly belonged to him were stolen during the hack. And he offers no evidence to support his alternate theory that he was a bona fide purchaser of assets from Defendants after the Hack. As with XYZ, Doe cannot claim to be a bona fide purchaser unless he is claiming that he bought Bitcoin directly or derivatively from Defendants—which he surely does not. *See Harris*, 246 F.3d at 574-75.

was equivalent to 3.2919 BTC, for a total of 44.92097 BTC." *Id.* (emphasis added). It is clear on the face of his petition that Doe's claimed interest in these 44.92097 Bitcoin is attributable solely to the Haircut, and his claim related to these Bitcoin should be dismissed. *See Sharma*, 18-CR-340 at *6.

The Court should not countenance Doe's artfully crafted pleadings in which he alleges that the Bitcoin he now claims were *either* directly removed from his account by Lichtenstein in the Hack or *alternatively* were removed from his account by Bitfinex through the Haircut. Doe's prior filings and the documentary evidence he already submitted conclusively demonstrate that the Bitcoin he seeks in the ancillary proceeding was not stolen from his account as part of the Hack, was not seized by the government, and is therefore not subject to this ancillary proceeding. Doe cannot be permitted to speculate that discovery may show that his Bitfinex account was compromised when most accounts were not and his own pleading suggests otherwise. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (pleading must be dismissed absent "enough fact to raise a reasonable expectation that discovery will reveal evidence" demonstrating claim).

## II.    THE COURT SHOULD DISMISS AT LEAST IN PART THE PETITION OF PABLO GARCIA ILLESCAS

Like XYZ and Doe, Mr. Illescas asserts an alternative theory of recovery based on the Haircut. That claim should be dismissed. Additionally, Mr. Illescas's petition fails to satisfy the statutory requirements because it is not signed by Mr. Illescas but only by his counsel. The Court should clarify whether he is precluded from participating in the ancillary proceeding.

First, Bitfinex respectfully requests that the Court dismiss Mr. Illescas's claim based on the Haircut. Mr. Illescas concedes that most of the Bitcoin he seeks to recover—387.35 BTC— was removed from his account as part of the post-Hack Haircut, in which Mr. Illescas received non-Bitcoin compensation. *See* ECF No. 217 at I.3.A.5-6. Rather, he alleges that 188.9583353

Bitcoin was stolen from his account by Lichtenstein in connection with the Hack, and those Bitcoin were seized by the Government. *See id.* at I.3.A.7-8. Bitfinex recognizes that the Court has declined to consider Mr. Illescas's secondary claim for 387.35 BTC in issuing its April 4, 2025 Order. ECF No. 300, at 18, n. 11 (limiting Illesca's claim to the 188.9583353 Bitcoin he claims are traceable to the Hack). Consistent with its prior holdings, the Court should dismiss Mr. Illescas's Haircut claim.

Second, the Court should clarify whether Mr. Illescas can participate in the ancillary proceeding at all because his ancillary petition is defective. Ancillary petitions must satisfy the procedural requirements outlined in 21 U.S.C. § 853, including being timely filed, 21 U.S.C. § 853(n)(2), and being sworn under penalty of perjury, 21 U.S.C. § 853(n)(3).[9] Mr. Illescas did not sign or verify his petition as required by 21 U.S.C. § 853(n)(3). *See* ECF No. 217. Instead, Mr. Illescas's petition is signed by his counsel only. "Because of the substantial danger of false claims in forfeiture proceedings, federal courts require strict compliance with" section 853(n)(3)'s requirement that a third-party petition be signed by the petitioner under penalty of perjury. *See United States v. Lamid*, 663 F. App'x 319, 323 (5th Cir. 2016). Courts across the country have dismissed ancillary petitions, like Mr. Illescas's, that are not signed and verified by the Petitioner. *See id.; United States v. Loria*, 08-cr-233, 2009 WL 3103771, at *2 (W.D.N.C. Sept. 21, 2009) (the requirement "is no merely procedural technicality. A claimant who fails to file a verified statement has no standing to contest a forfeiture.") (internal citation and quotation marks deleted); *United States v. Burge*, 829 F. Supp. 2d 664, 667 (N.D. Ill. 2011) (same). The Court should clarify

---

[9] *See also United States v. Marion*, 562 F.3d 1330, 1337 (11th Cir. 2009); *see also United States v. Tucker*, 2020 WL 6891517, at *5 (S.D.N.Y. Nov. 24, 2020); *United States v. Sharma*, 585 F. App'x 861, 862 (5th Cir. 2014); *United States v. Alvarez*, 710 F.3d 565, 567-68 (5th Cir. 2013); *United States v. Davenport*, 668 F.3d 1316, 1322, 1324-35 (11th Cir. 2012).

whether Mr. Illescas is a valid participant in these proceedings, despite his failure to file a verified petition.

## CONCLUSION

For the foregoing reasons, Bitfinex respectfully requests that the Court dismiss the petitions of XYZ Inc. and John Doe, and dismiss at least in part the petition of Pablo Garcia Illescas.

Dated:  New York, New York
      April 21, 2025

GIBSON DUNN & CRUTCHER LLP

*/s/ Barry H. Berke*
Barry H. Berke (admitted *pro hac vice*)
Daniel M. Ketani (admitted *pro hac vice*)
Trevor Gopnik (admitted *pro hac vice*)
200 Park Avenue
New York, New York 10166
Tel: (212) 351-4000
bberke@gibsondunn.com
dketani@gibsondunn.com
tgopnik@gibsondunn.com

Stephanie L. Brooker
(D.C. Bar No. 475321)
1700 M Street N.W.
Washington, D.C. 20036
Tel: (202) 955-8500
sbooker@gibsondunn.com

KIRKLAND & ELLIS LLP

Mark C. Holscher (admitted *pro hac vice*)
Laura Vartain (admitted *pro hac vice*)
555 California Street
San Francisco, California 94104
Tel: (415) 439-1400
Laura.vartain@kirkland.com
mark.holscher@kirkland.com

*Attorneys for Bitfinex*