UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** *Plaintiff,* v. **ILYA LICHTENSTEIN, et al.,** *Defendants.* | ) | **Criminal No. 23-CR-239 (CKK)** |

**VERIFIED AMENDED PETITION FOR ANCILLARY PROCEEDING CLAIMING INTEREST IN FORFEITED PROPERTY**

**Petitioner:**
Pablo Garcia Illescas
c/o DiFalco & Fernandez, LLLP
1 Alhambra Plaza, Suite 1460
Coral Gables, FL 33134
305-569-9800
Attention: Luis G. Musa
Lmusa@dflllp.com

**Respondent:**
United States of America
U.S. Department of Justice
United States Attorney
Patrick Henry Building
601 D Street N.W.
Washington, D.C. 20530
202-252-6765 (Blaylock)
202-353-0018 (Brown)
Rick.Blaylock.Jr@usdoj.gov
Christopher.Brown9@usdoj.gov

**TO THE HONORABLE COURT:**

**COMES NOW,** the Petitioner, Pablo Garcia Illescas, and respectfully files his Verified Amended Petition pursuant to that Order of the Court entered on October 2, 2026, and hereby petitions this Court for an ancillary proceeding claiming an interest in the forfeited property described below, pursuant to 21 U.S.C. § 853(n)(2) and Rule 32.2 of the Federal Rules of Criminal Procedure. In support of this petition, Petitioner alleges the following:



NOTA.- Firma/s legitimada/s de acuerdo al art. 207 del Reglamento Notarial, a 28/10/2026 con número de protocolo 1640 DOY FE.-

## I. BACKGROUND

### 1. Property Subject to Forfeiture:

The property subject to forfeiture in the underlying action is described as follows:

A. The Petitioner was assigned by Bitfinex a Petitioner's Shared Loss, as defined below, equivalent to 387.35 bitcoins across two accounts on the Bitfinex Exchange ("Bitfinex") due to the hack that took place on August 2, 2016 (the "Bitfinex Hack"). Additionally, 188.9583353 of the bitcoins along with any and all the associated fork assets that were stolen have been identified as being currently located at the address of the property seized and forfeited to the United States as part of the Defendant Properties (defined below).

B. The Defendants Ilya Lichtenstein and Heather Morgan (the 'Defendants") have been sentenced in connection with this crime under the case United States of America v. Ilya Lichtenstein et al., U.S. District Court for the District of Columbia, Criminal Case No. 23-CR-239 (CKK).

C. The loss occurred on or about August 2, 2016, and continued in the days immediately following, during which Bitfinex unilaterally "shared" the loss among all investors unilaterally without their consent.

D. The Second Amended Preliminary Order of Forfeiture and a Minute Order granting a Corrected Second Amendment Attachment A (the "Attachment A") were issued by the U.S. District Court for the District of Columbia on December 11, 2024. The properties described in Attachment A (the "Defendant Properties") were forfeited pursuant to 18 U.S.C. §982(a)(1) and §981(a)(1)(C) and 28 U.S.C. §2461(c).

E. A Notice of Criminal Forfeiture Action was received by the Petitioner via email on December 17, 2024.

### 2. Forfeiture Proceedings:

A. The Defendant Properties were forfeited under the following circumstances:

1. The Defendant Properties as described in Attachment A were subject to forfeiture as they are traceable to violations of 18 U.S.C. §1956(h) and 18

U.S.C. §371 as further detailed in the case of the United States of America v. Ilya Lichtenstein et al., U.S. District Court for the District of Columbia, Criminal Case No. 23-CR-239 (CKK)

