**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ILYA LICHTENSTEIN and<br>HEATHER MORGAN,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 23-cr-239 (CKK) |

**OMNIBUS MEMORANDUM OPINION**
(November 19, 2026)

Pending before this Court is Non-Party Richard Roe's [344] Redacted Motion to File an Out-of-Time Motion to Intervene and a Verified Ancillary Petition ("Roe Mot."); Petitioner Bitfinex's [386] [redacted] Opposition to Non-Party Richard Roe's Motion ("Bitfinex Opp'n"); and Richard Roe's [349] Reply to Bitfinex's Opposition ("Roe Reply").[1] Non-Party Richard Roe ("Roe") asserts an interest in the property that is subject to forfeiture under the Second Preliminary Order of Forfeiture, ECF No. 178, and consequently, he moves to file an out-of-time motion to intervene in the ancillary proceeding in this case. Roe's Motion is ripe for resolution by this Court. For the reasons explained herein, Roe's [344] Motion to File an Out-of-Time Motion to Intervene and a Verified Ancillary Petition shall be **DENIED**.

Also pending before this Court and discussed herein are various Petitioners' motions to intervene, which shall be **GRANTED IN PART and DENIED IN PART**, and one Petitioner's motion for leave to file an amended ancillary petition, which shall be **GRANTED IN PART and DENIED IN PART**. Additionally pending before this Court are several motions to dismiss certain Petitioners, but those motions will be addressed by means of a separate opinion.

[1] iFinex, Inc. and BFXNA Inc. together are referred to as "Bitfinex."

I. PROCEDURAL BACKGROUND

Because this case involves an ancillary forfeiture proceeding involving Bitfinex and fifteen other Petitioners, some of whom are acting *pro* se, the Court includes a rather extensive procedural background, which reiterates some information from previous opinions and order.

A. Restitution and Forfeiture

Defendants Ilya Lichtenstein ("Lichtenstein") and Heather Morgan ("Morgan") (collectively, the "Defendants") pleaded guilty to one count of Money Laundering Conspiracy (Lichtenstein), and one count of Money Laundering Conspiracy and one count of Conspiracy to Defraud the United States (Morgan). In their plea agreements, both Defendant acknowledged that "the Court has an obligation to determine whether, and in what amount, mandatory restitution applies in this case under 18 U.S.C. § 3663A at the time of sentencing." Plea Agrmt., ECF No. 96 (Lichtenstein), at 9-10; ECF No. 101 (Morgan), at 10. Apart from that determination regarding mandatory restitution, and because this case involved Defendants' hack into Bitfinex's system to steal cryptocurrency, both Defendants agreed to "pay restitution to Bitfinex in an amount to be determined at sentencing." *Id.*

Defendants Lichtenstein and Morgan were sentenced on November 14, 2024, and November 18, 2024, respectively, with their Judgments entered on December 3, 2024 [Lichtenstein, ECF No. 195], and December 11, 2024 [Morgan, ECF No. 198]. Attached to both Judgments is a Second Amended Preliminary Order of Forfeiture, which indicates that "any property, real or personal, involved in the offense alleged in Count One against Defendant Lichtenstein, and any property traceable to such property" and "any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of the offense alleged in Count Two against Defendant Morgan" is subject to forfeiture. *See* Second Am. Prelim. Orders of Forfeiture, ECF Nos. 195-1 & 198-1, at 1-2; *see also* Corrected Second Am. Attachment A (listing the property, which is hereinafter referred

to as the "forfeiture assets" or "forfeited assets").

1. The Government Provides Notice to Third Parties

Prior to sentencing (and any determination regarding restitution), the Government filed its [141] Consent Motion for Order Authorizing Alternative Notification Procedures Out of an Abundance of Caution, which provided a procedure for notifying persons who qualified as "victims" pursuant to the Crime Victims' Rights Act, 18 U.S.C. §3771, or for restitution pursuant to the Mandatory Victim Restitution Act, 18 USC §3663A. The Government indicated its intent to establish a website for notifying persons possibly affected by the Bitfinex hack, although the Government proffered that it was their view that there were no "victims" under the CVRA, or for purposes of restitution under the MVRA. Consent Mot., ECF No. 141, at 1 & n.1. Nevertheless, the Government recognized that persons affected by the Bitfinex hack should have the opportunity to raise claims about victim status and/or restitution prior to sentencing. *Id.* at 1, 6, 9. On October 10, 2024, this Court entered its [145] Order Authorizing Alternative Notification Procedures.

On November 13, 2024, one day prior to Mr. Lichtenstein's sentencing, the Government filed its [171] Notice and Motion for Delayed Restitution Hearing, which moved to defer a final determination of any victims' losses and the accompanying restitution order by a period of 90 days. Also on that day, the Government provided its [173] Notice Regarding Statements from Self-Identified Persons Impacted by the Defendants' Conduct. On the following day, the Government provided its [175] Supplemental Notice Regarding Statements from Self-Identified Persons Impacted by the Defendants' Conduct. Both the Notice and the Supplemental Notice explain that:

> Pursuant to the Court's Order Authorizing Alternative Notification Procedures, ECF No. 145, the government established a website with case-specific information and a process for members of the public to submit statements regarding how they may have been impacted by the defendants' conduct. Individuals were instructed to provide statements by email by November 12, 2024, and were advised that the information would be relayed to the Court. The government received multiple submissions from individuals who claim to have been impacted by the defendants' conduct.

Govt. Notice, ECF No. 173, at 1; Govt. Supp. Notice, ECF No. 175, at 1.