3. **Petitioner's Claim to Property:**

A. Petitioner claims a legitimate interest in the Defendant Properties, as follows:

1. At the time of the Bitfinex hack by the Defendants, Petitioner had two (2) open accounts with Bitfinex; one account was opened under the name [redacted] and the other account was opened under the name "[redacted]".
2. On the date of the Bitfinex Hack, at the time of the Hack, "[redacted] account recorded a total deposit of 972.1299151 BTC and a withdrawal of 1 BTC on 06/21/2016, leaving a total balance of 971.1299151 BTC (***corrected to amend a typographical error which failed to reflect the reduction by 1 BTC***). Attached hereto as Exhibit A is a simplified PDF of the CSV files detailing the Butifarra account activity from 04/11/2016 to 11/01/2020, which was sent by support@bitfinex.com to [redacted]n 04/27/2022.
3. On the date of the Bitfinex Hack, the "[redacted] account recorded a total deposit of 135.63 BTC and a withdrawal of 0.02 BTC on 04/27/2016, resulting in a total balance of 135.61 BTC. Attached hereto as Exhibit B is a simplified PDF of the CSV files detailing the Jupiter account activity for 2016, which was sent by support@bitfinex.com to [redacted]
4. In order to be able to deposit bitcoins into both Petitioner's accounts, Bitfinex provided Petitioner with unique addresses for each account, following the standard procedure used by all cryptocurrency exchanges.
5. On August 2, 2016, the Bitfinex Exchange went offline and announced that it had been hacked. To prevent further theft, Bitfinex temporarily closed the platform and, without investor consent, decided to cover the losses by socializing, or sharing, them across all client accounts. This resulted in a thirty-six percent (36%) loss for each client. Specifically, Bitfinex took: (1)



NOTA.- Firma/s legitimada/s de acuerdo al art. 207 del Reglamento Notarial, a 23/10/2026, con número de protocolo 1640 DOY FE.-

350.55968 BTC from the [redacted] account and (2) 36.7926 BTC from the "[redacted]" account (collectively, the "Petitioner's Shared Loss").

6. Petitioner is entitled to the 387.35 bitcoins that represented the Petitioner's Shared Loss from the Bitfinex Hack.

7. Additionally, in accordance with the Bitcoin Investigation Report dated 1/13/2025 prepared by Carbono Solutions S.L., a copy of which is attached hereto and incorporated herein as Exhibit C, 188.9583353 bitcoins were taken from the Petitioner's wallet at Bitfinex on the day of the Bitfinex Hack and are clearly identified, along with any associated fork assets, as currently located at a specific address among the Defendant Properties forfeited to the United States Government as set forth in Attachment A.

8. Accordingly, Petitioner is entitled to the return of the 188.9583353 bitcoins forfeited from Defendants. A Petition for Remission or Mitigation is being simultaneously filed by the Petitioner for consideration by the U.S. Department of Justice.

B. Nature of Petitioner's Interest in Defendant Properties.

In 2016, prior to the Bitfinex Hack, Bitfinex allowed account creation without requiring identification, as exchanges were unregulated. However, Bitfinex, like many other cryptocurrency exchanges, now requires identification for new accounts, though some exchanges still allow registration with just an email. Petitioner opened his two accounts using only the following email addresses:

For the "[redacted]" account [redacted]

For the [redacted] account: [redacted]

As proof of Petitioner's [redacted] of the loss of its bitcoins during the Bitfinex Hack, the following verification documents are attached hereto and incorporated herein as exhibits:

1. Invoice (12/30/24): Invoice number 3826492 from Protonmail for services, [redacted] passport number, and email address [redacted]. See attached Exhibit D.

2. Ownership Certificate (01/03/2025): Certificate from Protonmail confirming Petitioner's name, date of birth, and ownership of the email [redacted] See attached Exhibit E.

3. Certificate (05/30/2022): Apostilled certificate from the National Bureau of [redacted] confirming access to Petitioner's Protonmail account [redacted] and detailing a 27-page report, including transactions from Bitfinex. This report, with CSV files, was downloaded onto CD-ROMs in Petitioner's possession. See attached Exhibit F.

4. Gmail Ownership Proof: Documentation confirming ownership of Petitioner's Gmail account [redacted] See attached Exhibit G.