On November 21, 2024, three days after Ms. Morgan's sentencing, the parties filed their [184] Consent Motion to schedule a restitution hearing for February 21, 2025, and they attached a proposed scheduling order. On November 21, 2024, this Court granted the Consent Motion and set a restitution hearing for February 21, 2025. *See* Order, ECF No. 185. That [185] Order further set a January 28, 2025 deadline for third parties to file any motions to intervene/objections as well as deadlines for supplemental briefing by the parties regarding restitution. After the Court issued its [185] Order, multiple persons and entities ("third parties") filed a multitude of motions and petitions. These third parties requested the right to intervene, to assert victim status, and to have their property returned.[2] Some of these motions were filed *pro se* and others with the assistance of counsel.

2. The Government Indicates its Position on Restitution and Forfeiture

On January 14, 2025, the Government filed its [202] Supplemental Motion Regarding Restitution, which reasserted its position that, under the MVRA, "there [was] no "victim" for the specific offenses of conviction in this proceeding," but acknowledged that the Court had the authority to order "voluntary restitution [that] is appropriate and authorized under the defendants' plea agreements," regarding Bitfinex, and that such voluntary restitution should "include the residue of the property that was stolen from Bitfinex in the 2016 hack[.]" Govt. Supp. Mot., ECF No. 202, at 1. The Government asserted that because these stolen assets represented "specific property lost" due to the hack, those assets could be paid to Bitfinex as restitution in kind. *Id.* The Government asserted further that "[a]ll other assets seized by the [G]overnment (which are listed in the Corrected

[2] Some third parties requested permission to proceed anonymously and or under seal, and those issues were addressed by the Court in its [278] Omnibus Memorandum Opinion and Order, granting in part and denying in part six motions by third parties for leave to file pseudonymously and/or under seal, permitting the parties to proceed via pseudonym and to seal personally identifying information, but not including the total amount of assets being claimed by a third party.

Second Amended Attachment A (ECF No. 195)) should be subject to the ongoing third-party ancillary forfeiture proceeding." *Id.* at 1-2; *see* 21 U.S.C. §853(n) (describing the procedure for determining third-party claims against the assets that have been forfeited to the Government); Fed. R. Crim. P. 32.2(c) (discussing ancillary proceedings). The Government anticipated that "one or more parties may be able to assert valid claims in the third-party ancillary proceeding regardless of whether they would be considered "victims" entitled to restitution under the MVRA." Govt. Supp. Mot., ECF No. 202, at 5.

3. The Court Requests Additional Briefing because of Issues Raised by Third Parties

Because the third parties raised issues relating to the propriety of awarding voluntary restitution to Bitfinex of the property stolen during the 2016 hack – which they claimed as their own property – the Court requested additional briefing by the Government as to "the appropriate disposition of assets subject to forfeiture and the transfer to Bitfinex as voluntary restitution." *See* January 28, 2025 Order (setting a February 4, 2025 response date). In the Government's [229] Response, it noted that "if the Court is concerned about removing specific properties from the third-party ancillary proceeding, it could order $0 restitution and adjudicate the disposal of the seized properties solely through the third-party ancillary proceeding." Govt. Resp., ECF No. 220, at 4 n.1. The Government noted further that "[t]he Court is required to order restitution agreed to by the parties in a plea agreement (as is the case here), 18 U.S.C. § 3663A(a)(3), but where the plea agreement is silent as to the form or amount of restitution, the Court retains the discretion to fashion an appropriate restitution order[.]" Govt. Resp., ECF No. 220, at 4 n.1 (citing *United States v. Peterson*, 268 F.3d 533, 535 (7th Cir. 2001)).

Subsequently, this Court issued its [247] Memorandum Opinion and Order explaining the posture of the case and requesting additional briefing from the Government on three issues that related to third-party concerns regarding mandatory restitution, voluntary restitution, and the way in which

restitution claims might affect the ancillary forfeiture proceeding. In that Opinion and Order, the Court indicated that:

> Specifically, regarding the MVRA, some [third parties] argue that because the underlying offense of conviction is a conspiracy, courts may look at the defendant's criminal conduct during that conspiracy as a basis for restitution. Additionally, some [third parties] contest that in-kind restitution should be awarded to Bitfinex, on grounds that the [third parties] are the owners of the property that was hacked and furthermore – contrary to representations by Bitfinex – they have not been adequately compensated (made whole) regarding the property that was stolen because of the hack.

Mem. Op. and Order, ECF No. 247, at 5. In conjunction with the request for additional information from the Government, this Court vacated the restitution hearing that was scheduled for February 21, 2025, to allow time for the Government's briefing. *See* February 11, 2025 Minute Order.

4. The Court Modifies Slightly the Ultimate Deadline for Filing of Ancillary Petitions

On February 14, 2025, this Court issued its [250] Order, which summarized in brief the procedural posture of the case and noted the prior deadlines that it had set for third-party motions and objections. The Court noted further that it had not similarly indicated on the docket any deadline for ancillary petitions, and as such (and because some petitions were originating from overseas), the Court indicated a final deadline of February 19, 2025, for the receipt of any ancillary petitions by third parties who had not previously filed anything with the Court. That February 19, 2025 deadline altered by a few days the February 15, 2025 deadline established by the Government in its Notice of Forfeiture, ECF No. 361-1, at 7.[3]

5. The Government Revises its Position on Restitution and Forfeiture

On February 23, 2025, the Government filed its [262] Response to the Court's request for additional information on three issues related to arguments raised by various third parties (who are also referenced herein as "Petitioners"). The Government noted that "[i]n light of the complex issues

[3] The Court notes that February 15, 2025 was a Saturday, and furthermore, Monday, February 17, 2025 was a federal holiday.

of fact and law raised by the parties and third-party petitioners regarding restitution, and in consideration of the Court's orders and opinions," the Government "now recommends that the Court order $0 restitution and adjudicate the disposal of the seized properties solely through the third-party forfeiture ancillary proceeding." Govt. Resp., ECF No. 262, at 1-2. The Government asserted that:

> Such an outcome would be consistent with the government's analysis of the MVRA—that no party is a "victim" of the defendants' money laundering offenses under the technical legal definition of that term in the MVRA, 18 U.S.C. §3663A(a)(2)—as well as the MVRA's carve-out for excessively complex restitution issues, 18 U.S.C. § 3663A(c)(3)(B) ("This section shall not apply" where "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process.")