5. Bitfinex Transaction Records: Bitfinex sent Petitioner transaction details (deposits, withdrawals, bitcoin addresses, and hashes) to both of Petitioner's email addresses [redacted] and [redacted] See Exhibit A for a summary of the Butifarra account activities and Exhibit B for a summary of the [redacted] account activities reflected in the CSV files. These files for the [redacted] account also exist on CD-ROM, provided by the National Bureau of Enforcement [redacted] Emails between Petitioner and Bitfinex customer support requesting these records are also attached hereto and incorporated herein as Exhibit H.

6. Proof of Bitcoin Wallet Ownership: Petitioner made deposits from Petitioner's personal Bitcoin wallets to the wallets assigned to Petitioner by Bitfinex. Petitioner is the sole party in possession of the private keys to these personal wallets, which can be verified by signing transactions on the blockchain. Attached are instructions for signing a message to prove ownership. Bitcoin wallet ownership is evidenced by control of the private keys, which allow for spending and signing transactions. See attached Exhibit I.



NOTA.- Firma/s legitimada/s de acuerdo al art. 207 del Reglamento Notarial, a 22 / 10 / 2026 con número de protocolo 1640 DOY FE.-

C. Petitioner's Double Victim Status.

The Petitioner's financial loss directly resulted from the theft, which occurred due to Bitfinex's gross negligence, as outlined below. The hack was caused by serious security flaws in Bitfinex's system. Additionally, rather than using its own resources to cover the loss, Bitfinex took thirty-six percent (36%) of all customer funds to compensate for the stolen assets. This is similar to a bank being robbed due to its own negligence and then taking thirty-six percent (36%) from all customers to cover the loss, instead of handling it themselves.

1. Negligence in Security Measures: Bitfinex used a multi-signature wallet system provided by BitGo, but it was not sufficient to prevent the hack. They failed to implement additional controls to restrict access during suspicious activity, which could have reduced the hack's impact.

2. Excessive Use of Hot Wallets: A large portion of user funds were stored in hot wallets, which are more vulnerable to hacking than cold wallets. This increased the risk of a significant theft.

3. Inadequate Security Measures: Despite BitGo's claims that their security measures were designed to prevent unauthorized access, Bitfinex failed to implement sufficient safeguards against sophisticated hacking techniques.

4. Response to the Hack: After the hack, instead of using its own resources to compensate users, Bitfinex confiscated thirty-six percent (36%) of all customer funds to cover the losses. This decision shifted the financial burden onto users, which is seen as unfair given the exchange's negligence.

After the attack, Bitfinex imposed a thirty-six percent (36%) arbitrary cut on all user accounts, regardless of whether they were affected by the breach. This "socialization of losses" meant that all users' funds were reduced without consultation or alternative options. In return, Bitfinex issued BFX tokens, representing future compensation, but users had no choice but to accept them. The tokens were illiquid, did not guarantee full recovery, and many users, lacking confidence in Bitfinex's future, sold them at a significant loss. Initially trading at about $0.30, well below their

$1 face value, those who sold early suffered substantial losses. No fair alternative or full compensation was provided, leaving users unable to recover their lost bitcoins.

As a direct result of the hack and Bitfinex's subsequent self-serving remedial actions, Petitioner suffered significant psychological harm. Upon learning of the hack and being unable to access his Bitfinex account, which held nearly all of Petitioner's life savings, he experienced intense anxiety, panic attacks, dizziness, and tachycardia and was under professional counseling and psychological treatment for four (4) years. This distress contributed to the breakdown of Petitioner's 24-year marriage and the loss of his family. To this date, Petitioner continues to receive psychological treatment and will present all medical evidence at the hearing on the subject Petition.

## II. LEGAL BASIS FOR CLAIM

1. **Interest in Forfeited Property:**

Petitioner asserts a legal interest in the forfeited property under the following legal principles or statutes:

A. In the context of forfeited bitcoins resulting from a hack (such as the 2016 Bitfinex Hack), the victim owner of the lost bitcoins may assert a legal interest or right to reclaim the forfeited bitcoins based on statutory provisions governing property forfeiture, specifically those under 18 U.S.C. § 1956(h) and 18 U.S.C. § 371.