Govt. Resp., ECF No. 262, at 2.

5. The Court Awards $0 in Restitution to Bitfinex and Indicates it will Proceed with a Third-party Ancillary Forfeiture Proceeding.

On April 4, 2025, the Court issued its [300] Memorandum Opinion addressing Defendants' restitution obligations and discussing the ancillary proceeding, "which will be held for the purpose of determining claims of entitlement to the forfeited property by Bitfinex and Petitioners/Third-Party Claimants." Mem. Op., ECF No. 300, at 1. The Government proffered that there were more than a dozen third-party petitioners with competing claims, ranging from individual *pro se* third parties to major accountholders, and that discovery in support of their claims might be requested. *Id.* at 18-19. Furthermore, the Government indicated that it was "unable to independently verify or fully validate the third-party petitioners' alleged ownership interests" nor did it know whether these third parties were Bitfinex accountholders at the time of the hack, their account balances, or the service arrangements between them and Bitfinex. *Id.* at 19.

The Court noted that these issues (highlighted by the Government) would have to be addressed in connection with the ancillary proceeding. Moreover, the Court indicated also that "the tracing of the accounts in a cryptocurrency case involving hacking is in and itself complex." *Id.* (noting that

the Court would have to determine superior interests in the forfeited assets that were being claimed by both the third parties and Bitfinex). The Court "agree[d] with Government's characterization of this litigation as potentially 'complex, prolonged, and burdensome.'" *Id.* at 18-19. Accordingly, the Court concluded that:

> [B]ecause of the complex issues of fact and law raised by the parties, Petitioners, and Bitfinex regarding restitution, $0 restitution shall be awarded to Bitfinex; the Court will not hold a restitution hearing; and adjudication of the disposal of the forfeited assets shall proceed solely through a third-party forfeiture ancillary proceeding.

Mem. Op., ECF No. 300, at 2; *see also* Order, ECF No. 299.

B. Ancillary Proceeding and Petitioners with Ancillary Claims

The Court's [300] Memorandum Opinion set forth the claims to forfeited assets by Bitfinex, *id.* at 18, and it recognized sixteen Petitioners with timely claims and indicated their claimed losses. *See id.* at 18 n.11 (listing (1) A.B. (1896.43 ETH and 1876.6 ETC) [Ancillary Petition, ECF No. 282]; (2) AH-1 (391.98 BTC, 3156.14 ETH, $48, 324.34 USD) [Ancillary Petition, ECF No. 288]; (3) Pablo Garcia Illescas (188.9583353 BTC) [Ancillary Petition, ECF No. 253]; (4) Jonas Paasch (94.9 BTC) [Ancillary Petition, ECF No. 263]; (5) Hjalmar Peters (12.94485805 BTC) [Ancillary Petition, ECF No. 376]; (6) Allan Newman (8.76586537 BTC, 22.113265451 LTC) [Ancillary Petition, ECF No. 203]; (7) Dolan Harrington (2.35436113 BTC) [Ancillary Petition, ECF No. 366]; (8) Christian Dressler (0.90305977 BTC, 91.1871525 ETH) [Ancillary Petition, ECF No. 365]; (9) Juergen Lankat (4.78591312 BTC) [Ancillary Petition, ECF No. 248]; (10) Charles Reed Venturella (13.03662881 BTC) [Ancillary Petition, ECF No. 266-1][4]; (11) Company Doe and director/sole shareholder Tom Doe (57.84809770 BTC) [Ancillary Petition, ECF No. 283]; (12) Francisco Cavazos (14.994 BTC) [Ancillary Petition, ECF No. 252]; (13) Louis Zuijderwijk (3.2743 BTC) [Ancillary Petition, ECF No. 215]; (14) XYZ Inc. (2,770.48034004 BTC) [Ancillary Petition, ECF

[4] As noted later herein, Mr. Venturella's Ancillary Petition shall be docketed by counsel as a separate document as opposed to an attachment to a motion to intervene.

No. 289-4][5]; (15) Rafal Bielenia (33.06537432 BTC) [Ancillary Petition (erroneously styled as a motion to intervene), ECF No. 254][6]; and (16) John Doe (670.68637 BTC) [Ancillary Petition, ECF No. 285]).

II. PENDING MOTIONS

Prior to addressing Roe's motion to file out-of-time, which is the central motion underlying this Memorandum Opinion, the Court detours briefly, in part to update the *pro se* Petitioners as to some recent docket activity, and in part to address one Petitioner's motion for amendment of his ancillary petition and several Petitioners' motions to intervene.

A. Dismissal of One Claim, Amendment of Three, and a Pending Request to Amend

After the Court's issuance of its [300] Memorandum Opinion determining that the disposal of forfeited assets would proceed solely through an ancillary forfeiture proceeding involving Bitfinex and the sixteen Petitioners, on February 17, 2025, Petitioner AH-1 filed his [373] Notice of Voluntary Dismissal with Prejudice of his petition and request for ancillary relief. Accordingly, AH-1 (and AH-1's counsel) are no longer a part of the ancillary proceeding, and the Clerk's Office shall be instructed to amend the docket to reflect that dismissal.