2. **Legal Basis:**

A. 18 U.S.C. § 982: This statute permits the government to seize and forfeit property of a defendant convicted of an offense in violation of, or a conspiracy to violate, 18 U.S.C. § 1956. When bitcoins are stolen and subsequently laundered (such as through a hack), the U.S. government has the authority to seize and forfeit them if they are traceable to the criminal activity.

3. **Right to Claim Forfeited Property:**

A. The primary statutory framework for a victim's claim to forfeited property, such as stolen bitcoins, is through the Federal Rules of Criminal Procedure, particularly Rule 32.2, and relevant forfeiture laws:



NOTA.- Firma/s legitimada/s de acuerdo al art. 207 del Reglamento Notarial, a 28 / 10 / 2026 con número de protocolo 1640 DOY FE.-

1. Federal Rule of Criminal Procedure 32.2 establishes procedures for the criminal forfeiture process, and it allows for the victims of crimes to assert their interests in forfeited property.

2. 18 U.S.C. § 983 provides specific rules for third-party claims to seized property. If a victim can prove that they are the legitimate owner of the property (in this case, the stolen bitcoins), they can file a claim with the government to recover their assets.

B. The primary case law framework for a victim's claim to forfeited property, such as stolen bitcoins, is shaped by judicial interpretations of criminal forfeiture procedures and related doctrines, particularly as they apply to the rights of victims seeking restitution and recovery of their property under relevant case law and procedural guidelines:

1. United States v. $40,000 in U.S. Currency, 291 F.3d 977 (7th Cir. 2002). This case addresses the right of third parties (such as a victim) to claim property that has been forfeited under federal law. The ruling suggests that victims who can demonstrate they have a legal interest in the forfeited property may be able to recover it.
2. United States v. One 1990 Jeep Wrangler, 972 F.2d 472 (2d Cir. 1992). This case elaborates on the standing of third-party claimants to assert their ownership interests in forfeited property. It sets a precedent that individuals who have a rightful claim to the property may pursue it, even if it has been seized as part of a criminal forfeiture.

This Petition is filed within the time frame required by Federal Rule of Criminal Procedure 32.2, and Petitioner has complied with all procedural requirements necessary for claiming an interest in the property.

Pursuant to 21 U.S.C. § 853(n)(3), this Petition is signed by Petitioner under penalty of perjury, and Petitioner's Verification, bearing his notarized signature in accordance with the Court's Sealed Order entered on October 2, 2026, is attached hereto and incorporated herein.

## III. REQUEST FOR RELIEF

Based on the foregoing, Petitioner respectfully requests that the Court:

1. Recognize the Petitioner's interest in the forfeited property.

1. Order the return of the property to the Petitioner, grant possession as appropriate under law, including, but not limited to the return of the 188.9583353 bitcoins and associated fork assets, currently located at the address of the property seized and forfeited to the United States, and the 387.35 bitcoins, representing the Petitioner's Shared Loss, or award monetary damages equivalent to the loss of the bitcoins as measured by today's bitcoin value.
2. Such other relief as the Court finds equitable and just, including but not limited to the right to a hearing or other procedural steps.

## IV. PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully prays that this Court:

1. Accept this petition for an ancillary proceeding to claim interest in the forfeited property.
2. Grant the requested relief as outlined above.
3. Order such further relief as may be just and equitable.

**DATED originally the 14th day of January, 2025.**

**RE-EXECUTED on this 6th day of November, 2026**

**Respectfully submitted,**

**/s/Charles Haskell**
**Charles Haskell # 888304007**
**The Law Offices of Charles R. Haskell, PLLC**
**641 Indiana Ave. NW**
**Washington, DC 20004**
**Local Counsel for Petitioner**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

**United States of America v. Ilya Lichtenstein, et al., Criminal No. 23-CR-239 (CKK)**

**VERIFICATION OF PETITIONER PURSUANT TO 21 U.S.C. § 853(n)(3)**

I, Pablo Garcia Illescas, being first duly sworn, depose and state under penalty of perjury as follows: I am the Petitioner in the foregoing Verified Amended Petition for Ancillary Proceeding

Claiming Interest in Forfeited Property (the "Petition"). I have read the Petition and know its contents. The facts set forth in the Petition, including the nature and extent of my right, title, and interest in the Defendant Properties, the time and circumstances of my acquisition of that right, title, and interest, and the additional facts supporting my claim and the relief sought, are true and correct to the best of my personal knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on the 28 day of October, 2026, at City of Madrid, Spain.