Furthermore, the Court notes that three Petitioners have amended their previously-timely ancillary petitions regarding the <u>amounts</u> of cryptocurrency being claimed, as follows: (1) Hjalmar Peters (17.5071 BTC) [Amended Ancillary Petition, ECF No. 376]; (2) Dolan Harrington (6.52774318 BTC) [Amended Ancillary Petition, ECF No. 377]; (3) Louis Zuijderwijk (9.07868043 BTC) [Amended Ancillary Petition, ECF No. 345].

Finally, pending before this Court is a Motion to Amend Petition by Petitioner Jonas Paasch, filed at ECF No. 360. Unlike the motions by Petitioners Peters, Harrington, and Zuijderwijk,

---

[5] XYZ Inc.'s Petition shall also be docketed separately as opposed to an attachment to another motion.

[6] Petitioner Bielenia filed a separate motion to intervene, which is docketed at ECF No. 255.

Petitioner Paasch's motion does not seek to amend the amount of cryptocurrency he claims, but instead he seeks to "correct terminological inaccuracies" and "add newly discovered, public tracing detail into Exhibit A" and "shorten [his] petition." Mot. to Amend, ECF No. 360, at 1. The Court notes that there have been several prior iterations of this Petitioner's petition (which were submitted to the Court/Clerk's Office as corrected versions), and as such, Petitioner Jonas Paasch's [360] Motion to Amend shall be GRANTED IN PART, to permit an addition to the tracing detail, but otherwise DENIED IN PART, as unnecessary.[7]

B. Intervention Requests by Petitioners

The Court notes that there are several outstanding motions on the docket that request intervention, namely:

- Motion to Intervene and Assert Victim Status, ECF No. 190 (Cavazos), ECF No. 207 (Zuijderwijk)
- Motion to Intervene and Request for Leave to Appear as an Interested Party under the CVRA and MVRA, ECF No. 229 (Bitfinex)
- Motion to Intervene, ECF No. 230 (Dressler, Lankat, Peters, Newman, Harrington), ECF Nos. 238 & 255 (Bielenia), ECF No. 266 (Venturella), ECF No. 268 (Tom Doe and Company Doe)
- Motion to Intervene and for an Order of Restitution, ECF Nos. 241 & 286 (John Doe)

The Court notes that these motions were filed prior to the Court's determination that – because of the complex issues of fact and law – no award of $0 restitution was applicable and furthermore, that claims to the forfeited assets would be addressed by means of an ancillary forfeiture proceeding. As such, this Court made no determination that Bitfinex or any of the Petitioners were "victims" pursuant to the CVRA and MVRA. This Court reiterates its acknowledgment that these Petitioners

[7] The Court references its March 7, 2025 Minute Order which notes that "the endless filing of documents, supplementation thereof (in large part, duplicative) and substitution of previous filings (to correct errors) is straining the resources of the Clerk's Office and this Court" and the "constant stream of filings in this case only serves to delay" this proceeding.

who requested intervention (as well as A.B., Pablo Garcia Illescas, and Jonas Paasch – who did not file independent motions to intervene, and XYZ Inc. – which filed a motion to intervene as an attachment to another motion, *see* ECF No. 289-1) are recognized by this Court as Petitioners with timely ancillary claims. *See* 21 U.S.C. § 853(n) (discussing third-party interests). Pursuant to 21 U.S.C. § 853(k), "[e]xcept as provided in subsection (n), no party claiming an interest in property subject to forfeiture under this section" may intervene in a trial or appeal of a criminal case involving the forfeiture of that property or bring an action against the United States relating to validity of the party's alleged interest . . . " Accordingly, all motions to intervene (ECF Nos. 190, 207, 229, 230, 238, 241, 255, 266, 268, 286, 289-1) are GRANTED IN PART as they pertain to the Petitioners "intervening" for purposes of the ancillary forfeiture proceeding and DENIED WITHOUT PREDJUDICE otherwise.[8] As noted previously, for purposes of docket management, Petitioner Venturella's [266-1] Ancillary Petition shall be docketed by his counsel as a separate document as opposed to an attachment to his motion to intervene. Similarly, Petitioner XYZ Inc.'s [289-4] Ancillary Petition [public version] shall also be docketed by its counsel as a separate document as opposed to an attachment to another motion.

The Court turns now to the primary motion underlying this Memorandum Opinion – a motion to file an out-of-time motion to intervene and ancillary petition by Richard Roe.

C. Non-Party Roe's Motion to File an Out-of-Time Motion to Intervene and Ancillary Petition

In this case, Non-Party Richard Roe ("Roe") requests this Court's permission for leave to file a motion to intervene and an ancillary petition, which is opposed by Petitioner Bitfinex. Roe argues that he has an "interest in the property that is subject to forfeiture" and that disposition of this case may "impair his ability to protect those interests." Roe Mot., ECF No. 344, at 1. Furthermore, Roe

[8] At this point in the ancillary proceeding, the Court denies in part such motions because at least some of these motions are not strictly limited to a request for intervention but instead request victim status or refer to restitution, issues that were previously considered by the Court.

asserts that he "meets the standard for 'excusable neglect' under Rule 6(b)(1)(B)," because he has an extremely busy work schedule and he did not receive personal notification of the forfeiture, *id.* at 1, 3-5. Moreover, he asserts there is no prejudice to any party and that his delay is minimal. *Id.* at 6-6.