PABLO GARCIA ILLESCAS
Pablo Garcia Illescas, Petitioner (to be signed in Petitioner's full legal name)

STATE/COUNTRY OF SPAIN

COUNTY/CITY OF MADRID

Sworn to (or affirmed) and subscribed before me by means of ☒ physical presence or ☐ online notarization, this 28 day of October, 2026, by Pablo Garcia Illescas, who ☐ is personally known to me or ☒ has produced SPANISH PASSPORT PAT752494 as identification, and who signed the foregoing Verification in my presence.

Notary Public
Print Name: SUSANA ORTEGA FERNANDEZ
My Commission Expires: N/A

[NOTARY SEAL]

Colegio Notarial de Madrid · Ortega Fernández · Notaria de Huesca

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Verified Amended Petition for Ancillary Proceeding Claiming Interest in Forfeited Property has been served upon Rick Blaylock, Jr., Special Assistant United States Attorney, United States Attorney's Office, 601 D Street, N.W., Washington, D.C. by Federal Express overnight courier service, on this ___ day of ___________, 2026.

______________________

Claiming Interest in Forfeited Property (the "Petition"). I have read the Petition and know its contents. The facts set forth in the Petition, including the nature and extent of my right, title, and interest in the Defendant Properties, the time and circumstances of my acquisition of that right, title, and interest, and the additional facts supporting my claim and the relief sought, are true and correct to the best of my personal knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on the ____ day of October, 2026, at City of Madrid, Spain.

______________________________
Pablo Garcia Illescas, Petitioner (to be signed in Petitioner's full legal name)

STATE/COUNTRY OF SPAIN

COUNTY/CITY OF MADRID

Sworn to (or affirmed) and subscribed before me by means of ☐ physical presence or ☐ online notarization, this ____ day of October, 2026, by Pablo Garcia Illescas, who ☐ is personally known to me or ☐ has produced ______________________ as identification, and who signed the foregoing Verification in my presence.

______________________________
Notary Public
Print Name:

My Commission Expires: ______________

[NOTARY SEAL]

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Verified Amended Petition for Ancillary Proceeding Claiming Interest in Forfeited Property has been served upon Rick Blaylock, Jr., Special Assistant United States Attorney, United States Attorney's Office, 601 D Street, N.W., Washington, D.C. by Federal Express overnight courier service, on this 6th day of November, 2026.

**/s/Charles Haskell**
**Charles Haskell # 888304007**
**The Law Offices of Charles R. Haskell, PLLC**

**641 Indiana Ave. NW**
**Washington, DC 20004**
**Local Counsel for Petitioner**

[*Remainder of this page intentionally left blank; exhibits to follow*]

<<TESTIMONIO.- Yo, SUSANA ORTEGA FERNÁNDEZ, Notario de Madrid. ---------------------------------------------------------------

DOY FE: Que considero legítima la firma, por haber sido puesta por el firmante en mi presencia, de **DON PABLO GARCÍA ILLESCAS**, de nacionalidad española, identificado con su DNI/NIF número 02254910J y pasaporte vigente de su país, número PAT782494. Esta legitimación se ha realizado de acuerdo con lo dispuesto en el artículo 207 del Reglamento Notarial. Fotocopia del documento, se une al acta autorizada por mí, el veintiocho de octubre de dos mil veintiséis, con el número 1640 de protocolo. ---------------------------------------------------

Madrid, a veintiocho de octubre de dos mil veintiséis>>.-----------

<<CERTIFICATION.—I, SUSANA ORTEGA FERNÁNDEZ, Notary Public of Madrid.