Petitioner Bitfinex asserts that Rule 6(b) does not extend the mandatory statutory deadline set forth in Section 853(n)(2), nor does Roe demonstrate excusable neglect, pursuant to Rule 6(b), or seek equitable tolling.[9] The Court now proceeds with its discussion of the merits of Roe's motion, beginning with Roe's contention that direct notice is required and was not provided.[10]

1. Roe Contends that He was Entitled To but Did Not Receive Direct Notice

Roe proffers that his ancillary petition is "timely under Section 853(n)" because the "time period set by that statute does not begin to run unless and until the petitioner receives direct notice as required by Rule 32.2 of the Federal Rules of Criminal Procedure." Roe Reply, ECF No. 349, at 6 (emphasis added); *see* Roe Affidavit, ECF No. 433-2 ¶12 (indicating that he did not receive direct notice from the U.S. Government or Bitfinex of his right to file an ancillary petition). Bitfinex asserts however, and this Court agrees, that the Government provided notice that met or exceeded statutory requirements. The Court turns now to notification requirements and a review of the notice that was provided to third parties in this case.

a. Notification Required

Rule 32.2 states that: "[i]f the court orders the forfeiture of specific property, the government must publish notice of the order and send notice to any person who reasonably appears to be a

[9] Roe does not raise the issue of equitable tolling in his Motion, and accordingly, the Court need not address it herein.

[10] Roe "challenges" Bitfinex's standing to oppose Roe's Motion, but such "challenge" is based on the contingency that this Court will grant Petitioner XYZ's motion to dismiss Bitfinex's ancillary petition. The Court notes that such "challenge" is without merit as it is based on a speculative future ruling.

potential claimant with standing to contest the forfeiture in the ancillary proceeding." Rule 32.2(b)(6)(A) (Publishing and Sending Notice).[11] This issue of notification is explained further in 21 U.S.C. § 853(n), which states that:

> (1) Following the entry of an order of forfeiture under this section, the United States shall publish notice of the order and of its intent to dispose of the property in such manner as the Attorney General may direct. The Government may also, to the extent practicable, provide direct written notice to any person known to have alleged an interest in the property that is the subject of the order of forfeiture as a substitute for the published notice as to those persons so notified.
>
> (2) Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property. The hearing shall be held before the court alone, without a jury.

21 U.S.C. §853(n)(1) & (2) (emphasis added).

b. Publication of Notice of Foreclosure

In this case, the Declaration of Publication, ECF No. 361-1, notes that the Notice of Foreclosure was "posted on an official government internet site . . . for at least 30 consecutive days, beginning on December 17, 2024 and ending on January 15, 2025." The Notice of Foreclosure states that:

> The United States hereby gives notice of its intent to dispose of the forfeited property in such manner as the United States Attorney General may direct. Any person, other than the defendant(s) in this case, claiming an interest in the forfeited property much file an ancillary petition within 60 days of the first date of publication (December 17, 2024) of this Notice on this office government internet site, pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure and 21 U.S.C. § 853(n)(1). The ancillary petition must be filed with the Clerk of the Court, 333 Constitution Ave., NW, Washington, DC 20001, and a copy served upon Assistant United States Attorney Rick Blaylock, 601 D. Street, N.W. Washington, DC 20530. The ancillary petition shall be signed by the petitioner under penalty of perjury and shall set forth the nature and extent of the petitioner's right, title or interest in the forfeited property, the time and circumstances of the petitioner's acquisition of the right, title and interest in the forfeited property and any additional facts supporting the petitioner's claim and the relief sought, pursuant to 21 U.S.C. § 853(n).

---

[11] Subsection (B) addresses the "Content of the Notice" while subsection (C) addresses the "Means of Publication; Exceptions to Publication Requirement." Rule 32.2 (b)(6)(B) & (C).

Notice of Forfeiture, ECF No. 361-1, at 7. The Government "sen[t] notice to any person who reasonably appear[ed] to be a potential claimant with standing to contest the forfeiture in the ancillary proceeding." Govt's Supp. Mot. Regarding Restitution, ECF No. 202, at 5 (referencing Fed. R. Crim. P. 32.2(b)(6)(A)). The Court finds that the public notification provided by the Government complied with statutory requirements.

c. Other Prior Notifications

The Court notes further that, prior to the publication of that Notice of Foreclosure, there were numerous other "notifications" provided to the public, including three Government press releases disclosing that there would be a forfeiture proceeding. Bitfinex explains that there was media coverage of this case for years and "[m]any of these articles specifically mentioned 'a court process by which victims can reclaim the stolen assets and the need for shareholders to file claims." Bitfinex Opp'n, ECF No. 386, at 10-11 & n.2 (referencing news sources). *See also* Declaration by Christopher Martin,[12] ECF No. 386-1, at 1-4 (identifying information the Government made available on the internet about the Department of Justice's ("DOJ's") prosecution in connection with the Bitfinex hack). Mr. Martin discusses, *inter alia*, the following exhibits attached to his Declaration:

- Ex. A [August 3, 2023 DOJ press release] (announcing Defendants' guilty pleas and providing notification – "Consistent with standard practice in criminal forfeiture cases, there will be a formal process at the conclusion of the case pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure for third-party claimants to submit claims for any seized and forfeited property)

- Ex. B [second August 3, 2023 DOJ press release, updated on February 6, 2025] (reiterating the information in Ex. A)

- Ex. C [August 3, 2023 Internal Revenue Service press release, updated on April 7, 2025] (reiterating the information in Exs. A and B)

d. Notification related to the Restitution Determination

---

[12] Mr. Martin is the Associate Managing Director in the New York office of Nardello & Co., LLC, a global investigations firm.