I CERTIFY: That I consider the signature to be authentic, as it was affixed by the signatory, **MR. PABLO GARCÍA ILLESCAS**, a spanish national, identified by his DNI/NIF number 02254910J and passport number PAT782494, in my presence. This authentication was performed in accordance with the provisions of Article 207 of the Notarial Regulations, only in regard to the Spanish version. A photocopy of the document is attached to the deed certified by me on October 28, 2026, under protocol number 1640.

Madrid, October 28, 2026 >>.

SELLO DE LEGITIMACIONES Y LEGALIZACIONES

NIHIL PRIUS FIDE

A122633229

FE PÚBLICA NOTARIAL

CONSEJO GENERAL DEL NOTARIADO ESPAÑOL

NOTARIADO EUROPA

0301508659

C01034488

TIMBRE DEL ESTADO

0,15 €

05/2026

**=FOLIO HABILITADO PARA LEGALIZACIONES POR EL ILUSTRE COLEGIO NOTARIAL DE MADRID=**

Este folio ha quedado unido con el sello de este Ilustre Colegio Notarial al Testimonio expedido por
Dña. Susana Ortega Fernández
Notario de Madrid
el día 28/10/2026

## APOSTILLE

(Convention de La Haye du 5 octobre 1961)

| | |
|---|---|
| **1. País:** Country / Pays | ESPAÑA |
| **El presente documento público** This public document / Le présent acte public | |
| **2. ha sido firmado por** has been signed by / a été signé par | Dña. Susana Ortega Fernández |
| **3. quien actúa en calidad de** acting in the capacity of / agissant en qualité de | NOTARIO |
| **4. y está revestido del sello / timbre de** bears the seal / stamp of / est revêtu du sceau / timbre de | SU NOTARÍA |

**Certificado**
Certified / Atteste

| | |
|---|---|
| **5. en** at / à: MADRID | **6. el día** the / le: 28/10/2026 |
| **7. por** by / par: el Decano del Colegio Notarial de Madrid | |
| **8. bajo el número** No / sous no: N7201/2026/067868 | |
| **9. Sello / timbre:** Seal / stamp / Sceau / timbre — FE PÚBLICA NOTARIAL; CONSEJO GENERAL DEL NOTARIADO ESPAÑOL; NOTARIADO EUROPA; COLEGIO NOTARIAL MADRID; 0314985771 | **10. Firma:** Signature / Signature — Dª. Mª. de la Concepción de la Torre Pedrosa, Firma delegada del Decano |

Esta Apostilla certifica únicamente la autenticidad de la firma, la calidad en que el signatario del documento haya actuado y, en su caso, la identidad del sello o timbre del que el documento público esté revestido.

Esta Apostilla no certifica el contenido del documento para el cual se expidió.

[No es valido el uso de esta Apostilla en España]

[Esta Apostilla se puede verificar en la dirección siguiente: https://eregister.justicia.es/]
Código de verificación de la Apostilla: NA TzhR-pLes-fdfv-TKfY

This Apostille only certifies the authenticity of the signature and the capacity of the person who has signed the public document, and, where appropriate, the identity of the seal or stamp which the public document bears.

This Apostille does not certify the content of the document for which it was issued.

[This Apostille is not valid for use anywhere within Spain]

[To verify the issuance of this Apostille, see https://eregister.justicia.es/]
Verification Code of the Apostille: NA TzhR-pLes-fdfv-TKfY

Cette Apostille atteste uniquement la véracité de la signature, la qualité en laquelle le signataire de l'acte a agi et, le cas échéant, l'identité du sceau ou timbre dont cet acte public est revêtu.

Cette Apostille ne certifie pas le contenu de l'acte pour lequel elle a été émise.

[L'utilisation de cette Apostille n'est pas valable en Espagne.]

[Cette Apostille peut être vérifiée à l'adresse suivante: https://eregister.justicia.es/]
Code de vérification de l'Apostille: NA TzhR-pLes-fdfv-TKfY