Furthermore, during the "restitution" stage of this case, the Government indicated that "there [were] potentially thousands of [Bitfinex] accountholders whose accounts lost value in 2016 as a result of this hack [and] [t]he [G]overnment has attempted to locate those victims, including by requesting a list of all accountholders from [Bitfinex], but such efforts have been unsuccessful." Consent Mot. for Order Authorizing Alternative Notification Procedures Out of an Abundance of Caution, ECF No. 141, at 6-7. Accordingly, the Government's Consent Motion requested authorization of alternative notification procedures to notify persons potentially harmed by the offenses to which the Defendants pled guilty, because "the government d[id] not know the identity or contact information for all [Bitfinex] accountholders." Id. at 7-8.

That Motion was granted by this Court on October 10, 2024, Order, ECF No. 145, at 1, and that Court-approved notification process included establishing a case-specific website and posting a link on the DOJ's website for large cases. See Consent Motion, ECF No. 141, at 8; *see also* Martin Decl., Exs. D & E:

- Ex. D [webpage titled "2016 Bitfinex Hack" published on October 17, 2024 on the website for the United States Attorneys' Office for the District of Columbia] (summarizing the case, and including a section titled "Notice to Person Impacted by the Defendants' Conduct – Soliciting Impact Statements" with a webpage to contact the Government and a link to the Court's October 10, 2024 Order Authorizing Alternative Notification Procedures) (last updated on October 29, 2024)

- Ex. E [webpage titled "United States v. Ilya Lichtenstein and Heather Morgan" published on October 31, 2024 on a part of the DOJ's website containing "Information for Victims in Large Cases" and a link to the webpage referenced in Ex. D]

Moreover, on November 7, 2024, the U.S. Attorneys' Office for the District of Columbia issued a press release titled "Website Related to Multi-Billion Dollar Bitfinex Hack Established" containing links to the webpage titled "2016 Bitfinex Hack" and the Court's October 10, 2024 Order. *See* Martin Decl., Ex. F That press release announced the establishment of the case-specific website and solicited information from anyone who had potentially been harmed by the Bitfinex Hack, including accountholders:

> **Notice to the public to solicit and receive information from all persons potentially harmed by the Bitfinex Hack, including affected Bitfinex accountholders**
>
> The Department of Justice has established a website to provide any person who claims status as a potential crime victim of the crimes described below to assert any rights under the Crime Victims' Act (CVRA), 18 U.S.C. § 3771, and with the opportunity to complete a statement to relay information about how they may have been harmed by the charged conduct and/or offenses.
>
> * * *
>
> If you wish to complete a statement about the impact of the offenses on you and/or to relay information about how you may have been victimized, please send that statement to the United States to be conveyed to the U.S. District Court judge who will make decisions in the case, including by sentencing the defendants. Specifically, please submit a statement by no later than November 13, 2024, via email to USADC.BitfinexHack2016@usdoj.gov. As stated above, the sentencings are currently scheduled for November 14 and 15, 2024.
>
> Additional information is available on the Department of Justice's website for large cases, [link provided].

Martin Decl., Ex. F.

On November 14, 2024, the day that Defendant Lichtenstein was sentenced, the Government issued another press release, which reiterated that "there will be a formal process pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure for third-party claimants to submit claims for any seized and forfeited property." Martin Decl., Ex. G.

Finally, on December 17, 2024, the Government published its Notice of Forfeiture (discussed in subsection 2a.), As previously noted herein, the deadline for persons to file their petitions was Saturday, February 15, 2025, with a United States' holiday on the next business day – Monday, February 17, 2025 – and accordingly, the Court extended the deadline by two days, to February 19, 2025. Bitfinex and sixteen others filed timely petitions while Roe's Petition was not timely filed.

Considering the issue of notification in this case, the Court finds that the Government's publication of the Notice of Forfeiture was sufficient notice pursuant to the statute, and here, not only did the Government comply with its publication requirements, but there was additional public notification leading up to the December 17, 2024 posting off the Notice of Forfeiture. Furthermore,

direct notice to all affected parties is not statutorily required, nor was it feasible here.[13] Accordingly, Roe's contention – that the time in Section 853(n) has not started to run because direct notice was required – is without merit. Having found that: (1) it was not practicable for the Government to provide direct notice; (2) the notice given by the Government was sufficient pursuant to the statute; and (3) the response period set forth in the Government's Notice [and slightly modified by this Court] concluded before Roe filed his instant Motion, the Court turns now to the parties' arguments about "excusable neglect."

2. Excusable Neglect Standard

Roe contends that "excusable neglect" is the standard applicable to the Court's analysis of Roe's request to file his ancillary petition out of time. Roe Mot., ECF No. 344, at 3 (referencing Fed. R. Civ. P. 6(b)). Bitfinex argues however that "Rule 6(b) cannot extend deadlines set by statute" such as the mandatory statutory deadline set pursuant to 21 U.S.C. § 853(n)(2). Bitfinex Opp'n, ECF No. 386, at 16.

a. Applicability of this Standard

Bitfinex notes that "[a]s the D.C. Circuit held in *Sherrod v. Breitbart*, binding precedent, '[m]otions under Federal Rule of Civil Procedure 6(b) cannot extend statutory time limits.'" Bitfinex Mot., ECF No. 386, at 16 (citing *Sherrod*, 720 F.3d 932, 938 (D.C. Cir. 2013)). In *Argentine Republic v. Nat'l Grid Plc.*, the D.C. Circuit made clear that "[e]very court to have considered this question has held that Rule 6(b) may be used only to extend the time limits imposed by the court itself or by other Federal Rules, but not by statute." 637 F.3d 365, 368 (D.C. Cir. 2011). Roe contends however that he "does not seek to extend statutory deadlines . . . but instead is seeking

---

[13] Bitfinex explains that "[i]t appears that individuals who contacted the government [in response to an earlier notification relating to person affected by the Defendants' Hack] received direct notice of the forfeiture action." Bitfinex Opp'n, ECF No. 386, at 10 & n.9 (referencing statements from certain Petitioners' ancillary petitions indicating that they received notice on December 17, 2024).

relief from the Court's so-ordered deadline of February 19, 2025." Roe's Reply, ECF No. 349, at 14-15 (additionally noting that neither the *Sherrod* case nor the *Argentine Republic* case involves the criminal forfeiture context).[14] Because this case involves a deadline that was slightly modified by the Court – and in the interest of judicial efficiency, since Roe has indicated his intention to challenge any final order of forfeiture – this Court will consider Roe's Rule 6(b) excusable neglect argument. The Court notes that Bitfinex has fully briefed its opposition to this argument.

b. Excusable Neglect - Four Factors to Consider

Four factors guide the Court's determination of when a late filing may constitute "excusable neglect" as follows: (1) the danger of prejudice to the opposing party, (2) the length of delay and potential impact on the judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith. *See In re Vitamins Antitrust Class Action*, 327 F.3d 1207, 1209 (D.C. Cir. 2003) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395 (1993)). This determination as to whether neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer*, 507 U.S. at 395.

"'Excusable neglect is not easily demonstrated, nor was it intended to be.'" *In re Smith*, Case No. 11-00481, 2013 WL 3156639, at *4 (Bankr. D.D.C. June 21, 2013) (analyzing "excusable neglect" under Rule 60(b)) (quoting *Thompson v. E.I. DuPont de Nemours & Co.*, 76 F. 3d 530, 534 (4th Cir. 1996)). "This standard is a very high bar, applicable to only the extraordinary cases where injustice would otherwise result" absent relief. *Smith v. Look Cycle USA*, 933 F. Supp. 2d 787, 791 (E.D. Va. 2013) (citing *Bredell v. Kempthorne*, 290 F. App'x 564, 565 (4th Cir. 2008)).

The Court turns now to a weighing of the four *Pioneer* factors for excusable neglect.

---

[14] Roe notes that even if he were not permitted to raise Rule 6(b) excusable neglect at this stage, he "would be entitled to challenge the final order of forfeiture pursuant to Rule 60(b), including on grounds of insufficient notice." Roe Reply, ECF No. 349, at 15-16 (citations omitted).

i. Length of Delay

In this case, Roe's deadline to file a petition was not missed by a day or a week, but by 62 days, which is not a "minimal" length of delay, as proffered by Roe. Here, Roe's request to file an out-of-time petition was filed on April 21, 2025, when the statutory deadline was February 15, 2025, and the slightly amended deadline was February 19, 2025.[15] Furthermore, Roe's filing post-dates the Court's determination on restitution, the commencement of the ancillary proceeding, a determination by the Court of the group of Petitioners with timely claims, as well as a ruling on Petitioners' requests to proceed pseudonymously or file under seal, and the establishment of general procedures and deadlines for motions to dismiss. Accordingly, the "length of delay" factor weighs against granting Roe's request to file his out-of-time ancillary petition.

ii. Prejudice to the Opposing Party

While Roe proffers that there is potential prejudice to his own interests, the Court's focus is on prejudice to opposing parties. In this case, there are likely adequate forfeiture assets to satisfy the fifteen Petitioners' claims, and therefore, prejudice regarding conflicting claims would be limited to prejudice against Bitfinex, which has expressed an interest in acquiring all forfeiture assets that were part of the Hack. There is however some general prejudice to all Petitioners insofar as deadlines for motions to dismiss would need to be reopened, thereby delaying the ancillary forfeiture proceeding. There is also prejudice to all Petitioners insofar as all of them complied with the original statutory deadline, and the reasoning behind a statutory deadline such as this one is to establish a clear cutoff date for action. Considering this, the Court finds that Bitfinex's claim that permitting Roe to file an out-of-time petition could "open the floodgates to new claims" is not inconceivable. In fact, there is pending before this Court a similar request by another non-party to file an out-of-

[15] Roe is represented by counsel who represents several other Petitioners in this matter.

time petition – dated September 10, 2025 – for which leave to file has not yet been granted.[16] Accordingly, in sum, the court finds that the "prejudice" factor stands in equipoise.

iii. Reason for the Delay

Under *Pioneer*, "the reason for the delay [i]s the most important" factor and is often dispositive. *Alexander v. Saul*, 5 F.4th 139, 150 & n.5 (2d Cir. 2021) (collecting cases from the First, Fourth, Sixth, Eighth, and Tenth Circuits); *see also Inst. For Policy Studies v. U.S.C.I.A.*, 246 F.R.D. 380, 383 (D.D.C. 2007) (same). As reasons for the delay in filing, Roe asserts two reasons—that he did not receive adequate notice of the forfeiture action and that his extremely hectic work schedule made it difficult for him to discover his right to file a petition. Roe works as a trauma surgeon, and it is "not uncommon for [him] to work 100 hours in a week." Roe Affidavit, ECF No. 344-2 ¶¶ 2-3. Roe claims that since the Hack, he has "periodically check[ed] for updates related to Bitfinex" and "conduct[ed] [his] own independent research." *Id.* ¶ 5. As of six months prior to filing his instant Motion, he had been "especially busy, both personally and professionally" and as such, he had "not had the time to conduct [his] research, and [he] was unaware of any opportunity to assert [his] rights[.]" *Id.* ¶ 6. On April 12, 2025, he "did a periodic search by typing 'Bitfinex hack' into Google search and found an article . . . with a headline stating that the Government said that Bitcoin recovered from the hackers should be given to Bitfinex" and this led Roe to conduct additional research and discover a Reddit post mentioning the filing of claims. *Id.* ¶ 9.

The Court has determined already, herein, that the Government's notice of the forfeiture was adequate, pursuant to the statute. Furthermore, notice provided by the Government was not limited to notice about the ancillary forfeiture proceeding, but instead, there was a prior notification process by which the Government established a website and requested input by anyone affected by

[16] The ruling and rationale applied herein to Roe's earlier-filed [and more thoroughly briefed] motion to file an out-of-time petition will be applied to that request as well.

Defendants' conduct. *See* October 8, 2024 Consent Motion for Victim Rights Notification, ECF No. 141; Order, ECF No. 145. Additionally there were several press releases dating back to 2023, and other notifications, including webpages, that pre-dated the publication of the December 17, 2024 Notice of Forfeiture. Finally, Roe's claims that the case has not been widely publicized are rebutted by the Martin Declaration (discussing the results of internet searched), s*ee also* Bitfinex Opp'n, ECF No. 386, at 9-11 (discussing some of the many instances of media coverage relating to the Hack).[17]

Moreover, in mid-November 2024, the Court was notified regarding eighteen persons who claimed possible harm relating to Defendants' actions. *See* Notice Regarding Statements from Self-identified Persons Impacted by the Defendants' Conduct, ECF No. 173, and Supplemental Notice, ECF No. 175. Eight of those persons made timely ancillary forfeiture claims, and they are now included within the larger Petitioners' group. While the Court does not know the individual circumstances of the other Petitioners (regarding their work schedules), this case does involve Petitioners from around the world, some of whom are acting *pro se* and they were able to comply with the deadline for filing their ancillary petitions.

Bitfinex argues, and this Court agrees, that "[i]f Roe had done basic research [using the basic search terms that he ultimately used], he would have known of this case and his ability to assert a claim in this action." Bitfinex Opp'n, ECF No. 385, at 22. What was holding him back was his own inaction. As noted by Bitfinex, "a party that fails to act with diligence will be unable to establish that [its] conduct constitutes excusable neglect." Bitfinex Opp'n, ECF No. 386, at 17 (citing *Martinez v. United States*, 578 F. App'x192, 194 (4th Cir. 2014) (quoting *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 413 (4th Cir. 2010)).

Nor does Roe's busy schedule suffice to excuse his failure to meet the deadline. Under Rule

[17] Bitfinex notes that "Roe's own counsel published a news article soliciting clients to submit claims in the forfeiture proceeding *before the deadline*. Bitfinex Opp'n, ECF No. 386, at 21 (citation omitted).

6(b), "[e]xcusable neglect requires something more than a simple failure to meet the deadline due to a busy schedule." Bitfinex Opp'n, ECF No. 386, at 23 (citing *Doe v. Bd. of Trustees for Univ. of Ark.*, No. 5:22-cv-05137, 2023 WL 8604171, at *9 (W.D. Ark. Dec. 12, 2023) (quoting *Hawks v. J.P. Morgan Chase Bank*, 581 F.3d 1043, 1048 (8th Cir. 2010) (alteration in original and internal quotation marks omitted)). In *Doe*, a *pro se* litigant was not excused from missing the deadline to oppose a summary judgment motion where "the delay in her response was due to her workload and a serious but not-to-be-further specified 'personal family matter involving a minor dependent.'" *Doe*, 2023 WL 8604171, at *9. Bitfinex cites several other cases in support of the proposition that a busy schedule does not satisfy the excusable neglect standard. Bitfinex Opp'n, ECF No. 386, at 23-25 (also distinguishing the two inapposite cases cited by Roe).

Considering the circumstances in this case, the Court finds that Roe did not act diligently, as relevant information was readily available through simple internet searches, which could have been conducted anytime, day or night (even for someone with an extremely busy work schedule). Nor was his busy work and personal life an excuse for his lack of diligence. Bitfinex notes correctly that "Roe—a sophisticated individual who was aware of the seizure of Bitcoin and this criminal action—simply failed to exercise any diligence, including setting up an internet alert or contacting the government or a lawyer to pursue his rights." *Id.* at 25. In sum, the Court concludes that Roe has not articulated any reason for his delay that was beyond his control, and accordingly, this "reason for the delay" factor weighs strongly against permitting Roe to file an out-of-time ancillary petition.

iv. Good Faith

The final factor for the Court to consider is good faith. Bitfinex contends that, "[w]hen assessing excusable neglect, 'lack of diligence can at least cast doubt on a claim of good faith.'" Bitfinex Opp'n, ECF No. 386, at 28 (quoting *In re CJ Holding Co.*, 27 F.4th 1105, 1118 (5th Cir. 2022)). In contrast, Roe contends that there is "no way that he would have purposely missed the

opportunity to file an ancillary petition" and he "has nothing to gain by filing late and everything to lose." Roe Reply, ECF No. 349, at 21. The Court finds that this "good faith" factor stands in equipoise.

Having considered the four *Pioneer* factors, the Court finds that the factors of "prejudice" and "good faith" stand in equipoise while the factors of "length of delay" and "reason for the delay" (arguably, the most important factor) weigh against Roe. Because, on balance, the Court finds that Roe fails to demonstrate excusable neglect, his motion to file an out-of-time motion to intervene and ancillary petition shall be DENIED. A separate Order accompanies this Memorandum Opinion.

DATED: November 19, 2026

COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE